IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

RONALD A. KATZ TECHNOLOGY          )
LICENSING, L.P.,                                       )
                                                                  )
                    Plaintiff,                                 )
                                                                  )          C.A. No. 06-546 (GMS)
           v.                                                    )
                                                                  )          JURY TRIAL DEMANDED
TIME WARNER CABLE INC., *et al*,            )
                                                                  )
                    Defendants.                            )
                                                                  )

## ANSWER AND COUNTERCLAIM OF DEFENDANTS UNITED STATES CELLULAR CORPORATION, TDS TELECOMMUNICATIONS CORPORATION AND TDS METROCOM LLC TO RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S COMPLAINT

Defendants United States Cellular Corporation, TDS Telecommunications Corporation and TDS Metrocom LLC (collectively, "TDS" or the "TDS defendants") respond to the allegations of Plaintiff's Complaint for Patent Infringement ("Complaint") and state as follows:

1.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint and, therefore, denies such allegations.

2.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint and, therefore, denies such allegations.

3.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint and, therefore, denies such allegations.

4.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint and, therefore, denies such allegations.

5    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint and, therefore, denies such allegations.

6.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint and, therefore, denies such allegations.

7.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint and, therefore, denies such allegations.

8.    TDS admits that defendant United States Cellular Corporation is a Delaware corporation with a place of business at 8410 West Bryn Mawr, Chicago, Illinois 60631.

9.    TDS admits that defendant TDS Telecommunications Corporation is a Delaware corporation with a place of business at 525 Junction Road, Madison, Wisconsin 53717 and that it and United States Cellular Corporation are partly or wholly owned subsidiaries of Telephone and Data Systems, Inc. TDS denies the remaining allegations contained in paragraph 9 of the Complaint.

10.    TDS admits that defendant TDS Metrocom LLC is a Delaware limited liability company with a place of business at 525 Junction Road, Madison, Wisconsin 53717 and that it is a subsidiary of TDS Telecommunications Corporation. TDS denies the remaining allegations contained in paragraph 9 of the Complaint.

11.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint and, therefore, denies such allegations.

12.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint and, therefore, denies such allegations.

2

13.     TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and, therefore, denies such allegations.

14.     TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint and, therefore, denies such allegations.

15.     TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint and, therefore, denies such allegations.

16.     TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint and, therefore, denies such allegations.

17.     TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint and, therefore, denies such allegations.

18.     TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint and, therefore, denies such allegations.

19.     TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint and, therefore, denies such allegations.

RLF1-3075021-1

20.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint and, therefore, denies such allegations.

21.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint and, therefore, denies such allegations.

22.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint and, therefore, denies such allegations.

23.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint and, therefore, denies such allegations.

24.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint and, therefore, denies such allegations.

25.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint and, therefore, denies such allegations.

26.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint and, therefore, denies such allegations.

RLF1-3075021-1

27.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint and, therefore, denies such allegations.

28.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint and, therefore, denies such allegations.

29.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint and, therefore, denies such allegations.

30.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint and, therefore, denies such allegations.

31.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint and, therefore, denies such allegations.

## JURISDICTION AND VENUE

32.    TDS admits that Plaintiff purports to state a claim under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* TDS further admits that subject matter jurisdiction of patent claims is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a). TDS denies any patent infringement.

33.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint and, therefore, denies such allegations.

5

34.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint and, therefore, denies such allegations.

35.    TDS admits that the TDS defendants are subject to the Court's personal jurisdiction, but TDS denies any patent infringement and in particular denies that the TDS defendants operate infringing automated call processing systems in this district or elsewhere.

36.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint and, therefore, denies such allegations.

37.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint and, therefore, denies such allegations.

38.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint and, therefore, denies such allegations.

39.    With respect to the TDS defendants, TDS admits that venue is proper in this judicial district. With respect to the other defendants, TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint and, therefore, denies such allegations.

## **BACKGROUND**

40.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint and, therefore, denies such allegations.

6

41.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint and, therefore, denies such allegations.

42.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint and, therefore, denies such allegations.

43.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint and, therefore, denies such allegations.

44.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint and, therefore, denies such allegations.

45.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Complaint and, therefore, denies such allegations.

46.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint and, therefore, denies such allegations.

47.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 of the Complaint and, therefore, denies such allegations.

48.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 of the Complaint and, therefore, denies such allegations.

49.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the Complaint and, therefore, denies such allegations.

50.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the Complaint and, therefore, denies such allegations.

51.    TDS denies infringement of any of the patents-in-suit. TDS admits that it has not agreed to license any of the patents-in-suit. Otherwise, TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 51 of the Complaint and, therefore, denies such allegations.

## THE ASSERTED PATENTS

52.    TDS admits that on December 20, 1988, U.S. Patent No. 4,792,968 ("the '968 patent") entitled "Statistical Analysis System for Use with Public Communication Facility" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52 of the Complaint and, therefore, denies such allegations.

53.    TDS admits that on May 29, 1990, U.S. Patent No. 4,930,150 ("the '150 patent") entitled "Telephonic Interface Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of

8

the remaining allegations contained in paragraph 53 of the Complaint and, therefore, denies such allegations.

54.    TDS admits that on July 3, 1990, U.S. Patent No. 4,939,773 ("the '773 patent") entitled "Multiple Party Telephone Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 54 of the Complaint and, therefore, denies such allegations.

55    TDS admits that on January 22, 1991, U.S. Patent No. 4,987,590 ("the '590 patent") entitled "Multiple Party Telephone Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55 of the Complaint and, therefore, denies such allegations.

56.    TDS admits that on July 7, 1992, U.S. Patent No. 5,128,984 ("the '984 patent") entitled "Telephone Interface Call Processing System with Call Selectivity" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 56 of the Complaint and, therefore, denies such allegations.

57    TDS admits that on October 5, 1993, U.S. Patent No. 5,251,252 ("the '252 patent") entitled "Telephone Interface Call Processing System with Call Selectivity" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 57 of the Complaint and, therefore, denies such allegations.

9

58.    TDS admits that on March 22, 1994, U.S. Patent No. 5,297,197 ("the '197 patent") entitled "Multiple Party Telephone Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58 of the Complaint and, therefore, denies such allegations.

59.    TDS admits that on September 27, 1994, U.S. Patent No. 5,351,285 ("the '285 patent") entitled "Multiple Format Telephonic Interface Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59 of the Complaint and, therefore, denies such allegations.

60.    TDS admits that on August 15, 1995, U.S. Patent No. 5,442,688 ("the '688 patent") entitled "Multiple Party Telephone Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 60 of the Complaint and, therefore, denies such allegations.

61.    TDS admits that on November 4, 1997, U.S. Patent No. 5,684,863 ("the '863 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued with Ronal A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 61 of the Complaint and, therefore, denies such allegations.

62.    TDS admits that on July 28, 1998, U.S. Patent No. 5,787,156 ("the '156 patent") entitled "Telephonic-Interface Lottery System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of

10

the remaining allegations contained in paragraph 62 of the Complaint and, therefore, denies such allegations.

63.    TDS admits that on September 29, 1998, U.S. Patent No. 5,815,551 ("the '551 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63 of the Complaint and, therefore, denies such allegations.

64.    TDS admits that on October 27, 1998, U.S. Patent No. 5,828,734 ("the '734 patent") entitled "Telephone Interface Call Processing System with Call Selectivity" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 64 of the Complaint and, therefore, denies such allegations.

65.    TDS admits that on November 10, 1998, U.S. Patent No. 5,835,576 ("the '576 patent") entitled "Telephonic-Interface Lottery Device" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65 of the Complaint and, therefore, denies such allegations.

66.    TDS admits that on April 27, 1999, U.S. Patent No. 5,898,762 ("the '762 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66 of the Complaint and, therefore, denies such allegations.

11

67.    TDS admits that on June 29, 1999, U.S. Patent No. 5,917,893 ("the '893 patent") entitled "Multiple Format Telephonic Interface Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 67 of the Complaint and, therefore, denies such allegations.

68.    TDS admits that on October 26, 1999, U.S. Patent No. 5,974,120 ("the '120 patent") entitled "Telephone Interface Call Processing System with Call Selectivity" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 68 of the Complaint and, therefore, denies such allegations.

69.    TDS admits that on March 7, 2000, U.S. Patent No. 6,035,021 ("the '021 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 69 of the Complaint and, therefore, denies such allegations.

70.    TDS admits that on November 14, 2000, U.S. Patent No. 6,148,065 ("the '065 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70 of the Complaint and, therefore, denies such allegations.

71.    TDS admits that on January 1, 2002, U.S. Patent No. 6,335,965 ("the '965 patent") entitled "Voice-Data Telephonic Interface Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief

as to the truth of the remaining allegations contained in paragraph 71 of the Complaint and, therefore, denies such allegations.

72.    TDS admits that on February 19, 2002, U.S. Patent No. 6,349,134 ("the '134 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 72 of the Complaint and, therefore, denies such allegations.

73.    TDS admits that on July 23, 2002, U.S. Patent No. 6,424,703 ("the '703 patent") entitled "Telephonic-Interface Lottery System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 73 of the Complaint and, therefore, denies such allegations.

74.    TDS admits that on August 13, 2002, U.S. Patent No. 6,434,223 ("the '223 patent") entitled "Telephone Interface Call Processing System with Call Selectivity" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 74 of the Complaint and, therefore, denies such allegations.

75.    TDS admits that on September 10, 2002, U.S. Patent No. 6,449,346 ("the '346 patent") entitled "Telephone-Television Interface Statistical Analysis System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 75 of the Complaint and, therefore, denies such allegations.

76.    TDS admits that on January 28, 2003, U.S. Patent No. 6,512,415 ("the '415 patent") entitled "Telephonic-Interface Game Control System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 76 of the Complaint and, therefore, denies such allegations.

77.    TDS admits that on January 13, 2004, U.S. Patent 6,678,360 ("the '360 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued with Ronald A. Katz as the named inventor. TDS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77 of the Complaint and, therefore, denies such allegations.

## FIRST CLAIM
## (PATENT INFRINGEMENT BY TIME WARNER DEFENDANTS)

78.    TDS repeats and incorporates by reference its answers to paragraphs 1 through 77 above.

79.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Complaint and, therefore, denies such allegations.

80.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Complaint and, therefore, denies such allegations.

81.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the Complaint and, therefore, denies such allegations.

14

82.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Complaint and, therefore, denies such allegations.

83.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Complaint and, therefore, denies such allegations.

84.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of the Complaint and, therefore, denies such allegations.

85.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Complaint and, therefore, denies such allegations.

## SECOND CLAIM
### (PATENT INFRINGEMENT BY AOL DEFENDANTS)

86.    TDS repeats and incorporates by reference its answers to paragraphs 1 through 77 above.

87.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87 of the Complaint and, therefore, denies such allegations.

88.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88 of the Complaint and, therefore, denies such allegations.

RLF1-3075021-1

89.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89 of the Complaint and, therefore, denies such allegations.

90.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90 of the Complaint and, therefore, denies such allegations.

91.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91 of the Complaint and, therefore, denies such allegations.

92.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92 of the Complaint and, therefore, denies such allegations.

93.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93 of the Complaint and, therefore, denies such allegations.

### THIRD CLAIM
### (PATENT INFRINGEMENT BY TDS DEFENDANTS)

94.    TDS repeats and incorporates by reference its answers to paragraphs 1 through 77 above.

95.    TDS admits that the TDS defendants provide telecommunications services, including wireless communications services in the case of United States Cellular Corporation, to customers in the United States and that they are partly or wholly owned, directly or indirectly, by Telephone and Data Systems, Inc. Otherwise, TDS denies the allegations contained in paragraph 95 of the Complaint.

16

96.    TDS admits that the TDS defendants provide to their customers certain services that the customers access by telephone.   Otherwise, TDS denies the allegations contained in paragraph 96 of the Complaint.

97.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97 of the Complaint and, therefore, denies such allegations.

98.    TDS denies the allegations contained in paragraph 98 of the Complaint.

99.    TDS denies the allegations contained in paragraph 99 of the Complaint.

100.    TDS denies the allegations contained in paragraph 100 of the Complaint.

101.    TDS denies the allegations contained in paragraph 101 of the Complaint.

**FOURTH CLAIM**
**(PATENT INFRINGEMENT BY CABLEVISION DEFENDANTS)**

102.    TDS repeats and incorporates by reference its answers to paragraphs 1 through 77 above.

103.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 103 of the Complaint and, therefore, denies such allegations.

104.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104 of the Complaint and, therefore, denies such allegations.

105.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105 of the Complaint and, therefore, denies such allegations.

106.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 106 of the Complaint and, therefore, denies such allegations.

107.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of the Complaint and, therefore, denies such allegations.

108.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 108 of the Complaint and, therefore, denies such allegations.

109.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109 of the Complaint and, therefore, denies such allegations.

## FIFTH CLAIM
### (PATENT INFRINGEMENT BY CHARTER COMMUNICATIONS DEFENDANTS)

110.    TDS repeats and incorporates by reference its answers to paragraphs 1 through 77 above.

111.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111 of the Complaint and, therefore, denies such allegations.

112.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112 of the Complaint and, therefore, denies such allegations.

18

113. TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 of the Complaint and, therefore, denies such allegations.

114. TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 114 of the Complaint and, therefore, denies such allegations.

115. TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115 of the Complaint and, therefore, denies such allegations.

116. TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 116 of the Complaint and, therefore, denies such allegations.

117. TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 117 of the Complaint and, therefore, denies such allegations.

### SIXTH CLAIM
### (PATENT INFRINGEMENT BY CIGNA DEFENDANTS)

118. TDS repeats and incorporates by reference its answers to paragraphs 1 through 77 above.

119. TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119 of the Complaint and, therefore, denies such allegations.

120.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120 of the Complaint and, therefore, denies such allegations.

121.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 121 of the Complaint and, therefore, denies such allegations.

122.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 122 of the Complaint and, therefore, denies such allegations.

123.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123 of the Complaint and, therefore, denies such allegations.

124.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124 of the Complaint and, therefore, denies such allegations.

125.    TDS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 125 of the Complaint and, therefore, denies such allegations.

## AFFIRMATIVE AND OTHER DEFENSES

1.    TDS does not infringe, has not infringed and does not and has not induced infringement or contributed to infringement of any valid and enforceable claims of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents.

2.    The claims of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are invalid because they fail to meet the conditions set forth for patentability in Title 35, United States Code, including, but not limited to §§ 101, 102, 103 and/or 112 thereof

3.    The doctrine of prosecution history estoppel bars the plaintiff from relying on the doctrine of equivalents to prove infringement.

4.    Upon information and belief, the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("USPTO") of the named inventor, his counsel and/or other individuals associated with the filing and prosecution of the patent applications (collectively "the patentee"), as described with particularity in the averments of Count III of TDS's Counterclaims below, which averments are realleged and incorporated herein by reference as if set forth in full.

5.    Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement, and each purported claim against TDS alleged therein, fails to state facts upon which relief can be granted against TDS.

6.    Plaintiff's claims are barred in whole or in part by the doctrine of prosecution laches.

7.    Plaintiff's claims are barred in whole or in part by the doctrines of waiver, laches and/or equitable estoppel.

8.    Plaintiff is barred from any relief in this action and the patents are unenforceable under the doctrines of unclean hands and/or patent misuse.

9.    Plaintiff's prayer for relief and claim for damages is barred in whole or in part by 35 U.S.C. §§ 286 and/or 287.

10.    Plaintiff is not entitled to injunctive relief with respect to the '968, '150, '285, '863, '551, '762, '893, '065, '965, '134, '223 and '360 patents because those patents have expired.

11.    TDS reserves the right to assert additional affirmative defenses and counterclaims after further investigation, including defenses related to invalidity and unenforceability.

## COUNTERCLAIM

TDS asserts the following counterclaim against Plaintiff/Counter-Defendant Ronald A. Katz Technology Licensing, L.P.:

### Jurisdiction and Venue

1.    This Court has jurisdiction over the claims for declaratory relief arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., pursuant to 28 U.S.C. §§1331, 1338(a) and 2201.

2.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391.

### The Parties

3.    As stated in Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement, Plaintiff/Counter-Defendant Ronald A. Katz Technology Licensing, L.P. ("Katz") is a California limited partnership with its principal place of business located at 9220 Sunset Blvd., Suite 315, Los Angeles, California 90069.

4.    Defendant/Counter-Plaintiff United States Cellular Corporation is a Delaware corporation with a place of business at 8410 West Bryn Mawr, Chicago, Illinois 60631.

5.    Defendant/Counter-Plaintiff TDS Telecommunications Corporation is a Delaware corporation with a place of business at 525 Junction Road, Madison, Wisconsin 53717.

22

6.    Defendant/Counter-Plaintiff TDS Metrocom LLC is a Delaware limited liability company with a place of business at 525 Junction Road, Madison, Wisconsin 53717.

7.    Plaintiff/Counter-Defendant Katz has filed suit in this matter asserting infringement of one or more claims of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents against TDS. TDS denies any liability for infringement and asserts that the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are invalid and unenforceable.

**Count I**
**(Declaratory Judgment of Non-Infringement)**

8.    TDS incorporates the allegations contained above in their Answer and paragraphs 1 through 7 of this Counterclaim.

9.    There is a justiciable controversy between Katz and TDS concerning TDS's non-infringement of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents.

10.    TDS has not infringed and does not infringe, either directly or by inducement or contributory infringement, any valid and enforceable claim of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents.

11.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*, TDS is entitled to a declaratory judgment that it has not infringed, contributed to the infringement of, or induced the infringement of, and is not infringing, contributing to the infringement of, or inducing the infringement of any valid and enforceable claim of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents.

23

## Count II
### (Declaratory Judgment of Invalidity)

12.    TDS incorporates the allegations contained above in their Answer and paragraphs 1 through 11 of this Counterclaim.

13.    There is a justiciable controversy between Katz and TDS concerning the invalidity of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents.

14.    The claims of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are invalid for failure to meet the conditions set forth for patentability in Title 35, United States Code, including, but not limited to §§ 101, 102, 103 and/or 112 thereof.

15.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, TDS is entitled to a declaratory judgment that the claims of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are invalid for failure to meet the conditions set forth for patentability in Title 35, United States Code, including, but not limited to §§ 101, 102, 103 and/or 112 thereof.

## Count III
### (Declaratory Judgment of Unenforceability)

16.    TDS incorporates the allegations contained above in their Answer and paragraphs 1 through 15 of this Counterclaim.

17.    There is a justiciable controversy between Katz and TDS concerning the unenforceability of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents.

24

18.    Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual for Patent Examination Procedure ("MPEP") § 2000.01, *et seq.* impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the United States Patent and Trademark Office ("USPTO") which requires he or she to disclose to the USPTO all information that is material to the patentability of the application under examination. Breach of this duty of candor, good faith and honesty with an intent to deceive the USPTO constitutes inequitable conduct so as to render the affected patents unenforceable.

19.    Upon information and belief, the patentee, with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled, exercised a pattern and practice of conduct as part of the prosecution of the applications that ultimately led to the patents-in-suit and of related applications that violated the duty of candor, good faith and honesty owed by patent applicants. This pattern included intentionally failing to disclose material prior art to the USPTO and making false statements, such as with regard to the priority dates to which the patent applications were entitled. Inequitable conduct thus was committed before the USPTO.

20.    As a result of the inequitable conduct, the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are unenforceable.

21.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, TDS is entitled to a declaratory judgment that the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are unenforceable due to the inequitable conduct before the USPTO. The following other related patents and applications, to which the patents-in-suit claim priority, are relevant to this Counterclaim: U.S. Patents 4,845,739 ("the '739 patent"), 5,014,298 ("the '298 patent"), 5,224,153 ("the '153 patent"), 5,073,929 ("the '929

patent"), and U.S. Patent Application Nos. 06/753,299, ("the '299 application") and 07/640,337 ("the '337 application").

22.     This is an exceptional case under 35 U.S.C. § 285.  Accordingly, TDS is entitled to recover its reasonable attorneys' fees.

## I.     Intentional Failure to Disclose Material Prior Art

### A.     Barger

23.     Upon information and belief, the patentee had knowledge of U.S. Patent No. 4,071,698 to Barger, Jr. *et al* ("the Barger patent") at least as early as January 1989.  The patentee failed to disclose the Barger patent to the USPTO patent examiner as part of the prosecution of several of the patents-in-suit and related patents and/or applications, including at least the '739, '150, '298, '153, '929, '984 and '252 patents, which were pending as of, or filed after, January 1, 1989.

24.     The Barger patent is prior art to the patents-in-suit because it was issued by the USPTO on January 31, 1978, a full seven years before the filing date of the patentee's earliest patent application.

25.     The Barger patent is material to the patents-in-suit.  It discloses an automated interactive voice system for marketing merchandise, such as audio recordings.  The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains information from the customer and enters the information into a database.  The system maintains a complete record of all transactions — including requests for demonstrations played by each customer — in order to maintain current inventory records and determine trends.  The system uses the transaction history to determine whether a customer is a "free loader" and limits the customer's access to the system accordingly.  Because the Barger patent discloses many of the

26

central features claimed by the patentee, it would have been material to the USPTO in deciding whether to allow the claims of the patents-in-suit and related patents and/or applications. For example, the Barger patent discloses storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

26.    The materiality of the Barger patent to the patents-in-suit was confirmed by the USPTO Board of Patent Appeals and Interferences, which in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998) affirmed a patent examiner's rejection of certain of the patentee's pending claims based in part on the disclosure of the Barger patent. The materiality of the Barger patent to the patents-in-suit also has been confirmed by the application of the Barger patent by the USPTO in connection with the reexaminations of certain patents-in-suit and/or related patents.

27.    Upon information and belief, the patentee had knowledge of the materiality and relevance of the Barger patent to the claims of the patents-in-suit that were prosecuted by the patentee before the USPTO. Upon information and belief, the patentee became aware of the Barger patent on or about December 1988 as part of the prosecution of an international application (WO 87/000375), which is based on the patentee's U.S. Patent Application No. 06/753,299 ("the '299 application"). As part of the prosecution of the WO 87/000375 application, the European Patent Office ("EPO") identified the Barger patent as "particularly relevant" in regard to the patentability of the claims. In addition, the EPO sent the international search report identifying the Barger patent as "particularly relevant" to the patentee's European attorney, Mr. Graham F. Coles, on or about December 27, 1988.

27

28.    Notably, all of the patents-in-suit claim priority to the '299 application. Thus, the international search report put the patentee on notice both of the existence of the Barger patent and the materiality of the Barger patent to the subject-matter claimed in the patents-in-suit.

29.    Notwithstanding the patentee's knowledge of the Barger patent, upon information and belief, the patentee failed to disclose it to the USPTO during the prosecution of at least the '739, '150, '298, '153, '929, '984 and '252 patents.

30.    In addition, the patentee did not disclose the existence of the Barger patent to the USPTO during the substantive prosecution of the '285 patent. Rather, the patentee waited until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to submit the Barger patent, only seven days before the '285 patent issued.

31.    Upon information and belief, the patentee intentionally withheld the material Barger patent from the USPTO during the prosecution of at least the '739, '150, '298, '153, '929, '984, '252 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which the patentee was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. Other patents-in-suit are directly related to these patents and are thus rendered unenforceable through infectious unenforceability.

32.    For example, the '893 patent, which is a patent-in-suit, claims priority from and claim subject matter related to the '739, '150 and '285 patents to which the Barger patent is also material. Accordingly, at least the '893 patent is likewise rendered unenforceable due to the inequitable conduct committed by the patentee as part of the prosecution of the related '739, '150 and '285 patents.

33.    Likewise, at least the '863, '551, '984, '252, '734, '762, '893, '120, '065, '134, '223, '415 and '360 patents, which are patents-in-suit, all claim priority from and claim subject

matter related to the '739 patent to which the Barger patent is also material. The close relationship between these patents and the '739 parent patent is evidenced by terminal disclaimers filed by the patentee as part of the prosecution of at least the '863, '551, '762, '893, '065, '134, '415 and '360 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '739 patent. Accordingly, at least the '863, '551, '984, '252, '734, '762, '893, '120, '065, '134, '223, '415 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by the patentee during the prosecution of the related '739 patent.

34.    Similarly, at least the '965 patent, which is a patent-in-suit, claims priority from and claims subject matter related to both the '298 and '153 patents to which the Barger patent is also material. Accordingly, at least the '965 patent is likewise rendered unenforceable due to the inequitable conduct committed by the patentee during the prosecution of the related '298 and '153 patents.

35.    Likewise, at least the '734, '120 and '223 patents-in-suit claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the Barger patent is also material. The close relationship between the '734, '120 and '223 patents and the '984 patent is evidenced by terminal disclaimers filed by the patentee as part of the prosecution of at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '984 patent. Accordingly, at least the '734, '120 and '223 patents are likewise rendered unenforceable due to inequitable conduct committed by the patentee during the prosecution of the related '929, '984 and '252 patents.

36.    Accordingly, at least the '150, '285, '863, '551, '984, '252, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents-in-suit are all rendered unenforceable for

inequitable conduct due to the patentee's intentional failure to disclose the Barger patent to the USPTO.

### B.    DeBruyn

37.    Upon information and belief, the patentee had knowledge of European Patent No. 0032410 to DeBruyn and its Canadian counterpart, Canadian Patent 1,162,336, (together or separately, "the DeBruyn patent") at least as early as January 1989. The patentee failed to disclose the DeBruyn patent to the USPTO during the prosecution of certain of the patentee's patents, including at least the '150, '984, '252 and '285 patents, which are patents-in-suit, as well as the related '739, '929 and '153 patents. Except for the '968 patent, all of the patents-in-suit claim priority to one or more of these patents.

38.    The DeBruyn patent is prior art to the patents-in-suit because it was published by the European Patent Office as European Patent Specification EP0032410A1 on July 22, 1981, and by the Canadian Patent Office as Canadian Patent 1,132,336 on February 14, 1984, more than a year prior to the filing date of the patentee's earliest patent application.

39.    The DeBruyn patent is material to the patents-in-suit. The DeBruyn patent discloses an interactive voice system for implementing a lottery having many features relevant to the patentee's claims. For example, the DeBruyn patent discloses receiving a caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers for limited access or limits on use. The DeBruyn patent also discloses qualifying callers based on the caller's telephone number.

40.    The materiality of the DeBruyn patent to the patents-in-suit has been confirmed by the application of the DeBruyn patent by the USPTO in connection with the reexaminations of certain patents-in-suit and/or related patents.

41.    Upon information and belief, the patentee became aware of the DeBruyn patent and its materiality to the subject matter claimed in the patents-in-suit by at least as early as January 1989. The same international search report that identified the Barger patent and, upon information and belief, was sent to the patentee's European attorney, Mr. Graham P. Coles, on December 27, 1988, also identified the DeBruyn patent as "particularly relevant" with respect to the patentability of the claims of the European application based on patentee's '299 application.

42.    Notwithstanding the patentee's knowledge of the DeBruyn patent and its materiality, upon information and belief, the patentee failed to disclose this material prior art to the USPTO during the prosecution of at least the '150, '739, '929, '153, '984 and '252 patents.

43.    In addition, the patentee did not disclose the existence of the DeBruyn patent to the USPTO during the substantive prosecution of the '285 patent. Rather, the patentee waited until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to submit the DeBruyn patent, only seven days before the '285 patent issued.

44.    Upon information and belief, the patentee intentionally withheld the material DeBruyn patent from the USPTO as during the prosecution of at least the '150, '285, '739, '929, '153, '984 and '252 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which the patentee was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. Other patents-in-suit are directly related to these patents and are thus rendered unenforceable through infectious unenforceability.

31

45.    For example, at least the '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents, which are patents-in-suit, all claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material. Accordingly, at least the '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by the patentee during the prosecution of the related '739 patent.

46.    Likewise, at least the '893 patent, which is a patent-in-suit, claims priority from and claims subject matter related to both the '150 and '285 patents to which the DeBruyn patent is also material. Accordingly, at least the '893 patent is likewise rendered unenforceable due to the inequitable conduct committed by the patentee during the prosecution of the related '150 and '285 patents.

47    Similarly, at least the '734, '120 and '223 patents, which are patents-in-suit, all claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the DeBruyn patent is also material. The close relationship between these patents and those to which they claim priority is evidenced by terminal disclaimers filed by the patentee for at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the subject matter claimed in the '734 patent and that disclosed in the '252 patent. Accordingly, at least the '734, '120 and the '223 patents are likewise rendered unenforceable due to inequitable conduct committed by the patentee during the prosecution of the related '929, '984 and '252 patents.

48.    Accordingly, at least the '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents-in-suit are all rendered unenforceable for

inequitable conduct due to the patentee's intentional failure to disclose the DeBruyn patent to the USPTO.

        **C.**     **Katz PCT**

    49.     Upon information and belief, the patentee had knowledge of and failed to disclose the patentee's own published international application WO 87/00375 ("the WO '375 application") to the USPTO prior to the payment of the issue fee during prosecution of the '285 patent, which is a patent-in-suit. Upon information and belief, the patentee also failed to disclose the WO '375 application during the prosecution of at least the related '739 patent.

    50.     The WO '375 application teaches a statistical analysis system for use in conjunction with a public communication facility. When the system receives a call, a voice generator prompts the caller for information such as a key number or the caller's telephone number. If available, the caller's telephone number may be taken directly from the communication facility. After qualifying the caller using the number received, the system retrieves polling-type data from the callers which is combined with stored data to isolate a select subset of callers.

    51.     The WO '375 application was filed under the Patent Cooperation Treaty ("PCT") and published on January 15, 1987. Pursuant to 35 U.S.C. § 102(b), the WO '375 application may be considered prior art for any claims having an effective filing date more that one year after the January 15, 1987 publication date.

    52.     The '739 and '285 patents were filed more than one year after the publication date of January 15, 1987. The '739 and '285 patents incorporate additional subject matter in their specifications and claims that was added more than a year after the publication date of the WO '375 application. The WO '375 application constituted prior art to all such claims.

53.    The WO '375 application would have been material to the patent examiner in determining what claims, if any, the patentee was entitled to in the '285 patent-in-suit and the related '739 patent. For example, the WO '375 application would have been relevant to many of the basic elements claimed in the '739 and '285 patents such as prompting callers with instructions, receiving data entered via touchtone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers, as well as other features such as testing the format in relation to the caller's telephone number as taken directly from the communications facility.

54.    Upon information and belief, the patentee was aware of the duty to disclose information material to the patentability of any of the patentee's pending patent applications. The patentee had personal knowledge of the public disclosure of the WO '375 application. The patentee failed to disclose the WO '375 application to the patent examiner as part of the prosecution of at least the '739 patent. The patentee also failed to disclose the WO '375 application to the patent examiner prior to the payment of the issue fee during prosecution of the '285 patent. Therefore, the WO '375 application was not considered by the patent examiners in determining patentability as part of the prosecution on the merits of either the '739 or '285 patents.

55.    Upon information and belief, the patentee intentionally withheld the WO '375 application from the USPTO as part of the prosecution on the merits of at least the '739 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which the patentee was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. Other patents-in-suit are directly related to these patents and are thus rendered unenforceable through infectious unenforceability.

34

56.     For example, all of the patents-in-suit, with the exception of the '968 and the '150 patents, claim priority from and claim subject matter related to the '739 patent to which the WO '375 application is also material. Accordingly, at least the '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents-in-suit are likewise rendered unenforceable due to the inequitable conduct committed in the '739 patent.

57.     Accordingly, at least the '252, '984, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents-in-suit are rendered unenforceable due to inequitable conduct in the patentee's intentional failure to disclose the WO '375 application to the USPTO.

### D.     Daudelin '995 Patent

58.     Upon information and belief, the patentee had knowledge of U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") at least by October 26, 1997. The patentee did not, however, disclose the Daudelin '995 patent during the prosecution of at least the '120 patent-in-suit.

59.     The Daudelin '995 patent is prior art to at least certain claims of the '120 patent because it was filed in the USPTO years prior to the effective filing date of those claims.

60.     The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent. The Daudelin '995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products. Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof. Callers are qualified based in part on their calling party number, and the particular product they selected.

35

61.    Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent. For example, the '120 patent claims receiving calls in a toll free mode, receiving calls directed to two different toll-free numbers, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

62.    Upon information and belief, the patentee was aware of the Daudelin '995 patent during the prosecution of the '120 patent, having cited it to the USPTO in connection with other applications more than two years prior to the issuance of the '120 patent. Upon information and belief, the patentee listed the '995 patent in previous submissions during the prosecution of certain of the patentee's other patents, although the patentee had misspelled the name as "Dandelin."

63.    Upon information and belief, the patentee intentionally withheld the material Daudelin '995 patent from the USPTO during the prosecution of at least the '120 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which the patentee was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable. Other patents-in-suit are directly related to these patents and are thus rendered unenforceable through infectious unenforceability.

64.    For example, at least the '223 patent, which is a patent-in-suit, claims priority to the '120 patent and claims subject matter related to the '120 patent, to which the Daudelin '995 patent is material. Accordingly, at least the '223 patent is rendered unenforceable due to the inequitable conduct committed by the patentee as part of the prosecution of the related '120 patent.

36

65.    Accordingly, at least the '120 and '223 patents-in-suit are rendered unenforceable for inequitable conduct due to the patentee's intentional failure to disclose the Daudelin '995 patent to the USPTO.

### E.    Periphonics Prior Art

66.    Upon information and belief, the patentee intentionally withheld from the USPTO certain relevant and material prior art by the Periphonics Corporation ("Periphonics") as part of the prosecution of at least the '965, '285, '893, '863, '762 and '551 patents, rendering these patents, and the related '065, '134 and '360 patents unenforceable due to inequitable conduct.

67.    Because of a protective order that was entered in a prior litigation, *Verizon California Inc, v Ronald A, Katz Technology Licensing, L P ,* Civil Action No. 01-9871-CAS RCx, TDS does not have access to the Periphonics prior art. Accordingly, TDS incorporates by reference the averments of other defendants in this and other related litigation with respect to the patentee's inequitable conduct for failure to disclose the Periphonics prior art, and reserves the right to amend its Counterclaims upon the completion of discovery relating to the circumstances surrounding the patentee's failure to disclose the Periphonics prior art.

### II.    False and Misleading Statements

68.    Upon information and belief, during the prosecution of several patents-in-suit, the patentee made false claims of priority to earlier applications with the intent to mislead the USPTO and avoid prior art, as set forth below.

69.    For example, during prosecution of the '984 patent, the patentee made the false claim that "the international application [87/00375] is not properly a reference against the present case." This assertion was false, since international application 87/00375, i.e., the WO

'375 application, was published more than one year prior to the effective filing of the subject matter at issue and, therefore, was a proper prior art reference.

70.    Upon information and belief, the patentee's statement was intended to deceive the USPTO into issuing patent claims of a scope beyond any to which the patentee was entitled in the '984 patent and, thus, constituted inequitable conduct rendering the '984 patent unenforceable.

71.    The '120, '734 and '223 patents are closely related to the '984 patent, and are thus rendered unenforceable through infectious unenforceability. The '734, '120 and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to that at issue in connection with the false statement made during prosecution of the '984 patent. In fact, due to the interrelatedness of these patents, the patentee has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent in response to double patenting rejections made by the Patent and Trademark Office, thus indicating that the claimed inventions were not patentably distinct. Thus, the inequitable conduct during prosecution of the '984 patent also renders the '734, '120 and '223 patents unenforceable.

72.    Likewise, during prosecution of the '734 patent, the patentee identified U.S. Patent No. 4,792,461 to Brown ("the Brown patent") to the USPTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12. In fact, the relevant pending application's claims did not predate Brown, because in the '150 patent there is no suggestion of multiple call modes, as claimed in the '734 patent. In addition, upon information and belief, the '734 patent does not properly claim priority to the '150 patent. Therefore, the patentee intentionally

38

misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

73.    The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office, thus indicating that the claimed inventions were not patentably distinct. Thus, the inequitable conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

74.    In another example, upon information and belief, during prosecution of the '734 patent, the patentee mischaracterized his pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987. Specifically, the patentee stated "the present application is entitled to a priority date earlier than that of the subject reference." Upon information and belief, the patentee's statement was false at the time it was made. At the time the patentee made this statement there were claims in his application (such as then pending claim 17) which contained and claimed new subject matter that was not supported by the earlier filed application, and were, therefore, not entitled to an earlier priority date. Therefore, upon information and belief, the patentee intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

39

75.    The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, the patentee has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office, thus indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

## PRAYER

WHEREFORE, TDS respectfully requests:

a.    that Plaintiff take nothing by this action;

b.    that the Court declare that the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents have not been infringed by TDS;

c.    that the Court declare that the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '223, '415 and '360 patents are invalid and unenforceable;

d.    that the Court declare this case is exceptional under 35 U.S.C. § 285 and that TDS be awarded its costs, expenses, and attorneys' fees incurred herein; and

e.    such other and further relief to which TDS may show itself justly entitled.

## JURY DEMAND

TDS hereby demands a trial by jury on all issues so triable.

RLF1-3075021-1

_Frederick L. Cottrell, III_

OF COUNSEL:

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
302.651.7700

John W. Kozak
jkozak@leydig.com
Steven P. Petersen
spetersen@leydig.com
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza
Suite 4900
Chicago, IL 60601
312.616.5600

*Attorneys for United States Cellular Corporation,*
*TDS Telecommunications Corporation and TDS*
*Metrocom LLC*

Dated: October 26, 2006

41

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2006, I caused to be served by hand delivery the foregoing

document and electronically filed the same with the Clerk of Court using CM/ECF which will

send notification of such filing(s) to the following:

Mary B. Graham
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

Jeffrey L. Moyer
Richards, Layton & Finger
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE 19899

      I hereby certify that on October 26, 2006, I caused to be sent by Federal Express the

foregoing document to the following non-registered participant:

Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025-3506

Josh Krevitt
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

Angela Payne James
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 20209-3424

David Maxwell
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 20209-3424

Blas P. Arroyo
Alston & Bird LLP
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000

Patrick J. Flinn
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 20209-3424

Jeffrey S. Standley
Standley Law Group LLP
495 Metro Place South, Suite 210
Dublin, OH   43107

Michael K. Plimack
Dale A. Rice
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA    94104-2878


Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com