## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., <br><br> Plaintiff, <br><br> v. <br><br> TIME WARNER CABLE INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. No. 06-546-GMS

JURY TRIAL DEMANDED

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF THEIR MOTION TO STAY ACTION PENDING THE PATENT
## AND TRADEMARK OFFICE'S REEXAMINATION OF THE KATZ PATENTS

OF COUNSEL:

David K. Callahan
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Qwest
Communications Int'l Inc., Qwest Wireless,
L.L.C., Qwest Communications Corp., Qwest LD
Corp., Qwest Broadband Services, Inc., and
Qwest Interprise America, Inc.*

Dated: December 18, 2006

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Time Warner
Cable Inc., Time Warner NY Cable
LLC, Time Warner Entertainment
Company LP, AOL LLC, Compuserve
Interactive Services Inc., Netscape
Communications Corporation, United
States Cellular Corporation, TDS
Telecommunications Corporation, TDS
Metrocom, LLC, Cablevision Systems
Corporation, CSC Holdings, Inc.,
Cablevision Systems New York City
Corporation, Cablevision of
Brookhaven, Inc., Cablevision of
Connecticut Corporation, Cablevision
of Hudson County, Inc., Cablevision of
Litchfield, Inc., Cablevision of
Monmouth, Inc., Cablevision of New
Jersey, Inc., Cablevision of Oakland,
LLC, Cablevision of Rockland/Ramapo,
LLC, Charter Communications, Inc.,
Charter Communications Holding
Company, LLC, Charter
Communications Operating, LLC, and
Charter Communications
Entertainment I, LLC*

## TABLE OF CONTENTS

I.     STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ...............1

II.    SUMMARY OF ARGUMENT ...........................................................................3

III.   STATEMENT OF FACTS ................................................................................4

    A.    Katz and Katz Patents ........................................................................4

    B.    History of Katz's Licensing/Litigation Campaign.........................................5

    C.    Present Status of Pending Katz Litigation ............................................6

    D.    Patent Office Reexamination Proceedings...........................................7

IV.    LEGAL STANDARDS .....................................................................................7

V.     ARGUMENT .....................................................................................................8

    A.    A Stay Would Neither Prejudice, Much Less Unduly Prejudice
          Katz, Nor Would A Stay Present Katz With A Clear Tactical
          Disadvantage.......................................................................................8

    B.    A Stay Will Simplify The Issues In Question And Trial Of This
          Case...................................................................................................10

         1.    A Stay Will Conserve Judicial Resources And Party
              Resources...............................................................................12

         2.    The Issues Will Be Narrowed And Simplified After The
              PTO Completes Reexamination..............................................14

               a.    Reexamination Will Affect Claim Construction................15

               b.    Reexamination Will Impact the Prior Art Analysis...........18

               c.    Reexamination Will Also Impact Priority Issues...............18

               d.    Amendments Made During Reexamination Will
                   Directly Impact Whether Certain Patents Remain In
                   This Litigation....................................................................19

    C.    Discovery Has Not Begun And A Trial Management Order Has
          Not Been Issued.................................................................................20

VI.    CONCLUSION.................................................................................................22

i

## TABLE OF AUTHORITIES

**Cases**

*Abbott Diabetes Care, Inc., v. Dexcom, Inc.*,
    C.A. No. 05-590 GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006)............ 3, 8, 13

*Abtox, Inc. v. Exitron Corp.*,
    131 F.3d 1009 (Fed. Cir. 1997).............................................................................. 17

*Alloc, Inc v. Unilin Decor N.V.*,
    No. Civ.A. 03-253-GMS, 2003 WL 21640372
    (D. Del. July 11, 2003)............................................................................. 3, 11, 22

*Applera Corp. v. Thermo Electron Corp.*,
    04-CV-1230 (GMS), (D. Del. Dec. 28, 2005) (ORDER) ................................ 3, 12

*ASCII Corp. v. STD Entertainment USA, Inc.*,
    844 F. Supp. 1378 (N.D. Cal. 1994) ....................................................................... 8

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*,
    914 F. Supp. 951 (W.D.N.Y. 1996) ............................................................... 16, 22

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985)....................................................................................... 7

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988)............................................................................. 16

*eBay v. Mercexchange, L.L.C.*,
    126 S. Ct. 1837 (2006) ............................................................................................ 9

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*,
    No. 85 C 7565, 1987 WL 6314 (N.D. Ill. Feb. 2, 1987) ...................................... 22

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988)............................................................................... 7

*Gioello Enters. Ltd. v. Mattel, Inc.*,
    No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan 29 2001) .................... 3, 10

*Grayling Indus., Inc. v. GPAC, Inc.*,
    Civ. No. 1:89-CV-451-ODE, 1991 WL 236196
    (N.D. Ga. Mar. 25, 1991)...................................................................................... 22

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*,
    48 U.S.P.Q.2d 1058 No. CV 97-7681 LGB (Ex),
    1998 WL 670240 (C.D. Cal. July 15, 1998) ..................................... 10, 12, 17, 21

ii

*Hamilton Indus., Inc. v. Midwest Folding Prod. Mfg. Corp.*,
No. 89 C 8696, 1990 WL 37642 (N.D. Ill Mar. 20, 1990) ...................................... 8

*Hewlett-Packard Co. v. Acuson Corp.*,
No. C-93-0808 MHP, 1993 WL 149994 (N.D. Cal. May 5, 1993)...................14

*Intest Corp. v. Reid-Ashman Mfg., Inc.*,
66 F. Supp. 2d 576 (D. Del. 1999) ........................................................................20

*Laitram Corp. v. Morehouse Indus., Inc.*,
143 F.3d 1456 (Fed. Cir. 1998)............................................................................ 16

*Loffland Bros. Co. v. Mid-Western Energy Corp.*,
No. Civ-83-2255-E, 1985 WL 1483 (W.D. Okla. 1985) ................................. 14, 22

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
357 F.3d 1340 (Fed. Cir. 2004)............................................................................ 16

*Middleton, Inc. v. Minn. Mining & Mfg., Co.*,
No. 4:03-CV-40493, 2004 WL 1968669
(S.D. Iowa Aug. 24, 2004)................................................................................... 16

*Paice LLC v. Toyota Motor Corp.*,
No. 2:04-CV-211, 2006 WL 2385139 (E.D. Tex. Aug. 16, 2006) ......................... 9

*Pegasus Dev. Corp. v. DirectTV, Inc.*,
No. Civ.A. 00-1020-GMS, 2003 WL 21105073
(D. Del. May 14, 2003) ................................................................................. *passim*

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)............................................................................ 15

*Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*,
68 U.S.P.Q. 2d 1765, No. 02-74796, 2003 WL 22870902
(E.D. Mich. Oct. 7, 2003) ............................................................................... 13, 22

*Robert H. Harris Co. Inc. v. Metal Mfg. Co. Inc.*,
Civ. No. J-C-90-179, 1991 WL 2176664
(E.D. Ark. June 21, 1991).................................................................................... 22

*Seattle Box Co. v. Indus. Crating & Packaging Inc.*,
731 F.2d 818 (Fed. Cir. 1984)..............................................................................20

*Softview Computer Prods. Corp. v. Haworth Inc.*,
No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471
(S.D.N.Y. Aug. 10, 2000) ............................................................................... 13, 22

iii

*Target Therapeutics, Inc. v. Scimed Life Sys., Inc.*,
    No. C-94-20775, 1995 WL 20470 (N.D. Cal. Jan. 13, 1995)................... 14, 15, 21

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
    766 F. Supp. 212 (D.Del.1991) .................................................................... 8

*Vitronics Corp. v. Conceptronic Inc.*,
    36 F. Supp.2d 440 (D. N.H. 1997) ......................................................... 13, 17

*Xerox Corp. v. 3 Com Corp.*,
    69 F. Supp. 2d 404 (W.D.N.Y.1999) ........................................................... 8

*z4 Tech., Inc. v. Microsoft Corp.*,
    434 F. Supp. 2d 437 (E.D. Tex. 2006) .......................................................... 9

**Statutes**

35 U.S.C. § 302 ................................................................................................. 7

35 U.S.C. § 303................................................................................................. 7

35 U.S.C. § 307................................................................................................. 10, 20

**Treatises**

4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.07[4][b][iv]
    (Mathew Bender & Co. 2004) .......................................................... 20, 21

iv

I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

After delaying for almost eighteen years[1] and after waiting until after the expiration of at least eighteen of the patents-in-suit, on September 1, 2006, Plaintiff, Ronald A. Katz Technology Licensing L.P. ("Katz"), filed this action asserting that the thirty named Defendants individually infringe one or more of twenty-six United States Patents.[2] As of the date of this Motion, all of the Defendants have served and filed their Answer to the Complaint with Counterclaims and Katz has submitted Answers to Defendants' Counterclaims. Also on September 1, 2006, Katz filed four other patent infringement actions in this Court and asserted many of the same patents against sixty-five additional defendants.

All of the named Defendants (i.e., Time Warner Cable Inc., Time Warner NY Cable LLC, Time Warner Entertainment Company LP, AOL LLC, Compuserve Interactive Services Inc., Netscape Communications Corporation, United States Cellular Corporation, TDS Telecommunications Corporation, TDS Metrocom LLC, Cabletelevision Systems Corporation, CSC Holdings Inc., Cablevision Systems New York City Corporation, Cablevision of Brookhaven Inc., Cablevision of Connecticut

---

[1]    United States Patent No. 4,792,968 issued on December 20, 1988.

[2]    The asserted patents are: 4,792,968 ("the '968 patent); 4,930,150 ("the '150 patent"); 4,939,773 ("the '773 patent"); 4,987,590 ("the '590 patent"); 5,128,984 ("the '984 patent"); 5,251,252 ("the '252 patent); 5,297,197 ("the '197 patent"); 5,351,285 ("the '285 patent"); 5,442,688 ("the '688 patent); 5,684,863 ("the '863 patent"); 5,787,156 ("the '156 patent"); 5,815,551 ("the '551 patent"); 5,828,734 ("the '734 patent"); 5,835,576 ("the '576 patent"); 5,898,762 ("the '762 patent"); 5,917,893 ("the '893 patent"); 5,974,120 ("the '120 patent"); 6,035,021 ("the '021 patent"); 6,148,065 ("the '065 patent"); 6,335,965 ("the '965 patent"); 6,349,134 ("the '134 patent"); 6,424,703 ("the '703 patent"); 6,434,223 ("the '223 patent"); 6,449,346 ("the '346 patent"); 6,512,415 ("the '415 patent"); and 6,678,360 ("the '360 patent") (collectively "the asserted patents").

1

Corporation, Cablevision of Hudson County Inc., Cablevision of Litchfield Inc.,
Cablevision of Monmouth Inc., Cablevision of New Jersey Inc., Cablevision of Oakland
LLC, Cablevision of Rockland/Ramapo LLC, Charter Communications Inc., Charter
Communications Holding Company LLC, Charter Communications Operating LLC,
Charter Communications Entertainment LLC, Qwest Communications International Inc.,
Qwest Wireless, L.L.C., Qwest Communications Corporation, Qwest LD Corp., Qwest
Broadband Services, Inc., and Qwest Interprise America, Inc. (collectively
"Defendants")) move this Court to stay this action pending reexamination by the United
States Patent and Trademark Office ("the PTO") of seven patents-in-suit, at least four
other related but unasserted patents, and the possible reexamination of one other patent-
in-suit.[3] This Court should stay the proceeding because: (1) Katz will not be prejudiced,
much less unduly prejudiced, by a stay; (2) a stay will simplify the proceedings based
upon the reexamination findings and conserve this Court's and the parties' resources by
postponing extensive discovery relating to patent claims which are likely to be amended
or even cancelled during reexamination; and (3) this case has not progressed much past
the initial pleading stage, discovery has not yet begun and no trial date has been set.

Defendants therefore respectfully request that this Court stay all proceedings in
this matter pending reexamination of the Katz patents, and that this Court enter
Defendants' Proposed Order attached hereto.

---

[3]  United States Patent Nos. currently being reexamined are: 5,255,309, 5,259,023, 5,351,285,
    5,561,707, 5,684,863, 5,787,156, 5,815,551, 5,828,734, 5,974,120, 6,292,547, and 6,434,223.
    United States Patent No. 5,128,984 has been submitted for reexamination but as of the date of
    this motion, the PTO had not acted on the request.

2

## II.    SUMMARY OF ARGUMENT

1.  The PTO is currently reexamining seven patents-in-suit, and four other related Katz patents. In addition, one patent-in-suit has a request for reexamination pending. As this Court is aware, during a reexamination, the PTO reviews cited prior art and determines whether claims in the patent should be cancelled or amended. Statements made during reexamination by the PTO and the patent owner become part of the prosecution history and are crucial to claim construction. Moreover, terms found in other patents' claims, even patents that are not themselves subject to reexamination, will also be affected by the PTO's and patent owner's positions during the reexamination process and the PTO's conclusions regarding the reexamined patents' claims. Finally, in these reexamination the Patent Office is undertaking a complex review regarding the priority dates to which the patents are entitled. This review may have significant impact on the prior art applicable to the patents.

2.  The decision to stay a case, including pending patent reexamination, is within this Court's discretion.

3.  As this Court has repeatedly stated,[4] courts look to several factors when determining whether to exercise their discretion in granting a stay, those factors include:

    > (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party (in this case Katz);

    > (2) whether a stay will simplify the issues in question and trial of the case; and

    > (3) whether discovery is complete and whether a trial date has been set.

4.  All of these factors weigh heavily in favor of granting a stay pending the outcome of the PTO's reexamination of the Katz patents.

---

[4]  *See e.g., Abbott Diabetes Care, Inc., v. Dexcom, Inc*, C.A. No. 05-590 GMS, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006) (citing *Xerox Corp. v. 3 Com Corp*, 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999)); *Applera Corp v. Thermo Electron Corp*, 04-CV-1230 (GMS), (D. Del. Dec. 28, 2005) (ORDER); *Alloc, Inc v. Unilin Decor N.V.*, No. Civ.A. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (same); *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. Civ.A. 00-1020-GMS, 2003 WL 21105073, at * 2 (D. Del. May 14, 2003) (same); *Gioello Enters. Ltd v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *1-2 (D. Del. Jan 29 2001) (same).

3

5.  *First*, a stay would not prejudice, much less unduly prejudice, Katz because: (1) Katz's delay in filing this and its other actions demonstrates that time is not of the essence; and (2) Katz is only entitled to monetary damages (if anything), which will be sufficient to offset any supposed "damages" which may accrue during a stay.

6.  *Second*, a stay may simplify or reduce the issues for this Court's consideration, or it may dispense with the litigation entirely, and staying this case pending reexamination of the several Katz patents will conserve this Court's as well as the parties' resources.

7.  *Third*, in light of the case's early posture, no effort will be wasted because discovery has not begun, no case management order has been issued and a trial date has not been set.

## III.  STATEMENT OF FACTS

### A.  Katz and Katz Patents

Ronald A. Katz is the alleged inventor of the patents-in-suit and founder of Ronald A. Katz Technology Licensing L.P., a limited partnership formed for the purpose of licensing the Katz patents. D.I. #1, Complaint at ¶ 40. According to Katz, the claimed inventions are directed to the integration of telephonic systems with computer databases and live operator call centers to provide interactive call processing services. *Id.* at ¶ 43. The collective prosecution history of the Katz patents (which have been before the PTO for more than twenty years) runs into the thousands of pages. To Defendants' knowledge, Katz does not make or market any of the alleged inventions claimed in the myriad of claims.

In this matter, Katz claims that the thirty Defendants have infringed or are infringing one or more claims of twenty-six Katz patents. Complaint at ¶¶ 51-77. Of the twenty-six asserted patents, eighteen were already expired when Katz filed suit. *Id.* at ¶¶ 52, 53, 59, 61-63, 65-67, and 69-77.

4

**B.      History of Katz's Licensing/Litigation Campaign**

Katz claims that it has licensed its patented technology to over 150 companies while also filing "several" patent infringement cases. *See* Ex. 1, Katz Resp. to Mot. to Trnsfr. & Consolidate Pursuant to 28 U.S.C. § 1407 at 3.[5] In past litigation, Katz has repeatedly demonstrated its desire to avoid litigation by settling and granting licenses as only three actions progressed beyond the initial stages of litigation. No case that Katz has filed has ever reached trial. Katz has never even filed a motion for preliminary injunctive relief. *Id.* For example, in *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.*, No. 97-CV-4452 (E.D. Pa.) Katz asserted infringement of several of the patents at issue in this case. The Pennsylvania case progressed through the claim construction phase but settled shortly thereafter. In *Verizon California, Inc.* v. *Ronald A. Katz Technology Licensing, L.P.*, No. 01-CV-09871 (C.D. Cal.), a non-infringement and invalidity declaratory judgment action that included a related counterclaim for infringement, the court construed several terms of the patents in this case and ruled on several motions for summary judgment, following which (approximately six weeks prior to trial) the parties settled. In *Ronald A. Katz Technology Licensing, L.P. v. Citibank, N.A.* (5:06-CV-142), which is still pending, the District Court for the Eastern District of Texas has heard arguments regarding claim construction but has not, as of this date, issued a claim construction ruling.

---

[5]      Unless otherwise indicated, all citations to Exhibits refer to the exhibits attached to the declaration of Kelly E. Farnan filed concurrently herewith.

5

C.     **Present Status of Pending Katz Litigation**

Nationwide, Katz litigations presently involve twenty-five actions asserting a total of twenty-seven patents against more than 170 different defendants before four different judges in two separate districts. *See* Ex. 1, Katz's Resp. to Mot. to Trnsfr. and Consolidate at ¶ ¶ 1 and 9-12. Of the twenty-five pending actions, eighteen were initiated on August 21, 2006 and the five actions pending before this Court[6] were filed on September 1, 2006. The five actions in this Court involve over 90 defendants and twenty-one of the twenty-six patents Katz asserted in this action are also asserted in at least one of the four other actions.

Katz's other twenty separate actions are presently pending in the Eastern District of Texas. Target Corporation, a defendant in one of the Texas proceedings, No. 5:06-CV-188 (E.D. Tex) (Texarkana Division), asked the Joint Panel on Multidistrict Litigation ("JPML") to transfer and consolidate *all* twenty-five of the pending Katz actions to the Central District of California, pursuant to 28 U.S.C. § 1407. Katz opposed this motion, as did virtually all of the defendants in the Delaware actions.[7]

---

[6]   *Ronald A. Katz Tech. Licensing, L.P. v. Reliant Energy, Inc. et al* (1:06-cv-00543), *Ronald A. Katz Tech. Licensing, L.P. v. TD Banknorth Inc. et al* (1:06-cv-00544), *Ronald A. Katz Tech. Licensing, L.P. v. Ahold USA Inc. et al* (1:06-cv-00545), *Ronald A. Katz Tech. Licensing, L.P. v. Time Warner Cable Inc. et al* (1:06-cv-00546), and *Ronald A. Katz Tech. Licensing, L.P. v. Am Int'l Group Inc. et al* (1:06-cv-00547).

[7]   In this action, oppositions were filed by the following defendants (encompassing all related named entities): Time Warner, AOL, Charter, U.S. Cellular, Cablevision and Qwest. In the other Delaware actions, oppositions were filed by the following defendants (encompassing all related named entities): CIGNA, AIG, Aquila, Experian, National City Bank, Comerica, DHL, Express Scripts, Jean Coutu, Maxi Drug, Eckerd, Brooks Pharmacy, TD Banknorth, Wilmington Trust, La Salle Bank, ABN, AMRO, Rite-Aid, Duke Energy and Ahold.

6

### D.    Patent Office Reexamination Proceedings

Pursuant to 35 U.S.C. § 302, any person may at any time request that the PTO reexamine an issued patent. 35 U.S.C. § 302. Within three months of receiving a request for reexamination, the Patent Office must decide if the request raises "a substantial new question of patentability affecting any claim of the patent." 35 U.S.C. § 303. Alternatively, the Director of the Patent Office may determine "on his own initiative" whether "a substantial new question of patentability is raised by patents and publications discovered by him...." *Id.*

The PTO is presently reexamining eleven Katz patents; another request for reexamination is pending PTO approval. Seven of the eleven patents currently being reexamined are patents Katz asserts in this case. The one pending request for reexamination is also a patent-in-suit. The Director of the Patent Office ordered the four remaining reexaminations on his own. In the Director-ordered reexaminations, the patents at issue are related to the patents-in-suit but are not asserted here.

## IV.    LEGAL STANDARDS

The decision to stay a case is within this Court's discretion. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This Court's authority to grant a stay also applies to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination") (internal citations omitted). Indeed, staying litigation pending the outcome of a patent reexamination is consistent with the underlying purpose of the reexamination procedure — *i.e.*, the

7

promotion of a speedy and cost effective patent validity assessment. *Abbott Diabetes Care,* 2006 WL 2375035, at \*6; *Hamilton Indus., Inc. v. Midwest Folding Prod. Mfg. Corp.,* No. 89 C 8696, 1990 WL 37642, at \*1 (N.D. Ill. Mar. 20, 1990) ("The reexamination procedure was created to promote the speedy and less costly review of the validity of patents in certain limited situations."); *ASCII Corp v. STD Entm't USA, Inc.,* 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("[T]here is a liberal policy in favor of granting motions to stay pending the outcome of USPTO reexamination or reissuance proceedings.").

Courts look to several factors to determine whether to order a stay, including: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Com Corp.,* 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999) (citing cases); *see also United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test). This Court has assessed these factors on several other occasions and determined that stays were appropriate. *See supra* n. 4.

V.    **ARGUMENT**

Each factor weighs in favor of staying this case pending the outcome of the Katz patents currently subject to PTO reexamination.

A.    **A Stay Would Neither Prejudice, Much Less Unduly Prejudice Katz, Nor Would A Stay Present Katz With A Clear Tactical Disadvantage.**

An examination of the non-movant's prejudice typically involves a determination of the harm suffered should the non-movant be deprived its expeditious day in court. *See e.g., Pegasus Dev.,* 2003 WL 21105073, at \* 2 (noting that the Court was "sensitive to

8

the plaintiffs' right to have their day in court" but nevertheless granting a stay). In this case, Katz's almost eighteen year delay in filing suit against the 95 defendants in the five actions pending before this Court belies any claim of prejudice that Katz may make. Indeed, Katz's mass September 1, 2006 filings demonstrate that this case is part of an end-game strategy, implemented after the expiration of eighteen of the patents-in-suit, devised to collect any remaining royalties that Katz claims to be owed.

In any event, Katz is not entitled to injunctive relief. Katz is an intellectual-property licensing company that does not compete in the industry. As such, assuming *arguendo* that Katz is entitled any relief whatsoever, Katz will only be entitled to monetary damages. *See eBay v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1841 (2006) (reversing the "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances" and applying the traditional four-factor test for determining whether injunctive relief is warranted, which includes assessing whether monetary damages are adequate, when determining whether to grant a permanent injunction); *see also id.* at 1842 (Kennedy J. concurring) (recognizing that where patents are asserted by entities which do not use them for production but rather primarily for obtaining licensing fees, "legal damages may well be sufficient…and an injunction may not serve the public interest); *z4 Tech , Inc. v. Microsoft Corp*, 434 F. Supp. 2d 437, 441-42 (E.D. Tex. 2006) (finding monetary damages adequate because plaintiff was not precluded from licensing its patent to others); *Paice LLC v. Toyota Motor Corp*, No. 2:04-CV-211, 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006) (finding that the plaintiff's supposed "inability to license" was not sufficient to find monetary damages inadequate where plaintiff did not compete in the market or produce the patented

9

product). Accordingly, no monetary prejudice prevents this Court from granting a stay.
*See Gioello Enter*, 2001 WL 125340, at *2 ("Gioello is not selling or actively licensing
goods or services related to [its] patent; money damages is an adequate remedy for any
delay in redress."); *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc*, 48
U.S.P.Q. 2d 1058, 1061, No. CV 97-7681 LGB (Ex), 1998 WL 670240 (C.D. Cal. July
15, 1998) (ordering a stay because money damages would adequately compensate the
plaintiff).

Because Katz will suffer no prejudice, much less "undue" prejudice, this factor
weighs heavily in favor of granting a stay.

### B.    A Stay Will Simplify The Issues In Question And Trial Of This Case.

Katz claims that Defendants infringe one or more claims of the patents-in-suit.
This Court will need to examine the validity of the patents (based on prior art and
deficiencies in the patents' specifications). During a reexamination, the PTO reviews
cited prior art and determines whether it renders one or more of the claims, in their
originally issued form, unpatentable as well as whether information added or deleted
during the reexamination proceeding comports with 35 U.S.C. § 112. 37 C.F.R. 1.552.
The PTO can cancel or amend one or more claims of a reexamination patent in light of
newly considered prior art. 35 U.S.C. § 307(a).[8] Katz may also amend claims. But
more importantly, the PTO may cancel some or all of the claims at issue in the
reexaminations. PTO statistics demonstrate that in the twenty-five years since the start of

---

[8]    35 U.S.C. § 307(a) (Upon completion of the reexamination process, the PTO "will issue and
publish a certificate canceling any claim of the patent finally determined to be unpatentable,
confirming any claim of the patent determined to be patentable, and incorporating in the
patent any proposed amendment of new claim determined to be patentable.").

10

*ex parte* reexaminations, the claims are either cancelled outright or changed 74% of the time. *See* Ex. 2, PTO *Ex Parte* Reexamination Filing Data - March 31, 2006.[9]  Thus, the PTO's reexamination will impact the entire basis for this action.  For example, during the reexaminations the PTO will evaluate prior art and priority dates and Katz will likely take positions, to be recorded in the reexamination prosecution histories, regarding the prior art.  Katz has already taken positions regarding priority dates and will likely take additional positions.

Moreover, reexamination of these patents will undeniably impact this Court's resolution of many of the issues relating to all of the patents-in-suit because the patents arise from related applications,[10] refer to the same subject matter,[11] and share many of the same terms.[12]  *See also Alloc*, 2003 WL 21640372, at *2 (explaining that even though

---

[9]  Exhibit 11 is a copy of "Exhibit A" to Katz's Supplemental Claim Construction Brief Addressing New Evidence filed in the Eastern District of Texas (5:05-CV-142-DF) on December 4, 2006.

[10]  For example, twenty-two of the twenty-six asserted patents all allegedly relate to telephone control systems and arose from Katz's first patent application.  The remaining four asserted patents arose from Katz's '773 patent application and allegedly relate to multiple party telephone control systems.  Eleven of the asserted patents are either being reexamined or are direct descendants of one or more patents currently being reexamined.

[11]  All of the asserted patents allegedly relate to telephone control systems, public communications facilities, telephone call processing, or telephone interfaces as demonstrated by their various patent titles.

[12]  As one example, the PTO has determined that one prior art publication ("Barger") discloses the use of three Katz claim terms ("analysis control system," "communication facility," and "remote terminals") found in just one claim of one of the reexamination patents (claim 27 of the '863 patent).  For this one claim to survive reexamination, Katz must either amend the claim to further narrow it, acknowledging that Barger discloses the three terms, or distinguish Barger thereby further defining the meaning of the three terms.  Importantly, the term "analysis control system" is found in one or more claims of three other patents-in-suit (*i.e.*, the '762, '021, and '346 patents); the term "communication facility" is found in one or more claims of fourteen other patents-in-suit (*i.e.*, the '968, '984, '150, '252, '197, '576, '762, (Continued...)

11

asserted patent was not subject to reexamination, because a related patent was in reexamination and because patents were "alike in subject matter as well as in many of their claims" there was "a sufficient correlation among all of the patents" warranting a stay). Accordingly, the PTO's reexamination findings will simplify the case, and serve to conserve this Court's resources should this Court grant a stay.

At the very least, the PTO's analysis and application of asserted prior art will further inform this Court of the applicability and scope of the art as well as inform the Court regarding the claim construction of common terms found throughout the Katz patents. *Guthy-Renker*, 48 U.S.P.Q. 2d at 1060-1061 (noting that the expertise of the PTO in reexamining the claims of the patents-in-suit will be instructive to the Court's claim construction, warranting a delay of *Markman*).

### 1. A Stay Will Conserve Judicial Resources And Party Resources.

This Court has previously recognized that it can conserve its scarce resources by staying cases pending the outcome of concurrent PTO reexamination proceedings. *See e.g.*, *Abbott Diabetes Care*, 2006 WL 2375035, at *6; *Applera*, 04-CV-1230 (GMS), D.I. 81, *Alloc*, 2003 WL 21640372, at *2; *Pegasus Dev*, 2003 WL 21105073, at * 2; *Gioello Enters.*, WL 2001 125340, at *1-2. The facts of the present case are consistent with the facts of these cases and support conserving this Court's resources by postponing resolution of issues entirely dependent upon the patent claims — many of which will be affected in some manner by the PTO's reexamination findings.

---

'893, '021, '965, '134, '703, '346, and '415 patents); and the term "remote terminals" is found in one or more claims of thirteen other patents-in-suit (*i.e.*, the '150, '773, '590, '984, '252, '197, '688, '762, '893, '021, '965, '134, and '346 patents).

12

*First*, because the claims' scope may change, this Court should not review and decide claim construction until any reexamination decision is rendered. *Vitronics Corp. v. Conceptronic Inc.*, 36 F. Supp.2d 440, 442 (D. N.H. 1997). Indeed, addressing and deciding the claim construction prior to the PTO's findings in reexamination would deprive this Court of the PTO's expertise, something this Court has been reluctant to do in the past. *Pegasus Dev.*, 2003 WL 21105073, at * 2. A premature claim construction ruling would also run the risk of inconsistent rulings or this Court issuing in effect, advisory opinions. *Abbott Diabetes Care*, 2006 WL 2375035, at *6 (citing *Gioello Enters.*, No. C.A. 99-375 GMS, WL 2001 125340, at *1). *Second*, because this Court's claim constructions will impact both infringement and validity, the reexamination will affect this Court's involvement in all remaining aspects of the case (*e.g.*, discovery, summary judgment, and possibly trial). *See Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*, 68 U.S.P.Q. 2d 1765, 1758, No. 02-74796, 2003 WL 22870902 (E.D. Mich. Oct. 7, 2003) ("[T]he PTO's determination will be beneficial to the efficient resolution of this action. The PTO may resolve any remaining disputes [and] simplify the issues . . . ."); *Softview Computer Prods. Corp. v. Haworth Inc.*, No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000) ("[I]f the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified."). *Third*, because Katz has dozens of other patent infringement cases pending against more than 140 defendants in this and other District Courts, it is likely that dispositive results (from another District or from the Federal Circuit) will impact the case before this Court during the pendancy of a stay. *Fourth*, it is likely that asserted claims of some of the patents-in-suit will be cancelled, or amended such that discovery

13

into certain of Defendants' accused devices would be irrelevant and wasteful, and other asserted defenses (e g., laches, estoppel, waiver, unclean hands, etc.) would be mooted as to such claims. *Loffland Bros. Co. v. Mid-Western Energy Corp.*, No. Civ-83-2255-E, 1985 WL 1483, at *2 (W.D. Okla. 1985) ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled.").

In short, absent a stay, this Court's resources would be drained by motion practice relating to issues which may eventually become moot and discovery disputes relating to claims that may either change or not exist after reexamination. *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808 MHP, 1993 WL 149994 at *2 (N.D. Cal. May 5, 1993) ("[C]ourts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers."); *Target Therapeutics, Inc. v. Scimed Life Sys., Inc.*, No. C-94-20775, 1995 WL 20470 at *2 (N.D. Cal. Jan. 13, 1995) ("Absent a stay [pending reexamination], ...the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination.").

In addition, the costs of *all* parties (including Plaintiff) will be reduced if this Court grants a complete stay. *Target Therapeutics,* No. C-94-20775, 1995 WL 20470 at *2 ("Absent a stay [pending reexamination], the parties may end up conducting a significantly wider scope of discovery than necessary....).

### 2. The Issues Will Be Narrowed And Simplified After The PTO Completes Reexamination.

In addition to the preservation of judicial and party resources that a stay would provide, the PTO's decisions on the pending reexamination applications will also

14

simplify and narrow many issues that will eventually be before this Court. Specifically, a stay will aid this Court by narrowing issues relating to claim construction, patent validity based upon prior art, priority issues, and whether certain asserted claims and patents will remain.

### a. Reexamination Will Affect Claim Construction.

The impact of the current reexamination proceedings on the construction of claims in the patents-in-suit is clear. During reexamination there is typically a give-and-take between the Patent Examiner and the applicant in which claims that have been rejected as unpatentable are amended. Therefore, it is likely that during the current reexamination proceedings, the particular claim language in the reexamination patents-in-suit will either be changed or the claims cancelled altogether should those claims be found unpatentable over the prior art.[13]

Even if the claim language is not changed or deleted, Katz's representations to the PTO will inform this Court as to the meaning of similar terms found in the other non-reexamination patents. The PTO's and the patentee's actions during the reexamination procedure become part of the prosecution history. *See e.g., E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (statements made

---

[13] Indeed, many of Katz's infringement contentions may simply be rendered moot by a cancellation or modification of the claims presently being reexamined. *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) ("Because, [sic] the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it."); *Middleton, Inc. v. Minn. Mining & Mfg., Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *10 (S.D. Iowa Aug. 24, 2004) (*citing Gioello Enters. Ltd., v. Mattel, Inc.*, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (finding that PTO's decision could render moot the issues of non-infringement and invalidity before the court in pending motions for summary judgment)).

15

during PTO proceedings "are relevant prosecution history when interpreting claims"). And the prosecution history is a valuable source of intrinsic evidence which may be used for claim construction purposes. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). The prosecution history of related, but unasserted patents, may also inform this Court as to the meaning of terms used consistently throughout the Katz family of patents. *See, e.g., Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349-1350 (Fed. Cir. 2004) (holding that statements made in prosecution of one patent are relevant to the scope of all sibling patents); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1460 & n.2 (Fed. Cir. 1998) (noting that it was proper to consider the prosecution histories of two related re-examination patents originating from the same parent, to determine the meaning of a term used in both patents); *Abtox, Inc. v. Exitron Corp.*, 131 F.3d 1009, 1010 (Fed. Cir. 1997) (recognizing that common terms in separate but related patents should be construed in like manner). Accordingly, the interactions between Katz and the PTO will undeniably impact this Court's claim construction. *Guthy-Renker*, 48 U.S.P.Q. 2d at 1060-1061 (noting that the expertise of the PTO in reexamining the claims of the patents-in-suit will be instructive to the court's claim construction, warranting a delay of *Markman*); *Vitronics*, 36 F. Supp. 2d at 442 ("The reexamination process could more precisely define the scope of claim 1, or it could leave claim 1 unchanged. Because determining the scope of the disputed claim is central to the resolution of this case, it would be inefficient for the court to expend time and resources engaging in claim interpretation while the scope of the claim is still under review at the PTO.").

The current reexaminations of the '156 and '707 patents demonstrate how the PTO's actions in the ongoing reexaminations have an immediate impact on the

16

construction of claim terms found in the patents in suit. As recently as July 2006, in connection with the '707 reexamination, Katz submitted an argument to the PTO regarding the meaning of a particular term found in numerous claims of the patents in suit: "consumable participation key." Katz argued that that term was broad enough to encompass a participation key that, once consumed, could nonetheless be refreshed under certain circumstances (*e.g.*, not automatically). Ex. 3, Reexam Control No. 90/006,978, Response filed by Katz on July 17, 2006 at 53. In September, first in connection with the '156 reexamination and then in connection with the '707 reexamination, the Examiner determined that "[t]he consumable key number cannot ever—for any reason—be refreshed or recharged or renewed once the predefined number of uses have been used ..." Ex. 4, Reexam Control No. 90/007,697, Office Action dated September 8, 2006 at 4-5; Ex. 5, Reexam Control No. 90/006,978, Office Action dated September 29, 2006 at 92. In response, in October, faced with the Examiner's claim construction, Katz abandoned its prior construction and adopted the Examiner's narrow definition. Ex. 6, Reexam Control No. 90/007,697, Response filed by Katz on October 26, 2006 at 21-22. This single example demonstrates the benefits and efficiencies of allowing the PTO to conclude the reexaminations before the Court takes up these issues.

The impact of the communications between Katz and the PTO as well as the findings of the PTO on this Court's future claim construction was further demonstrated in another Katz action pending in the Eastern District of Texas (5:05-cv-00142-DF). In that case, *Markman* briefing was complete and a two day *Markman* hearing was held on September 19th and 20th of this year. One month later, a PTO decision during reexamination of one of the patents-in-suit prompted Defendants to move for leave to file

17

supplemental *Markman* briefing. On December 5, 2006, the Eastern District of Texas Court granted the motion and accepted supplemental *Markman* briefing from Katz and the defendants. This scenario aptly demonstrates how the ongoing Katz reexaminations will provide valuable intrinsic evidence that this Court will eventually utilize when construing various terms found throughout the twenty-six asserted patents in this case. Absent a stay, and with patents both asserted and unasserted in reexamination, Katz's ongoing representations and the findings of the PTO during reexaminations process will, like the Texas action above, affect this Court's ability to render its *Markman* ruling.

### b. Reexamination Will Impact the Prior Art Analysis.

In addition, reexamination will also impact Defendants' prior art-based invalidity defenses. During reexamination, the PTO assesses the prior art and compares it to the claims of the patents being reexamined. Should the PTO determine that prior art renders one or more claims of the reexamination patents unpatentable, the PTO will cancel those claims. Likewise, the PTO may also ascertain whether the specification provides support for the claims of the reexamination patent. If not, the claim will be rendered unpatentable and cancelled. Indeed, with regard to the reexamination of the '156 patent, the PTO is currently determining whether there was support for the "consumable key number" term in the original specification. *See* Ex. 7, Reexam Control No. 90/007,697, Examiner Interview Summ. Record October, 12, 2006.

### c. Reexamination Will Also Impact Priority Issues.

Apart from the PTO's expertise in examining the prior art during reexamination, the PTO will also narrow the issues before this Court by determining the priority dates for the inventions claimed in the Katz patents. All but two of the twenty-six asserted

18

patents arose from either continuation, continuation-in-part or divisional applications. As such, only claims that were supported by the original specification are entitled to the original specification's priority date. 35 U.S.C. §§ 119-121. Should the PTO determine, for example during the pending '156 patent reexamination, that one or more claims are not entitled to an earlier priority date, this would drastically affect what is and what is not prior art to many of the claims of the patents-in-suit.

### d. Amendments Made During Reexamination Will Directly Impact Whether Certain Patents Remain In This Litigation.

As discussed above, it is very likely that Katz will have to amend one or more claims of any reexamination patent or patents to overcome a prior art rejection, and the amendments result in claims that are not substantially identical to the original claims, the original claims of the patent or patents will be deemed surrendered. 35 U.S.C. § 307 (stating that 35 U.S.C. § 252 applies to amended reexamination claims). Accordingly, during the reexamination of Katz's expired patents (*i.e.*, the '285, '863, '156, and '551 patents) should Katz submit claim amendments resulting in claims that are not substantially identical to the original claims, those patent claims will be surrendered and no longer at issue because Katz cannot collect damages relating to any purported infringement of those claims. *See Seattle Box Co. v. Indus. Crating & Packaging Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984) (noting that under § 252 "[a]n original patent cannot be infringed" if the new claims are not substantially identical to the original claims because "the original patent is surrendered"); *Intest Corp. v. Reid-Ashman Mfg., Inc.*, 66 F. Supp. 2d 576, 583 (D. Del. 1999) ("[I]f the reexamined and original claims are not identical, then the patentee has no right to damages for infringement prior to the reissue or reexamination date, because the original patent has been surrendered and is

19

extinguished."). Thus, entire patents could be removed from this litigation if, as is
statistically likely, amendments are made to the claims of those patents.

In short, granting a stay will conserve this Court's and the parties' resources,
allow this Court the benefit of the PTO's amendment, cancellation or affirmation of the
claims' scope prior to the Court conducting its own claim interpretation, and narrow the
issues to be decided as they may eventually be rendered moot. As this Court previously
recognized under similar circumstances:

> [A] stay may result in a simplification or reduction of issues for the court's
> consideration, or it may dispense with the litigation entirely. These are
> considerable economies indeed, particularly in this case. Given the
> involved prosecution history of the various patents-in-suit and…related
> patents, the number of claim terms at issue, the inordinate amount of prior
> art references, and the PTO's conclusion that all of the challenged claims
> warrant reexamination, the court finds particular merit in permitting an
> additional layer of review by the PTO before expending further judicial
> resources.

*Pegasus Dev.*, 2003 WL 21105073, at * 2 (citations omitted).

For all of the foregoing reasons, this factor also weighs heavily in favor of
granting a stay.

## C. Discovery Has Not Begun And A Trial Management Order Has Not Been Issued.

"Stays are more likely to be granted if requested early in litigation before
substantial discovery and trial preparation and less likely to be granted if requested late."
4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.07[4][b][iv] (Mathew Bender & Co.
2004). In *Target Therapeutics*, 1995 WL 20470 at *2, the court ordered a stay because
no significant discovery or trial preparation had taken place. And in *Guthy-Renker*, 48
U.S.P.Q. 2d at 1060, the court noted that "the relevant factors weigh heavily in favor of

20

staying the proceedings pending the conclusions of the reexamination" when the parties had not yet engaged in expensive discovery and a trial date had not been set.

In this case, the parties have done no discovery. The Court has not entered a case management order much less set a trial date. Other than the service of the Complaint, the filing of Answers, and the submission of *pro hac* petitions, virtually every aspect of the case remains (*e.g.*, written discovery, depositions, *Markman* briefing, *Markman* ruling, expert reports, dispositive motions and rulings, pretrial papers, and setting a trial date). Moreover, even if this case were at a later stage, courts have frequently determined that a stay is nevertheless warranted pending patent reexamination.[14]   As discovery has not even begun, much less a trial date set, this third and final factor also strongly supports Defendants' request for a stay.  *See, e.g., Alloc*, 2003 WL 21640372, at *3 (granting a stay where discovery had not begun, a discovery schedule not been entered, and no trial date had been set).

---

[14]   *Ralph Gonnocci*, 68 U.S.P.Q.2d at 1756-1760 (granting defendant's motion to stay filed less than two months before trial was scheduled to commence and after extensive discovery); *Softview Computer Prods.*, No. 97 CIV. 8815 2000 WL 1134471, at * 3 (granting motion to stay after burdensome discovery); *Bausch & Lomb*, 914 F. Supp. at 953 (granting motion to stay after fact discovery was completed and trial date set); *Robert H. Harris Co. v. Metal Mfg Co.*, Civ. No. J-C-90-179, 1991 WL 217666, at * 4 (E.D. Ark. June 21, 1991) (granting motion to stay approximately one month before trial was scheduled to begin); *Grayling Indus., Inc. v. GPAC, Inc.*, Civ. No. 1:89-CV-451-ODE, 1991 WL 236196, at * 3 (N.D. Ga. Mar. 25, 1991) (granting motion to stay after action had been pending for two years and pretrial order was signed); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, No. 85 C 7565, 1987 WL 6314, at *4 (N.D. Ill. Feb. 2, 1987) (granting motion to stay after discovery was completed); *Loffland Bros.*, 1985 WL 1483, at * 2 (granting motion to stay after substantial discovery, issuance of the pretrial order, and continuance of original trial date).

21

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Stay Action Pending the Patent And Trademark Office's Reexamination of the Katz Patents, and that this Court enter Defendants' Proposed Order attached hereto.


OF COUNSEL:

David K. Callahan
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

/s/ Jeffrey L. Moyer
Jeffrey L. Moyer (#3309)
Moyer@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Qwest*
*Communications Int'l Inc., Qwest Wireless,*
*L.L.C., Qwest Communications Corp., Qwest LD*
*Corp., Qwest Broadband Services, Inc., and*
*Qwest Interprise America, Inc.*


Dated:  December 18, 2006

22

_/s/ Frederick L. Cottrell, III_
Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Time Warner Cable
Inc., Time Warner NY Cable LLC, Time Warner
Entertainment Company LP, AOL LLC,
Compuserve Interactive Services Inc., Netscape
Communications Corporation, United States
Cellular Corporation, TDS Telecommunications
Corporation, TDS Metrocom, LLC, Cablevision
Systems Corporation, CSC Holdings, Inc.,
Cablevision Systems New York City
Corporation, Cablevision of Brookhaven, Inc.,
Cablevision of Connecticut Corporation,
Cablevision of Hudson County, Inc., Cablevision
of Litchfield, Inc., Cablevision of Monmouth,
Inc., Cablevision of New Jersey, Inc.,
Cablevision of Oakland, LLC, Cablevision of
Rockland/Ramapo, LLC, Charter
Communications, Inc., Charter Communications
Holding Company, LLC, Charter
Communications Operating, LLC, and Charter
Communications Entertainment I, LLC*

Dated: December 18, 2006

23

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2006, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

### BY ELECTRONIC MAIL AND HAND DELIVERY

Mary B. Graham
Julia Heaney
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19899-1347

I hereby certify that on December 18, 2006, the foregoing document was sent to the

following non-registered participants in the manner indicated:

### BY ELECTRONIC MAIL

Patrick J. Flinn
Kristen L. Melton
Jeffrey A. Cooper
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

David Maxwell
William R. Hubbard
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Angela Payne James
Cherri Gregg
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Blas P. Arroyo
Alston & Bird LLP
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000

John W. Kozak
Steven P. Petersen
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601

Josh Krevitt
Charles J. Boudreau
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

1

Robert T. Haslam
Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA  94025-3506

Michael K. Plimack
Dale A. Rice
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA  94104-2878

Jeffrey S. Standley
James L. Kwak
F. Michael Speed, Jr.
Standley Law Group LLP
495 Metro Place South, Suite 210
Dublin, OH 43017


_Kelly E. Farnan_
Kelly E. Farnan (#4395)
farnan@rlf.com

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-1230 (GMS) |
| v. | ) ) | |
| THERMO ELECTRON CORPORATION, | ) ) | |
| Defendant. | ) ) | |
| THERMO FINNIGAN LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-110 (GMS) |
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

1.  On September 7, 2004, Applera Corporation, MDS Inc., and Applied Biosystems/MDS

    Sciex Instruments (collectively, "AB/Sciex") filed Civil Action No. 04-1230 against Thermo

    Electron Corporation ("Thermo Electron"), alleging infringement of U.S. Patent No.

    4,963,736 (the "'736 patent"). On February 23, 2005, Thermo Finnigan LLC ("Thermo"),

    a subsidiary corporation of Thermo Electron, filed the above-captioned countersuit, Civil

    Action No. 05-110, against AB/Sciex, alleging infringement of U.S. Patent No. 6,528,784

    (the "'784 patent"). On April 27, 2005, the court consolidated the 04-1230 action with the

05-110 action to streamline the discovery process and prevent duplicative litigation. Presently before the court, is AB/Sciex's motion to stay the 05-110 action pending reexamination of the '784 patent by the Patent and Trademark Office (the "PTO").[1] The present motion arises out of the parties' correspondence with the PTO following the filing of the 05-110 lawsuit.

2.     On March 4, 2005, Thermo filed a request with the PTO for a broadening reissue of the '784 patent. On July 29, 2005, AB/Sciex filed a protest with the PTO regarding the reissue filing. Subsequently, on September 16, 2005, AB/Sciex filed a Request for Reexamination of the '784 patent with the PTO. On November 4, 2005, the PTO granted AB/Sciex's request. On November 18, 2005, AB/Sciex filed the present motion to stay the litigation of the '784 patent pending the outcome of the reexamination procedure.

3.     AB/Sciex contends that a stay is appropriate because it would avoid a waste of the court's and the parties' resources. (D.I. 43, at 2.) According to AB/Sciex, waiting until the patent emerges from reexamination would focus the case for the following reasons: (1) the court will not need to revisit claim construction of the '784 patent to take into consideration the new intrinsic record created during the reexamination; (2) if the patent is declared invalid, the suit will, in all likelihood, be dismissed; (3) the outcome of reexamination may encourage settlement; (4) the reexamination record may focus the litigation and reduce the trial issues; and (5) the cost to the parties and court will most likely be reduced. (*Id.* at 3.) AB/Sciex further contends that allowing the case to proceed to trial without the

---

[1] For convenience, and because AB/Sciex's motion requests a stay of the 05-110 case, the court will cite to case documents using the D.I. number from the 05-110 case.

reexamination record would create a substantial risk of inconsistent rulings or the issuance of an advisory opinion if the PTO concludes that the patent is invalid. (*Id.*) Lastly, AB/Sciex contends that it is not attempting to gain a tactical advantage, and that a stay would not unduly prejudice Thermo.

4.      Conversely, Thermo maintains that AB/Sciex's motion is merely a litigation tactic crafted by AB/Sciex to cause delay. (D.I. 56, at 1.) Thermo further asserts that granting the stay would be inefficient in that it would "undo the very efficiencies the court created by consolidati[ng the two cases]." (*Id.*) Additionally, Thermo asserts that it will be prejudiced if the court stays the case because it will be "delay[ed] in its ability to stop AB/Sciex's infringement." (*Id.* at 12.) Finally, Thermo asserts that if AB/Sciex "were sincere in its assertion that a stay is not prejudicial to the patentholder, it would offer to stay its claim on the '736 patent until the reexamination of the '784 patent is over, so that the parties and the [c]ourt can continue to benefit from the efficiencies of consolidation." (*Id.*)

5.      After having considered the parties submissions on the issue (D.I. 42, 43, 56, 64), the court concludes that staying both cases best serves the interests of justice, and is the most efficient approach to the consolidated schedule that the court has envisioned for the litigation. The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.*,

69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing cases); *cf. United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test).

6.  In the present case, Thermo asserts that a stay will prejudice it in that it will be unable to enforce its patent. The court is not persuaded. First, Thermo's position assumes that the PTO will leave the claims of the '784 patent unaltered after reexamination. Further, while Thermo may suffer some prejudice from a stay, the court is not persuaded that a stay would *unduly* prejudice Thermo, or present a clear tactical disadvantage. On the other hand, granting the stay will simplify the issues and focus the litigation. For example, if the PTO determines that some or all of the claims of the '784 patent are invalid, then many of the issues in the litigation would become moot. A stay, therefore, will conserve the resources of the parties and the court, thereby promoting efficiency. Moreover, the court would not run the risk of inconsistent rulings or issuing advisory opinions. *See Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001).

7.  Additionally, due to the consolidated nature of the instant cases, as well as the legal and factual overlap of issues, and technology disclosed in the '736 and '784 patents, the court believes that the most efficient and practical way to proceed with the litigation is to stay both cases until the '784 patent reexamination ends.

8.  Lastly, fact discovery is not scheduled to close until March 17, 2006 and, although already set, the trial of these matters is not scheduled to take place until December 4, 2006. Thus, the court concludes that the balance of harms weighs in favor of granting the stay for both cases.

4

Therefore, IT IS HEREBY ORDERED that:

1.    AB/Sciex's Motion to Stay This Action Pending Reexamination of the Patent in Suit
      (D.I. 42) is GRANTED.

2.    Thermo's request to stay the 04-1230 litigation pending reexamination of the '784
      patent (D.I. 56) is GRANTED.

3.    The parties shall notify the court when the PTO issues its reexamination decision.

Dated: December 28, 2005                          /s/ Gregory M. Sleet
                                                  UNITED STATES DISTRICT JUDGE

5