## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P.,    ) ) ) ) Plaintiff,    ) ) v.    ) ) TIME WARNER CABLE INC., et al.,    ) ) Defendants.    ) ) ) | C.A. No. 06-546-GMS<br><br>JURY TRIAL DEMANDED |

## DECLARATION OF KELLY E. FARNAN IN SUPPORT OF DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO STAY ACTION PENDING THE PATENT AND TRADEMARK OFFICE'S REEXAMINATION OF THE KATZ PATENTS

I, Kelly E. Farnan declare under penalty of perjury under the laws of the State of Delaware that the following is true and correct:

1.    I am an associate at Richards, Layton & Finger, P.A., One Rodney Square Wilmington, Delaware  19801, and I am Defendants' counsel in the above-captioned litigation.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Plaintiff's, Ronald A. Katz Technology Licensing, L.P., ("Katz"), November 6, 2006, Response to Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation Pursuant to 28 U.S.C. § 1407, filed in Ronald A. Katz Technology Licensing, L.P. v. Cox Communications, Inc. et al, 9:06-cv-00191-RHC (E.D. Tex. 2006).

3.    Attached hereto as Exhibit 2 is a true and correct copy of the PTO's *Ex Parte* Reexamination Filing Data (March 31, 2006), which was "Exhibit A" to Katz's December 4, 2006, Supplemental Claim Construction Brief Addressing New Evidence, (5:05-CV-142-DF)(E.D. Tex. 2006).

4.    Attached hereto as Exhibit 3 is a true and correct copy of excerpts from Katz's July 17, 2006 Reexamination Response (Reexam Control No. 90/006,978).

5.    Attached hereto as Exhibit 4 is a true and correct copy of excerpts from the PTO's September 8, 2006, Office Action (Reexam Control No. 90/007,697).

6.    Attached hereto as Exhibit 5 is a true and correct copy of excerpts from the PTO's September 29, 2006, Office Action (Reexam Control No. 90/006,978).

7.    Attached hereto as Exhibit 6 is a true and correct copy of excerpts from Katz's October 26, 2006 Reexamination Response  (Reexam Control No. 90/007,697).

8.    Attached hereto as Exhibit 7 is a true and correct copy of the PTO's October, 12, 2006, Examiner Interview Summary (Reexam Control No. 90/007,697). Executed this 18th day of December, 2006, in Wilmington, Delaware.

Kelly E. Farnan

Kelly E. Farnan

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2006, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

### BY ELECTRONIC MAIL AND HAND DELIVERY

Mary B. Graham
Julia Heaney
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19899-1347

I hereby certify that on December 18, 2006, the foregoing document was sent to the

following non-registered participants in the manner indicated:

### BY ELECTRONIC MAIL

Patrick J. Flinn
Kristen L. Melton
Jeffrey A. Cooper
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

David Maxwell
William R. Hubbard
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Angela Payne James
Cherri Gregg
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Blas P. Arroyo
Alston & Bird LLP
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC  28280-4000

John W. Kozak
Steven P. Petersen
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601

Josh Krevitt
Charles J. Boudreau
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY  10166-0193

1

Robert T. Haslam
Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA  94025-3506

Michael K. Plimack
Dale A. Rice
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA  94104-2878

Jeffrey S. Standley
James L. Kwak
F. Michael Speed, Jr.
Standley Law Group LLP
495 Metro Place South, Suite 210
Dublin, OH 43017

*Kelly E. Farnan*

Kelly E. Farnan (#4395)
farnan@rlf.com

2

EXHIBIT 1

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re:

Katz Interactive Call Processing Patent
Litigation

MDL Docket No. 1816

**PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S
RESPONSE TO DEFENDANT TARGET'S MOTION FOR TRANSFER AND
CONSOLIDATION OF KATZ INTERACTIVE CALL PROCESSING PATENT
LITIGATION PURSUANT TO 28 U.S.C. § 1407**

STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Plaintiff
Ronald A. Katz Technology Licensing, L.P.

In accordance with 28 U.S.C. Section 1407 and Rules 7.1(b) and 7.2(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz"), respectfully submits this Opposition to the Motion for Transfer and Consolidation of Katz Technology Licensing Patent Litigation ("Motion") filed by Defendants Target Corporation, Target Bank, and Target National Bank (collectively "Target"), dated October 17, 2006. Katz' Opposition is supported by the accompanying Memorandum of Law, the Declaration of Nathan K. Cummings (Exhibit 1), the Declaration of Christine K. Hsieh (Exhibit 2) and Exhibits 3 through 38; all exhibits are contained in the Appendix of Exhibits, served and filed herewith.

1.      Katz admits that Target's Motion seeks to transfer and consolidate twenty-five actions and that Target attaches a schedule of twenty-five actions as Exhibit A. Katz denies that it initially filed twenty-five actions for patent infringement and that it filed twenty-three of those actions within the last two months as stated by Target. As pertinent to the Motion, Katz filed ten patent infringement actions, five in the Eastern District of Texas, five in the District of Delaware (the "Katz Actions") and, as subsequently amended, the actions name 175 defendants. Katz filed two of those actions in the Lufkin Division of the Eastern District of Texas: *Ronald A. Katz Tech. Licensing, L.P. v. Chevron Corporation, et al.,* No. 9:06-CV-178 (Lufkin Division); and *Ronald A. Katz Tech. Licensing, L.P. v. Alltel Corporation, et al.,* No. 9:06-CV-177 (Lufkin Division). The assigned judge in Lufkin *sua sponte* divided those two cases into fifteen separate actions, indicating that he intends to jointly administer the cases. Katz further admits that each of the Katz Actions was designated as a related case to the earlier filed case, *Ronald A. Katz Tech. Licensing L.P. v. Citibank, N.A.,* 5:05-CV-142 ("Citibank Action").

2.      Katz admits that it is a limited partnership organized under the laws of the State of California and having a principal place of business in Los Angeles, California and further admits that Ronald A. Katz is the founder of Katz and is the sole named inventor of each of the patents asserted in the Katz Actions.

3.      Katz admits that each of the Katz Actions involves patents Katz refers to as

"interactive call processing patents." Katz further admits that more than fifty United States patents have issued to Ronald A. Katz for his inventions in the interactive call processing field, including the twenty-seven patents asserted in the Katz Actions.

4.     Katz admits that the Katz Actions assert that each of the defendants infringe certain of Katz's interactive call processing patents by making, using, offering to sell and/or selling automated telephone systems.

5.     Katz admits that it has previously filed two infringement actions involving some of its interactive call processing patents and that the two courts in which those actions were filed have some experience with some of Katz's interactive call processing patents. Katz further admits that some of the patents involved in this litigation were previously asserted in *Katz v. AT&T Corporation* and related companies in the United States District Court for the Eastern District of Pennsylvania in 1997 and that Judge Lowell A. Reed issued a 63-page claim construction order in connection with that case found at 63 F.Supp.2d 583 (E.D. Pa. 1999) and which speaks for itself. Katz denies that the order construed claim terms from five of the patents; Judge Reed's order construed terms from six of the patents.

6.     Katz admits that fourteen of its patents involved in the Katz Actions were the subject of a declaratory judgment action and related counterclaim in the United States District Court for the Central District of California styled *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, No. 1-CV-9871 (C.D. Cal.) ("the *Verizon* case"), and that two additional Katz patents were at issue in that case which are not at issue in the Katz Actions. Katz further admits that the case was assigned to Judge R. Gary Klausner and that the case was pending in that Court for two years and eight months. Katz denies Target's characterization of the *Verizon* case as "closely-related" to the Katz Actions in that, while certain overlapping patents were at issue, the defendants in that action were different and those defendants' systems were unique to each defendant in that case. Katz admits that the *Verizon* case settled six weeks before trial was set to commence.

7. Katz admits that in the claim construction order issued in the *Verizon* case on June 23, 2003, which can be found at 326 F.Supp.2d 1060 (C.D. Cal. 2003) and which speaks for itself, Judge Klausner construed some of the same terms from the Katz patents at issue in the *AT&T* case, as well as some terms not previously construed by Judge Reed in the *AT&T* case. Judge Klausner construed terms from only ten of the patents involved in the Katz Actions.

8. Katz admits that cross motions for summary judgment were made in the *Verizon* case. Judge Klausner's orders and the proceedings including the dismissals subsequent thereto are matters of record in the *Verizon* action and speak for themselves.

9. Katz admits that it filed a lawsuit in July 2005 styled *Ronald A. Katz Tech. Licensing, L.P. v. Citibank N.A., et al.*, No. 5:05-CV-142 (E.D. Tex.) (Texarkana Division) against multiple defendants. Katz further admits that its amended complaint in the *Citibank* case asserted twenty-two (22) of the Katz interactive call processing patents. Katz admits that Judge Folsom on August 1, 2006 issued the following Order:

> ORDERED that in addition to the 10 patent claims selected by Plaintiff on May 16, 2006 (Docket No. 128), Plaintiff is permitted to select up to 8 additional patent claims under the following restrictions: (1) each additional patent claim selected by Plaintiff must come from a patent not previously asserted in the patent claims selected on May 16, 2006 (Docket No. 128); (2) only one claim per patent may be selected; (3) each additional claim selected must come from the set of 48 claims asserted by Plaintiff against the Defendants in Plaintiff's Supplemental Disclosures of Asserted Claims and Preliminary Infringement Contentions, served on February 27, 2006; and (4) each of the additional selected claims may only be asserted against a defendant against whom that claim was previously asserted pursuant to Plaintiff's Supplemental Disclosures of Asserted Claims and Preliminary Infringement Contentions. It is further
>
> ORDERED that with respect to patents from which Plaintiff did not select any of its 10 claims on May 16, 2006 (Docket No. 128) and for which Plaintiff does not select any of its up to 8 additional claims, the claims and counterclaims of all parties shall be severed pursuant to Rule 21 of the Federal Rules of Civil Procedures, and the severed action along with any corresponding discovery shall be stayed.

10. Katz admits that on August 21, 2006, Katz filed five actions in three different divisions of the United States District Court for the Eastern District of Texas and that subsequently the district court in the Lufkin Division *sua sponte* split two of these actions into fifteen separate actions, with the Court noting that it would manage the cases in a coordinated

fashion. Katz admits that twenty separate actions are now pending in the Eastern District of Texas.

**11.** Katz admits that on September 1, 2006, it filed five additional actions in the United States District Court for the District of Delaware.

**12.** Katz admits that all of the twenty five actions were filed in federal court.

**13.** Katz admits that each of the actions alleges infringement of patents from Katz's interactive call processing patent portfolio and that some of the patents are asserted in more than one of the Katz Actions. Katz admits that attached to Target's Motion are two tables, Exhibits B and C which purport to show the asserted patents and the Katz Actions in which they are asserted in Texas and Delaware, respectively.

**14.** Katz admits that some of the answers and counterclaims filed to date in the Katz Actions assert some overlapping defenses of invalidity and unenforceability. Katz lacks sufficient information and knowledge to allow it to answer the balance of the purported averments set forth in paragraph 14 of Target's Motion and therefore denies them.

**15.** Katz denies that no answers have been filed in the Katz Actions and states that all defendants in some cases and the large majority of defendants across all cases have answered and counterclaimed and at least two case management conferences have been scheduled and one court has issued orders as part of his announced plan to jointly administer the cases. Katz admits that no trial date has yet been set in the Katz Actions. Katz admits that the *Discover* case resulting from Judge Folsom's August 1 Order was stayed in August 2006, pending final resolution of the *Citibank* case. Katz denies all remaining allegations in paragraph 15 of Target's Motion.

**16.** Katz admits that an Amended Docket Control Order dated May 8, 2006 in the *Citibank* case reflects that summary judgment motions are due to be filed February 2, 2007, and that trial is set to begin May 8, 2007.

**17.** Katz denies that there have been no substantive orders made in the *Citibank* or *Discover* cases. Judge Folsom has issued case management orders, orders regarding claim

selection, an order severing and staying claims and certain discovery orders. Judge Folsom has also presided over extensive briefing, a tutorial and a hearing on claim construction under the *Markman* decision and is expected shortly to issue his claim construction order. Katz admits that the *Citibank* case is not within six weeks of trial as was the *Verizon* case at the time it settled but states that it is far advanced toward trial with extensive substantive work accomplished to date. Katz further states that the claim construction order which is imminent will trigger deadlines that will move the *Citibank* case quickly toward trial.

18.    Katz admits that a claim construction hearing was held in the *Citibank* case on September 20, 2006 and admits that Target and American Airlines filed emergency motions in the *Citibank* case seeking consolidation with the *Citibank* case of the cases in which Target and American Airlines, respectively, are defendants and continuance of that hearing. Katz admits that it opposed those motions and states that those motions were denied by Judge Folsom. Katz lacks information and knowledge sufficient to admit or deny the remaining allegations in this paragraph and therefore denies the averments.

19.    Katz denies that Judge Klausner is the most experienced judge in the country with regard to the Katz patents. Katz submits that Judge Folsom is the judge with the most current and extensive knowledge of the Katz patents based on his management of the *Citibank* case for the past fifteen months, his substantive rulings on claim selection, his appointment of a technical expert, and the extensive briefing, tutorial and hearing before him on claim construction.

20.    Katz admits that, due to the overlapping patents at issue in the Katz Actions, there will be some common issues of fact as to the technology underlying the patents and on validity and unenforceability issues but submits that, even as to those issues, there will be facts unique to each defendant and further submits that those common issues of fact are not so numerous as to warrant consolidation, particularly in light of the more numerous, complex and unresolved issues of infringement unique to each of the defendants.

21.    Katz denies that common issues of fact on damages predominate and, although Katz admits that Katz will seek damages in the form of a reasonable royalty, Katz submits that

fact issues on damages unique to each defendant will predominate because the majority of the Georgia-Pacific factors are defendant specific.

22.     Denied.  Consolidation and transfer of the Katz Actions is inappropriate because (i) insufficient common issues of fact exist in that each defendant's accused system is unique and presents individualized infringement and damages issues, (ii) the inconvenience to the parties, witnesses, and courts outweigh any purported efficiencies to be gained by consolidation and transfer, and (iii) the substantial disruption and delay of consolidation and transfer would impede the resolution of all the cases.

23.     Denied.  If the Panel decides that consolidation is appropriate, transfer to the Eastern District of Texas is the most logical because: (i) it has the greatest number of pending Katz Actions, (ii) it has the most recent knowledge and experience with the legal and factual issues; (iii) it is the most convenient and efficient venue for the largest number of parties; (iv) it is one of the most experienced patent litigation trial courts in the country and has implemented patent litigation rules to streamline such cases; (v) and has more docket capacity and ability to absorb these cases than the Central District of California.

Dated: November 3, 2006

By: _____
ANTHONY M. STIEGLER (126414)
STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
Ronald A. Katz Technology Licensing, L.P.

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re:** | **MDL Docket No. 1816** |
| **Katz Interactive Call Processing Patent Litigation** | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TARGET'S MOTION FOR TRANSFER AND CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION PURSUANT TO 28 U.S.C. § 1407

STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
RONALD A. KATZ TECHNOLOGY LICENSING, L.P.

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz") submits this Memorandum of Law in Opposition to the Motion of Defendants Target Corporation, Target Bank, and Target National Bank (collectively "Target") for Transfer and Consolidation of Katz Technology Licensing Patent Litigation Pursuant to 28 U.S.C. § 1407 ("Motion").

## I. INTRODUCTION

Consolidation and transfer of these patent infringement cases is not warranted because: (1) insufficient common issues of fact exist in that each defendant's accused system is unique and presents individualized infringement and damages issues; (2) neither convenience nor judicial efficiency would be achieved by imposing these numerous cases on a single court in an already over-burdened judicial district where no related case is currently pending; and (3) the substantial disruption and delay of consolidation and transfer would impede the resolution of all cases. Many of the defendants join Katz in opposing this motion and are working towards proposed stipulations to avoid duplicative discovery and to coordinate case management among the segregated cases. This indicates that many of those most familiar with these cases believe that the motion should be denied and would not yield efficiencies for the parties or courts.

Consolidation and transfer is particularly inappropriate because of the status of one of the cases, *Ronald A. Katz Tech. Licensing, L.P. v. Citibank, et. al.*, (the "*Citibank* case"), which is currently pending before the Hon. David Folsom in the Eastern District of Texas ("E.D. Texas") and is set for trial on May 8, 2007. The parties and the court have invested substantial resources on numerous substantive motions and case management matters, including issuance of a comprehensive scheduling order and case management plan, appointment of a technical expert for the court, a tutorial hearing, extensive *Markman* patent claim construction briefing and argument and multiple discovery activities and motions. Judge Folsom's *Markman* order is anticipated shortly and will inform the parties about the scope and interpretation of the patents, shape the litigation for expeditious movement to trial, and may foster settlement discussions, all of which would be disrupted and delayed by consolidation and transfer. Thus, while Katz urges that consolidation and transfer is not necessary at all, if the Panel concludes otherwise, the

739060 v15/PA

-1-

*Citibank* case should be excluded from such an order.

If the Panel determines that consolidation and transfer is appropriate, the transferee court should be the E.D. Texas because it: (i) is in the state where more defendants reside than any other; (ii) is centrally located and most accessible to the largest number of parties and witnesses; (iii) has the infrastructure to support MDL litigation; (iv) has enacted and regularly administers a set of patent litigation rules enabling the expeditious and efficient resolution of patent cases; (v) is one of the plaintiff's two chosen venues; (vi) has the least crowded docket of any of the relevant districts which would likely be a transferee court; (vii) is the district in which the most cases are currently pending involving the Katz patents; and (viii) has current and extensive legal and practical experience with the Katz patents by virtue of the time and resources that the Court and its technical advisor have invested to manage and decide issues in the *Citibank* case. By contrast, Target's proposed venue, the Central District of California ("C.D. California"), has no Katz patent case currently pending, is one of the most over-burdened courts in the country and is inconvenient to the overwhelming majority of the defendants and witnesses.

The Katz cases are presently distributed among four federal judges who are well versed and skilled in patent litigation and who are already actively managing the cases. Contrary to the picture painted by Target, the cases are progressing expeditiously. Answers and counterclaims have been filed in most of the cases, at least two case management conferences are scheduled, and pre-discovery Rule 26 communications among counsel are well underway. Moreover, to the extent common issues exist about the technology, the patents, or their validity and/or enforceability, the potential for duplicative discovery is minimal because of the extensive prior litigation of the Katz patents, and because of the willingness of the non-movant parties to enter into stipulations to share and otherwise coordinate discovery and manage the cases. Conversely, consolidation of the patent actions, which undisputedly present unique issues of infringement and damages as to 175 defendants, and transfer of those cases to a single judge, would create an overwhelmingly complex proceeding certain to result in delay and added expense for all parties.

## II.   FACTUAL BACKGROUND

Katz is the plaintiff in actions pending in the E.D. Texas (filed in 2005 and 2006) and in the District of Delaware (filed in 2006). In total, there are dozens of defendant groups and 175 separate corporate defendants in these various actions, most of whom are large corporations with widespread businesses. Given the number of defendants, their size and their reach, it was not feasible for a single law firm to represent Katz against all of the defendants. Instead, Katz has two primary outside law firms handling these matters: (1) Cooley Godward Kronish LLP is counsel in all of the Texas cases; and (2) Heller Ehrman LLP is counsel in all of the Delaware cases. While jurisdiction and venue were the primary factors considered in selecting the two venues, ethical conflicts were also considered in dividing the defendants and filing in separate venues.[1]

### A.   The Katz Patent Actions in the E.D. Texas

Katz owns a portfolio of interactive call processing patents which are directed to the integration of telephone systems with computer databases and live operator call centers to provide interactive call processing services, which are sometimes referred to as interactive voice response, or "IVR", systems. Katz has licensed its patents to over 150 companies and filed several patent infringement cases, all resolved prior to trial, including the *AT&T* and *Verizon* cases cited in Target's motion. There is also an extensive record of proceedings on the Katz patents before the United States Patent and Trademark Office ("USPTO"). In 2005 and again in 2006, Katz filed additional cases in the E.D. Texas and in the District of Delaware, as follows:

#### 1.   RAKTL v. Citibank et al., Civ. Action No. 5:05-CV-142-DF

In July 2005, Katz filed in the E.D. Texas, Texarkana Division, against defendants in three different industries, namely Citibank entities, Discover entities, T-Mobile entities and Wal-Mart entities (collectively the "*Citibank* Defendants"). The *Citibank* case was assigned to the

---

[1] While it would be possible to manage the conflict issues if the cases are consolidated, proper management of those ethical issues would be facilitated by allowing the cases to proceed in separate courts. We are aware of no prior published motion or proceeding before the JPML raises this type of conflict issue, it should be an appropriate factor for consideration and one that militates against consolidation of these cases.

Honorable David Folsom.[2]  The *Citibank* case alleges infringement of 22 patents and is far

advanced toward its May 8, 2007 trial date.  In accordance with the Local Patent Rules

implemented in E.D. Texas, on December 15, 2005, Katz served its preliminary infringement

contentions.  Each defendant then served its invalidity contentions, alleging indefiniteness,

anticipation and obviousness and seeking to invalidate each of the claims asserted by Katz.[3]

In connection with the court's January 2006 Scheduling Conference, Judge Folsom gave

considerable thought to managing a case involving the infringement of hundreds of claims in 22

patents, by scores of infringing systems, operated by different defendant groups in different

industries, and took early steps to streamline the case.  *See, e.g.,* Ex. 3, Joint Conference Report

at 3, 8, 9, and Ex. 4, Defendants' Report in Response to Court's May 24, 2006 Order at 7-8.

Judge Folsom set an aggressive schedule and has held the parties to it.  Ex. 5, May 8, 2006

Amended Docket Control Order.  Judge Folsom also identified and appointed a technical

advisor, Mr. Gale R. Peterson, to advise the court on technology issues, and the court has now

overseen all aspects of the *Citibank* case for more than 15 months, including all claim

construction and discovery issues.

### a.   Judge Folsom's Management of the Number of Asserted Claims and Severance of the *Discover* Action

After extensive briefing in May and June 2006 Judge Folsom ordered that the parties

would litigate representative claims from among the hundreds at issue in the case.  At Judge

Folsom's direction, Katz selected 18 representative claims from 16 different patents.[4]

### b.   Discovery and Other Pretrial Matters

Discovery in the *Citibank* case has progressed for almost a year.  The parties have

---

[2] The facts concerning the *Citibank* case are supported by the Declaration of Nathan C. Cummings, Ex. 1, filed and served herewith ("Cummings Decl.").

[3] In the course of these filings, the Citibank entities took a license to the Katz patents and were dismissed, leaving the Discover, T-Mobile and Wal-Mart entities as defendants.

[4] On August 16, 2006 Judge Folsom issued a further order to preserve Katz's due process rights to assert additional patents infringed by the *Citibank* Defendants, severing the remaining patents into a separate action, which is stayed pending resolution of the current action. *See* Ex. 6, August 16, 2006 Order Severing Certain of Plaintiff's Claims and Defendants' Defenses and Counterclaims & Staying the Severed Action.

collectively produced over two million pages of documents and the defendants' document productions are ongoing. The parties have served, answered and supplemented their interrogatories and Katz has served Rule 34 notices to inspect defendants' call center premises and Rule 30(b)(6) deposition notices on various topics and recently took the depositions of T-Mobile, Wal-Mart and Discover employees. Judge Folsom has heard and decided a number of discovery issues throughout the case and currently has a number of issues under consideration.

> **c.   The September 19-20, 2006 *Markman* and Tutorial Hearing**

On September 19-20, 2006 Judge Folsom and his technical advisor held the court's *Markman*[5] hearing and a technical tutorial presented by the parties. The court presently has those *Markman* issues under submission and the parties are awaiting the court's order. Defendants originally identified over 1600 terms for construction, and ultimately briefed about 40 terms, with one defendant, T-Mobile, briefing approximately 20 additional claim terms, and Katz briefing about 60 claim terms.[6] The claim construction briefing took place between July through September 2006 and included 160 pages of detailed explanations of the IVR and call center services and technology to support the parties' claim term contentions.

Once the court issues its *Markman* order, a series of events and deadlines will be set in motion under the court's local rules that will put the *Citibank* case on the fast-track to trial.[7] Consolidation and transfer would disrupt this case at a critical juncture, impose significant delay, and potentially waste substantial work product.

> **2.   Recent Additional Patent Actions in the E.D. Texas**

On August 21, 2006, Katz filed five new actions in the E.D. Texas, in different divisions to avoid overburdening any one judge, naming defendants who were selected and organized

---

[5] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370; 116 S.Ct. 1384 (1996).
[6] T-Mobile's addition of proposed terms reflects that differences in accused systems among defendants produce additional terms for construction, raising the potential for a very large number of claims for construction in a proceeding with 175 defendants.
[7] For example, fact discovery closes 80 days after the order and the close of expert discovery is 60 days thereafter. Accordingly, the *Citibank* parties will be actively engaged in final fact and expert discovery, as well as in dispositive motion briefing over the next three to six months, all culminating in trial starting on May 8, 2007. Ex. 5, Amended Docket Control Order.

largely according to industries and/or use of similar accused systems.[8]  This grouping was designed to achieve case specific efficiencies, including allowing the selection of representative claims that are common to a discrete set of defendants.

      **a.**      **RAKTL v. American Electric Power, et al.; RAKTL v. American Airlines, et al.**

Two of the actions are pending before Judge Folsom: *Ronald A. Katz Tech. Licensing, L.P. v. American Electric Power Company, Inc.*, No. 5:06-CV-188 (E.D. Tex.) (Texarkana Division); and *Ronald A. Katz Tech. Licensing, L.P. v. American Airlines*, No. 2:06-CV-334. (E.D. Tex.) (Marshall Division).  Including the severed *Discover* action, Judge Folsom presides over four of the Katz actions in the E.D. Texas.  The *American Electric* action asserts 20 patents against 9 defendants in the energy/utility industries.  All defendants have answered and counterclaimed and the Magistrate has set the Rule 26(f) conference for December 12, 2006.  Ex. 7, Docket.  The *American Airlines* action asserts 20 patents against 12 defendants in the travel and hospitality industry.  All defendants but one have answered and counterclaimed.  Ex. 8, Docket.

      **b.**      **RAKTL v. Aetna**

On August 21, 2006, Katz filed the *Ronald A. Katz Tech. Licensing, L.P. v. Aetna, Inc.*, No. 2:06-CV-335 (E.D. Tex.) (Marshall Division) case against defendants who provide automated prescription refills.  This case was assigned to Judge Ward and asserts 19 patents against 15 defendants.  All defendants but one have answered and counterclaimed.  Ex. 9, Docket.

      **c.**      **RAKTL v. Alltel; RAKTL v. Chevron**

On August 21, 2006, Katz filed two actions in the Lufkin Division of the E.D. Texas: *Ronald A. Katz Tech. Licensing, L.P. v. Chevron Corp., et al.*, No. 9:06-CV-178 (E.D. Tex.) (Lufkin Division); and *Ronald A. Katz Tech. Licensing, L.P. v. Alltel Corp., et al.*, No. 9:06-CV-

---

[8] Katz filed a sixth action, *RAKTL v. Genesys Conferencing, Inc.*, E.D. Tex. Case No. 5:06-CV-187; Target appropriately excluded the *Genesys* Case from its Motion because different patents are asserted in that case.

177 (E.D. Tex.) (Lufkin Division).  The *Chevron* case focuses primarily on defendants in the

financial services area, while the *Alltel* case focuses on defendants in the communications

industry.  The cases were assigned to Judge Clark who, on September 7, 2006, *sua sponte*

divided them into fifteen separate actions "to promote efficiency and administrative ease" for the

Court.  *See* Target Ex. 13, *Chevron* Order, and Target Ex. 12, *Alltel* Order.  Judge Clark has

indicated that he will jointly administer these cases "to promote efficient use of judicial and party

resources."  *Id.*  All defendants in the *Chevron* case have answered and counterclaimed.  All

defendants but three in the *Alltel* case have answered and counterclaimed.  Exs. 10 to 24,

Dockets.

> **B.     The Katz Patent Actions in the District of Delaware**

On September 1, 2006, Katz, through the Heller Erhman LLP firm for the

aforementioned conflict of interest purposes, filed an additional five cases in the District of

Delaware against defendants with a jurisdictional nexus to that venue.  These actions are all

pending in the Wilmington Division before Judge Gregory Sleet, who is an experienced jurist

well able to manage large patent litigation cases with multiple parties.  In four of the actions, all

defendants have already answered and counterclaimed.  In the fifth action, Katz filed a first

amended complaint on October 25, 2006.  Exs. 25 to 29, Dockets.  Katz understands that a

significant majority of the Delaware defendants oppose Target's motion for consolidation and

desire to remain in Delaware.

> **III.    CONSOLIDATION IS NOT APPROPRIATE FOR THESE CASES AND WOULD FRUSTRATE THE CONVENIENCE OF THE PARTIES AND JUDICIAL EFFICIENCY**

To grant a motion for transfer and consolidation the Panel must find that (a) the actions

involve common issues of fact, (b) transfer would be for the convenience of the parties and

witnesses, and (c) transfer would promote the just and efficient conduct of the actions.  28 U.S.C.

§ 1407.  Transfer and consolidation are, however, not automatic even where multiple actions

raise some similar issues.  *In re Truck Accident Near Alamogordo,* 387 F. Supp. 732, 733

(J.P.M.L. 1975) ("the existence of common, if not identical, common questions of fact … is not

sufficient, by itself to warrant transfer"). The crucial question on this motion is whether Target has shown that, even notwithstanding some overlap in questions of fact, the economies of transfer outweigh the resulting inconvenience to the parties. *In re "East of the Rockies" Concrete Pipe,* 302 F. Supp. 244, 253 (J.P.M.L. 1969).

Target fails to show that common questions of fact are sufficiently numerous, complex or unresolved to justify consolidation and Target does not explain how common issues of patent validity and enforceability will predominate, given that unique issues of fact about infringement and damages will exist for each of the 175 defendants. Target also fails to show that consolidation and transfer would be more convenient or produce efficiencies for the parties and witnesses. Finally, Target also fails to address the willingness of the non-movant parties to cooperate and coordinate in discovery and case management, as well as the disruption and delay certain to follow any consolidation of cases with 175 defendants in an already burdened and geographically inconvenient forum.

### A.   The Issues are Not Sufficiently Numerous, Complex, or Unresolved to Justify Consolidation and Transfer

The moving party has the burden of demonstrating that common factual questions are sufficiently complex, or that the associated discovery is so time consuming, that transfer is justified. 28 U.S.C. § 1407; *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 243-44 (J.P.M.L. 1978). If movant fails to carry its burden, consolidation and transfer should be denied, even for a large number of actions in several districts. *See In re Dupont Benelate Settlement Agreement Litig.*, No. 1340, 2000 U.S. Dist. Lexis 7378 (J.P.M.L. 2000).

### 1.   Proof of Patent Infringement Presents Unique Fact Questions for Each Defendant

As a matter of law, proof of patent infringement is distinct as to each defendant and its technology. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374; 116 S.Ct. 1384, 1388, (1996) ("Victory in an infringement suit requires a finding that the patent claim 'covers the

alleged infringer's product or process'..."); *Southwall Technologies, Inc. v. Cardinal I G Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (proof of infringement is a question of fact and requires establishing that every limitation of a claim is found in an accused product or method). Here, each defendant operates different customized systems and processes and, accordingly, there will be few if any common factual questions about the 175 defendants' infringement.[9] The challenge would be greatly exaggerated in a consolidated case with 175 defendants, in different industries, employing different IVR systems and methods, all or many of which implicate infringement of different patent claims.

### 2. Proof of Patent Infringement Damages Presents Unique Fact Questions for Each Defendant

Target asserts that the reasonable royalty factors used in calculating patent damages under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) will present common fact questions among the actions. In fact, of the 15 *Georgia Pacific* factors considered when assessing a patent "reasonable royalty" measure of damages, nine factors involve facts particular to each separate defendant. Only six focus on the plaintiff or the general industry.[10] Thus, the focus of damages discovery and analyses will be far

---

[9] Target concedes that "... there will be differences in the telephone services of the defendants involved in the various actions ..." (Mot. at 12.), thus recognizing that different systems will necessarily require different discovery and proof of infringement. Target glosses over this issue by citing cases where the Panel found that overlapping patents in several actions could be expected to present common fact questions, including *In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005); *In re Pharmastem Therapeutics, Inc. Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005); and *In re MLR, LLC, Patent Litig.* 269 F. Supp. 2d 1380 (J.P.M.L 2003). These cases are distinguishable, however. In *Acacia*, there were only 64 defendants, the majority of whom were in the same industry and all parties agreed to, or did not contest, consolidation. *Acacia*, 360 F. Supp. 2d at 1378. Similarly, in *Pharmastem*, there were only 31 defendants, all of whom were in the same industry, and only three parties opposed transfer and consolidation. *Pharmastem*, 360 F. Supp. 2d at 1363. In *MLR*, there were only 11 defendants, all in the same industry, and only two parties opposed the MDL motion. *MLR*, 269 F.Supp.2d at 1380. In contrast, the present case involves 175 defendants in different industries, a substantial number of whom oppose consolidation.

[10] The nine defendant-specific factors include: (1) the rates paid by the defendant for use of comparable patents; (2) the territory and customers of the licensee for the licensed technology; (3) the effect of using the patented specialty in promoting sales of the licensee's other goods or services; (4) the licensee's commercial success with the patented technology; (5) the extent of the licensee's infringing use of the patented technology; (6) the portion of licensee's profit attributable to use of the patented technology; (7) the opinion testimony of qualified experts retained by each

more heavily directed to each defendant's discrete infringement and the value that each defendant derived from its use of the patented inventions.

### 3. Patent Validity and Enforceability Have Been Previously and Thoroughly Discovered and Litigated

Target asserts that issues of validity,[11] enforceability and prosecution history estoppel[12] will be common among the cases due to the overlapping patents at issue. On the facts of these cases, however, consolidation is not likely to produce significant efficiencies. During prior litigations over the Katz patents, defendants have raised numerous affirmative defenses, most of which overlap with the current defendants' contentions. Defendants in the prior cases identified and filed voluminous information on the prior art and all of that prior case material is readily available to Target and the other defendants and can be shared. There is likewise an extensive public record of proceedings on the Katz patents before the USPTO and given this extensive history and publicly available collections of documents, it is unlikely that validity or unenforceability issues will produce significant additional discovery or fact issues.

### 4. The Risk of Inconsistent Rulings on Claim Construction or Other Issues Does Not Warrant Consolidation

Target incorrectly argues that risk of inconsistent pretrial rulings on the issue of patent claim construction justifies transfer and consolidation, but as Target admits, "it is the obligation of each district court to construe the claims of a patent as a matter of law." (Mot. at 15); *see also, Markman, supra.,* 517 U.S. at 388-391. Claim construction is a pretrial issue of law

---

licensee; (8) the nature and scope of the license; and (9) the amount the prudent licensee would have been willing to pay for a license in an arm's length negotiation. *Georgia-Pacific Corp., supra.*

[11] Validity is primarily a matter of prior art and expert opinion. *Union Oil Co. of California v. Atlanta Richfield Co.,* 208 F.3d 989, 994-95 (Fed. Cir. 2000), cert. denied, 531 U.S. 1183 (2001) (Proving a patent invalid under 35 U.S.C. §102 requires showing that allegedly invalidating prior art contains each and every element of a claim); *Koito Mfg. Co Ltd. v. Turn-Key-Tech LLC,* 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("typically, testimony concerning anticipation must be testimony from one skilled in the art....").

[12] Unenforceability and the application of prosecution history estoppel concern prior art and the record of prosecution of the patent before the USPTO. *See FMC Corp v. Manitowoc Co., Inc.* 835 F.2d 1411, 1415 (Fed. Cir. 1987) (establishing unenforceability through inequitable conduct requires clear and convincing proof of knowing failure to disclose material information, such as prior art, to the PTO in prosecution of the patent.) *Festo Corp. v. Shoketsu Kinzoku Kogyuo Kabushiki Co, Ltd.,* 535 U.S. 722, 735 (2002) ("[Prosecution history] estoppel has been discussed most often in the context of amendments made to avoid the prior art.").

reserved by the U.S. Supreme Court to each district court. *Id.* An issue of law, of course, is not an appropriate basis for MDL consolidation. *In re U.S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405, 1406-07 (J.P.M.L. 1976) (transfer of actions for consolidated pretrial proceedings is unwarranted where common questions of law, rather than fact, predominate). Thus, while each defendant will have an opportunity to litigate the claim construction issues it believes are critical to its case, it is likely that the number of claim terms necessary to be construed will be reduced as a result of these prior rulings, including the expected ruling in the *Citibank* case.

Likewise, the May 8, 2007 trial in the *Citibank* case is fast-approaching. Resolution of issues in *Citibank* case may thus obviate or reduce the need for further litigation and allowing the *Citibank* case to proceed to trial will conserve judicial resources and reduce expense and inconvenience to the litigants.

### B. Consolidation and Transfer Would Not Promote Convenience and Judicial Economy

#### 1. Many of the Parties Do Not Support Consolidation and Transfer

To date, many of the 175 defendants have expressed the intention to oppose Target's motion. Consolidation and transfer has been denied where not all parties in the relevant actions support it. *In re Accuscan, Inc., Automatic Background Contrast Control Patent Litig.*, No. 1145, 1996 U.S. Dist. LEXIS 17696 (J.P.M.L. Nov. 26, 1996). The parties are best situated to evaluate the benefits and disadvantages of transfer and consolidation and the significant opposition here speaks volumes about the parties' evaluations that the current separate cases presents the most convenient and efficient means of managing and resolving these cases.

#### 2. The E.D. Texas and the District of Delaware Chose Not to Consolidate the Katz Actions Pending In Those Districts.

Districts have the discretion to *sua sponte* consolidate pending actions if they believe that consolidation would promote convenience, efficiency and administrative ease. *See* F.R.C.P. 42(a); *Devlin v. Transportation Communications Int'l Union*, 175 F.3d 121, 130 (2nd Cir. 1999).

To date, neither the E.D. of Texas or the District Court of Delaware has chosen to consolidate the Katz actions within their districts, and at least Judge Clark in the E.D. Texas *severed* the cases pending in his court to promote efficiency and administrative ease, while acknowledging that he will manage the cases in a coordinated fashion.[13]

> **3. Alternative Methods Are Available to Achieve Efficiencies That Do Not Entail the Burdens and Delay Inherent in Consolidation**

Where there are alternative methods to prevent duplicative discovery and inconsistent pretrial rulings, consolidation is not warranted. *In re Commonwealth Sci. & Indus. Research Org. Patent Litig.*, 395 F.Supp. 2d 1357-58 (J.P.M.L. 2005). This is especially true when the parties have displayed past willingness to coordinate their discovery efforts. *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1353 (J.P.M.L. 1980). That cooperation exists here, where many parties are considering proposed stipulations to avoid duplicative discovery and to coordinate case management across all cases. It is the goal that the stipulations will encompass at least the following:

- coordinated document production by Katz with a protocol to be developed for common Bates numbering;

- coordinated deposition discovery on common issues to avoid duplicative examination of witnesses;

- coordinated third-party subpoena practice with respect to licensees, prior art witnesses and vendors;

- adoption of protective orders with common terms;

- admissibility of third-party discovery, including licensees, prior art witnesses and vendors.

The parties also have the mutual goal to work towards coordinated protocols or stipulations regarding *Markman* briefing and case management including:

- streamlining the claim selection process;

---

[13] The five cases in Delaware were all assigned to Judge Gregory Sleet and are pending separately as independent cases. Exs. 25 to 29, Dockets.

- agreeing to sequential patent disclosures and other features of a set of acceptable local court patent rules addressing claim construction and case management, subject to court approval;

- coordinating claim construction briefing schedules to the extent possible and avoiding duplication of effort on common construction issues;

- agreeing to the appointment of a technical advisor for the courts.

The parties intend to further explore and develop a consolidated and/or coordinated summary judgment procedure on common issues to the extent possible to avoid duplication of effort. It is contemplated that a steering committee made up of representatives of both sides of the actions in the E.D. Texas and the District of Delaware will be selected to finalize the details of these coordination activities for the pretrial proceedings in all cases.

## IV.   IF THE PANEL BELIEVES CONSOLIDATION IS JUSTIFIED, THE *CITIBANK* CASE SHOULD BE EXCLUDED FROM THE CONSOLIDATION AND TRANSFER ORDER.

The Panel should exclude the *Citibank* case from any multidistrict litigation order because of its advanced state. It appears that no party to the *Citibank* case has joined Target's motion. The anticipated *Markman* ruling from Judge Folsom will likely inform all parties about the merits of their cases and pave the way for summary judgment and/or trial or, as many defendants in other cases have chosen, settlement. Such considerations are precisely why the Panel recognizes that advanced actions are inappropriate for consolidation with recently filed cases. *In re Nifedipine Capsule Patent Litig.*, No. 774, 1988 U.S. Dist. LEXIS 17025, at *2 (J.P.M.L. Oct. 13, 1988) (excluding from transfer one action which was nearing close of discovery on the basis that it was distinct from more recently filed actions).

## V.   IF CONSOLIDATION IS ORDERED THE E.D. TEXAS SHOULD BE THE TRANSFEREE COURT

If the Panel concludes that consolidation and transfer are appropriate, it should transfer the cases to Judge Folsom in the E.D. of Texas.

**A.    The E.D. Texas Has the Greatest Number of Pending Katz Actions**

Target's proposal to transfer all of the Katz cases to a district that is already overburdened, where no action is pending and where the cases have no substantial nexus, is disfavored and without basis.[14]  The Panel regularly transfers actions to the District Court having the *greatest* number of relevant pending actions.  *See, e.g., In re Fosamax Prods. Liab. Litig.,* 444 F. Supp. 2d 1347, 1349-50 (J.P.M.L. 2006).  The Panel has traditionally been reluctant to send consolidated cases to a district where *no* actions are pending.  *In re Mailblocks, Inc.,* 279 F. Supp. 2d 1379, 1381 (J.P.M.L. 2003).  As of September 30, 2006, there were 280 pending multidistrict litigations, and only thirteen of these were transferred to a district where no actions were pending.  Hsieh Decl. ¶ 3; Ex. 30, Statistical Analysis of Multidistrict Litigation 2006.  In 2005, only nine out of 259 pending multidistrict litigations were transferred to a district where no actions were pending.  Hsieh Decl. ¶ 3; Ex. 31, Statistical Analysis of Multidistrict Litigation 2005.  In those rare instances of transfer to a district where no action was pending, the Panel has acknowledged that its selection of that transferee court was the exception, and that its decision to do so was premised on the strong factual nexus between the action and the forum.  *See, e.g., In re Sundstrand Data Control, Inc. Patent Litig.,* 443 F. Supp. 1019, 1020 (J.P.M.L. 1978).

When Judge Clark's severance of the *Alltel* and *Chevron* cases is taken into account, there are 20 Katz cases pending in the E.D. Texas, five pending in the District of Delaware, and *none* pending in the C.D. California.[15]  Transfer to the district where the most actions are pending requires the fewest parties to be displaced.  The C.D. California should be excluded from consideration because there are no currently pending actions in that district and because, as discussed below, transfer there would significantly inconvenience all parties.  Such a transfer would further impose an undesired burden on one of the busiest District Courts in the country— and on the particular judge requested—and would squander the substantial judicial resources

---

[14] Other than *In re Sundstrand Data Control, Inc. Patent Litig.,* 443 F. Supp. 1019, 1020 (J.P.M.L. 1978), Target cites no authority supporting its proposal. Although in *Sunstrand* the Panel did transfer actions to a district with no action pending, it did so because of the substantial nexus between the Western District of Washington and the common fact questions. *Id.* at 1021. Further, the Panel noted that none of the actions were significantly further advanced than the others.

[15] Even if Judge Clark's severance orders were not considered there are seven cases pending in the E.D. of Texas.

**PLAINTIFF'S OPP. TO TARGET'S MTN FOR TRANSFER & CONSOLID. - PUR. TO 28 U.S.C. § 1407 (CASE NO. 1816)**

invested by Judge Folsom and his court in the *Citibank* case.

**B.      The E.D. Texas is the Forum With the Most Recent Knowledge and Experience with the Legal and Factual Issues**

The E.D. Texas has the most current judicial knowledge and experience with the Katz patents. The Panel has often transferred consolidated patent cases to the court having the greatest technological and legal familiarity with the issues involved. *In re Pharmastem Therapeutics, Inc. Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005).

Judge Folsom, his clerks, and particularly his technical advisor, have developed the most current detailed knowledge about the Katz patents and the parties' infringement and invalidity contentions as a result of the activities in the *Citibank* and *Discover* cases. Judge Folsom already has experience with twenty-two of twenty-seven patents alleged in all the cases.

In contrast, Judge Klausner's knowledge in the C.D. California is nearly three years old and he only construed claims from 10 of the Katz patents, compared to the 16 patents that Judge Folsom is currently construing in the *Citibank* case. Given Judge Folsom's recent and detailed knowledge of the Katz Actions, and given that he has four Katz Actions before him, the E.D. Texas would be the most logical choice of transferee districts.

**C.      The E.D. Texas is the Most Convenient and Efficient Venue**

The location of the parties, witnesses, and evidence are important factors in choosing a transferee court. *In re Columbia University Patent Litig.*, 313 F. Supp. 2d 1383 (J.P.M.L. 2004). In most instances, and particularly in these cases, if consolidation is ordered, a geographically central location best serves the convenience of the parties. *In re Papst Licensing, GmbH Patent Litig.*, No. 1298, 1999 U.S. Dist. LEXIS 15871 (J.P.M.L. Oct. 12, 1999).

Texas is the most central forum for the greatest number of defendants. Seventeen defendants reside in Texas, which is more than in any other state; 90 are located in the South and Midwest, and 56 are in the East. By comparison, only 29 of 175 defendants reside in the Western United States. 84% of defendants are closer to Texas than to California. *See* Hsieh Decl. ¶ 2; Ex. 32, Location of Defendants by Region and by Suit.

Further, the E.D. Texas has established a substantial infrastructure to host, house, and manage complex patent litigation. It has suitable hotels, restaurants, office space and amenities for the parties and their counsel and is accessible within a few hours from all corners of the country. Indeed, it has managed some of the highest profile and most complex patent litigation matters recently litigated, including: *Echostar Technologies v. TiVo, Inc., et al.; Broadcom Corp. v. Intel Corp.;* and *Ericsson, Inc. v. Qualcomm, Inc.*[16]

Target places undue emphasis on Katz's presence in Los Angeles and the possibility that some third party witnesses may be located there. However, the physical location of Katz's documents is irrelevant because they are digitized and ready for production anywhere in the country. Further, the possible presence in Los Angeles of a small number of third-party witnesses, many of whom are unidentified by Target, is substantially outweighed by the inconvenience transfer would impose on the parties to these cases.[17]

The E.D. Texas is also one of the plaintiff's selected venues and is the first-filed venue. The Panel has recognized the merit in transferring a consolidated patent case to the district with the first-filed case. *In re Mosaid Techs., Inc. Patent Litig.*, 283 F. Supp. 2d 1359, 1361 (J.P.M.L. 2003).

### D. The E.D. Texas is One of the Most Experienced Patent Litigation Trial Courts in the Country and Has Implemented Patent Litigation Rules to Streamline Patent Cases

The E.D. Texas regularly presides over some of the most sophisticated and high-stakes patent matters in the nation. Judge Folsom alone has handled 110 patent cases over his career, and is well versed in patent law and procedures.[18] Hsieh Decl. ¶ 4; Ex. 33, excerpt from LegalMetric Initial Judge Report of Judge Folsom Patent Cases.

---

[16] In fact, Judge Folsom presided over all these cases. A list of the 110 patent litigation matters Judge Folsom has handled is attached as Ex. 33; see Hsieh Decl. ¶ 4.

[17] To the extent these witnesses include the Katz patent prosecutors, they have been deposed in prior litigations and the transcripts of their testimony are available to Target.

[18] Judge Klausner in the C.D. California has handled less than half as many patent cases as Judge Folsom. Ex. 34, excerpt from LegalMetric Initial Judge Report of Judge Klausner Patent Cases.

The E.D. Texas has implemented specific patent litigation rules designed to streamline and aid in the management of patent cases.[19] Ex. 35, E.D. Texas Local Patent Rules, Appendix M. Cases expeditiously reach resolution or trial in the E.D. Texas, faster than in other districts. The median time to trial in the E.D. Texas is just 15.9 months, compared to 20.5 months in the C.D. California. *See* Hsieh Decl. ¶ 36; Exs. 36 to 38, Judicial Caseload Profile Statistics of the Administrative Office of the U.S. District Court.

### E.   A Comparison of Dockets Favors the E.D. Texas

The E.D. Texas is more capable of absorbing a consolidated case of the magnitude proposed than the C.D. California. The Panel ordinarily looks to the caseloads of the possible transferee districts to select the district with the most available resources. *Papst Licensing, supra.,* 1999 U.S. Dist. LEXIS at *5-6. The Panel usually transfers consolidated actions to districts which have been "less burdened by the Panel with multidistrict dockets" than the other transferee fora. *In re Gemstar Dev. Corp. Patent Litig.*, No. 1274, 1999 U.S. Dist. LEXIS 5905, at *4 (J.P.M.L. Apr. 26, 1999).

The E.D. Texas has only 379 pending cases per judge. The judges in the C.D. California are much busier, with 471 cases and thus the C.D. California case loads are nearly 25% heavier than that of the E.D. Texas. The lighter docket and specialized patent rules likely explain why cases resolve more quickly in the E.D. Texas.[20] In 2005, only 2.6% of cases in the E.D. Texas were over three years old, compared to 7.1% of cases in the C.D. California. Exs. 37 to 38, Judicial Caseload Profile Statistics of The Administrative Office of the U.S. Courts. The E.D. Texas also has a superior "weighted filings" metric compared the C.D. California (511 versus 575), meaning that each judge in the E.D. Texas manages fewer complex litigation matters than do the judges in the C.D. California. The E.D. Texas has more available resources to devote to a patent action of this magnitude and, as such, is a far superior choice of forum to efficiently and effectively manage these cases.

---

[19] Notably, the C.D. California has no such patent case specific rules.
[20] The C.D. California has a faster median time to civil disposition, which likely reflects far more Americans with Disabilities Act of 1990 (ADA) and other relatively simple civil cases associated with a much larger urban area.

## VI. THE DISTRICT OF DELAWARE WOULD ALSO BE AN APPROPRIATE TRANSFEREE COURT IF THE PANEL ELECTS TO CONSOLIDATE THE TEXAS AND DELAWARE CASES.

The District of Delaware also would be a sound choice for the transferee court, as compared to the C.D. California. The District of Delaware's 116 case annual case load per judge is significantly less than the 185 cases per judge for judges in the Central District of California.[21] However, the Delaware judges handle a larger number of patent cases. Based upon PACER records for the five-year period ending September 30, 2006, there were 642 patent cases filed in the District of Delaware, which on average was 32 per year for each judge as compared to approximately 11 a year for judges in the C.D. California. Judge Sleet, who has been assigned the five related Delaware cases, has considerable experience with patent cases. In fact, the J.P.M.L. assigned a consolidated patent litigation to Judge Sleet just last year. *See In re Pharmastem Therapeutics, Inc., Patent Litigation*, 360 F. Supp. 2d 1362 (J.P.M.L. 2005). The District of Delaware also regularly assigns patent cases to a very experienced magistrate judge for mediation, who has mediated hundreds of patent cases.[22]

## VII. CONCLUSION

Target's motion should be denied because it fails to demonstrate that any purported efficiencies to be gained by consolidation and transfer outweigh the inconvenience to the parties, witnesses, and the Courts. In fact, there would be few, if any, efficiencies and the burdens to the parties would substantially outweigh those efficiencies. Fact issues, like patent infringement and damages, are unique to each defendant and the legal patent claim construction issues are irrelevant to the MDL decision. Moreover, it would be substantially more complex for one court to manage these disparate cases, as evidenced by the current Judges' decisions to keep the actions separate and in several instances to further divide the cases.

---

[21] This is based upon the three-year period ending September 30, 2005 as reported by Administrative Office of the U.S. Courts, with the data available at www.uscourts.gov at judbus2005/appendices/x1a.pdf, judbus2004/appendices/x1a.pdf, and judbus2003/ appendices/x1a.pdf.

[22] In addition, the District of Delaware would be more convenient than the C.D. of California for the parties and witnesses. Almost half of the 175 individual defendants are within 500 miles of the District of Delaware's Wilmington courthouse; in contrast, there are only 16 defendants located in California.

Should the Panel decide consolidation is warranted, it should exclude the *Citibank* case from any consolidation. That case is in the advanced stages of pretrial preparation and any orders derailing it now would unduly burden the parties with needless delay and expense, would be wasteful of the parties' and judicial resources, and would eliminate an effective case management tool for the remaining cases.

Finally, should the Panel decide that transfer and consolidation is warranted, transfer to the E.D. Texas is most logical because it: (i) has the greatest number of pending Katz Actions; (ii) has the most recent knowledge and experience with the legal and factual issues; (iii) is the most convenient and efficient venue for the largest number of parties; (iv) is one of the most experienced patent litigation trial courts in the country and has implemented patent litigation rules to streamline cases; (v) and has more docket capacity and ability to absorb these cases than the C.D. California.

Dated: November 3, 2006

By: _____
STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
Ronald A. Katz Technology Licensing, L.P.

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| In re: | MDL Docket No. 1816 |
| --- | --- |
| Katz Interactive Call Processing Patent Litigation | |

APPENDIX OF THE TABLE OF AUTHORITIES OF PLAINTIFF'S OPPOSITION TO
TARGET'S MOTION FOR TRANSFER AND CONSOLIDATION
OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION

STEPHEN C. NEAL (170085)
JANET L. CULLUM (104336)
ANTHONY M. STIEGLER (126414)
JOHN S. KYLE (199196)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Respondent
RONALD A. KATZ TECHNOLOGY LICENSING, L.P.

# TABLE OF AUTHORITIES

## CASES

*In re Acacia Media Techs. Corp. Patent Litig.*,
360 F. Supp. 2d 1377 (J.P.M.L. 2005)................................................................ 9

*In re Accuscan, Inc., Automatic Background Contrast Control Patent Litig.*,
No. 1145 U.S. Dist. LEXIS 17696 (J.P.M.L. Nov. 26, 1996) ............................ 11

*In re Cable Tie Patent Litig.*,
487 F. Supp. 1351 (J.P.M.L. 1980)..................................................................... 12

*In re Columbia University Patent Litig.*,
313 F. Supp. 2d 1383 (J.P.M.L. 2004)................................................................ 15

*In re Commonwealth Sci. & Indus. Research Org. Patent Litig.*,
395 F. Supp. 2d 1357 (J.P.M.L. 2005)................................................................ 12

*Devlin v. Transp. Comm'ns Int'l Union*,
175 F.3d 121 (2nd Cir. 1999)............................................................................. 11

*In re Dupont Benelate Settlement Agreement Litig.*,
No. 1340, 2000 U.S. Dist. Lexis 7378 (J.P.M.L. 2000) ...................................... 8

*In re "East of the Rockies" Concrete Pipe*,
302 F. Supp. 244 (J.P.M.L. 1969)....................................................................... 8

*Festo Corp. v. Shoketsu Kinzoku Kogyuo Kabushiki Co, Ltd.*,
535 U.S. 722 (2002)........................................................................................... 10

*FMC Corp. v. Manitowoc Co., Inc.*
835 F.2d 1411 (Fed. Cir. 1987).......................................................................... 10

*In re Fosamax Prods. Liab. Litig.*,
444 F. Supp. 2d 1347 (J.P.M.L. 2006)................................................................ 14

*In re Gemstar Dev. Corp. Patent Litig.*,
No. 1274, 1999 U.S. Dist. Lexis 5905 (J.P.M.L. Apr. 26, 1999) ...................... 17

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970).................................................................... 9

*Koito Mfg. Co. Ltd. v. Turn-Key-Tech LLC*,
381 F.3d 1142 (Fed. Cir. 2004).......................................................................... 10

*In re Mailblocks, Inc., 279*
F. Supp. 2d 1379 (J.P.M.L. 2003)...................................................................... 14

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370; 116 S.Ct. 1384,   (1996).............................................5, 8, 10, 11, 12, 13

*In re MLR, LLC, Patent Litig.*
269 F. Supp. 2d 1380 (J.P.M.L 2003).................................................................. 9

*In re Mosaid Techs., Inc. Patent Litig.*,
283 F. Supp. 2d 1359 (J.P.M.L. 2003)................................................................ 16

*In re Nifedipine Capsule Patent Litig., No.*
No. 774, 1988 U.S. Dist. LEXIS 17025  (J.P.M.L. Oct. 13, 1988) .................... 13

# TABLE OF AUTHORITIES
## (continued)

*In re Papst Licensing, GmbH Patent Litig.*,
   No. 1298 U.S. Dist. LEXIS 15871 (J.P.M.L. Oct. 12, 1999) ........................................ 15, 17

*In re Pharmastem Therapeutics, Inc. Patent Litig.*,
   360 F. Supp. 2d 1362 (J.P.M.L. 2005) ..................................................................... 9, 15, 18

*Southwall Technologies, Inc. v. Cardinal I G Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) ................................................................................... 9

*In re Sundstrand Data Control, Inc. Patent Litig.*,
   443 F. Supp. 1019 (J.P.M.L. 1978) ............................................................................ 14

*In re Truck Accident Near Alamogordo*,
   387 F. Supp. 732 (J.P.M.L. 1975) ............................................................................... 7

*Union Oil Co. of California v. Atlanta Richfield Co.*,
   208 F.3d 989 (Fed.Cir. 2000) ..................................................................................... 10

*In re U.S. Navy Variable Reenlistment Bonus Litig.*,
   407 F. Supp. 1405 (J.P.M.L. 1976) ............................................................................ 11


## STATUTES

28 U.S.C. § 1407 ........................................................................................................... 7, 8

F.R.C.P. 42(a) .................................................................................................................. 11

**Certificate of Service**

I hereby certify that true and correct copies of the following documents:

**Plaintiff's Response to Defendants Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation,**

**Plaintiff's Memorandum of Law in Opposition of Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation,**

**Appendix of the Table of Authorities in Opposition of Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation, and**

**Appendix of Exhibits in Opposition of Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation**

were served on all counsel in compliance with Rule 5.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. Ronald A. Katz Technology Licensing L.P.'s Response and Opposition to Defendant Target's Motion for Transfer and Consolidation of Katz Interactive Call Processing Patent Litigation Pursuant to 28 U.S.C. § 1407 were served via U.S. Mail on this 4th of November, 2006 according to the attached Panel Attorney Service List, and supplemented by the attached Service List.

Christine Hsieh

Judicial Panel on Multidistrict Litigation - Panel Attorney Service List                                    Page 1

   Docket: 1816 - In re Katz Interactive Call Processing Patent Litigation
   Status: Pending on / /
   Transferee District:    Judge:                                                    Printed on 10/27/2006

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Abn Amro Mortgage Group,<br>777 East Eisenhower Parkway<br>Suite 700<br>Ann Arbor, MI 48108 | => <br> ABN AMRO Mortgage Group, Inc. |
| Alltel Communication Wire,<br>One Allied Drive<br>Little Rock, AR 72202 | => <br> Alltel Communications Wireless, Inc. |
| Alltel Communications,<br>One Allied Drive<br>Little Rock, AR 72202 | => <br> Alltel Communications of Texarkana, Inc. |
| Alltel, Corp.,<br>One Allied Drive<br>Little Rock, AR 72202 | => <br> ALLTEL Corp. |
| Arroyo, Blas P.<br>Alston & Bird, LLP<br>Bank of America Plaza<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000 | => Phone: (704) 444-1012 Fax: (704) 444-1111<br>Time Warner Cable, Inc.*; Time Warner Entertainment Co., L.P.*; Time Warner NY Cable, LLC* |
| Barner, Sharon R.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500 Fax: (312) 832-4700<br>U.S. Bancorp.*#; U.S. Bank, N.A.* |
| Barquist, Charles S.<br>Morrison & Foerster, LLP<br>555 W. Fifth Street<br>Suite 3500<br>Los Angeles, CA 90013 | => Phone: (213) 892-5200 Fax: (213) 892-5454<br>Express Scripts, Inc.* |
| Beane, Jerry L.<br>Andrews & Kurth<br>BankOne Center<br>1717 Main Street<br>Suite 3700<br>Dallas, TX 75201 | => Phone: (214) 659-4400 Fax: (214) 659-4401<br>Aetna RX Home Delivery, LLC* |
| Boice, William H.<br>Kilpatrick & Stockton<br>1100 Peachtree Street<br>Suite 2800<br>Atlanta, GA 30309 | => Phone: (404) 815-6464<br>Cox Communications, Inc.*#; Coxcom, Inc.*#; Earthlink, Inc.*# |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Cablevision Systems Corp., 1111 Stewart Avenue Bethpage, NY 11714 | => Cablevison Systems Corp. |
| Capshaw, III, S. Calvin Brown, McCarroll, LLP P.O. Box 3999 Longview, TX 75606-3999 | => Phone: (903) 236-9800 Fax: (903) 236-8787 Anthem Prescription Management, LLC*; Precision RX, Inc.*; Professional Claim Services, Inc. dba Wellpoint Pharmacy Management, Inc.*; Wellpoint, Inc.* |
| Cerdian Corporation, 3311 East Old Shakopee Road Minneapolis, MN 55425 | => Ceridian Corp. |
| Comdata Corporation, 5301 Maryland Way Brentwood, TN 37027 | => Comdata Corp. |
| Cox, Juliet A. Sonnenschein, Nath & Rosenthal, LLP 4520 Main Street Suite 1100 Kansas City, MO 64111 | => Phone: (816) 460-2400 Fax: (816) 531-7545 Aquila, Inc.* |
| Cullum, Janet L. Cooley, Godward, Kronish, LLP Five Palo Alto Square 3000 El Camino Real Palo Alto, CA 94306-2155 | => Phone: (650) 843-5000 Fax: (650) 857-0663 Ronald A. Katz Technology Licensing, LP* |
| Devito, Daniel A. Skadden, Arps, Slate, Meagher & Flom, LLP 4 Times Square New York, NY 10036 | => Phone: (212) 735-3000 Fax: (212) 735-2000 Comerica Bank & Trust, NA*; Comerica Securites, Inc.*; Comerica, Inc.* |
| Elsevier, MD, J. Patrick Alston & Bird, LLP 1201 West Peachtree Street One Atlantic Center Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777 T-Mobile USA, Inc.* |
| Ferguson, Brian E. McDermott, Will & Emery, LLP 600 13th Street, N.W. Washington, DC 20005 | => Phone: (202) 756-8371 Fax: (202) 756-8087 21st Century Casualty Co.*; 21st Century Insurance Co.*; 21st Century Insurance Group*; AIG Annuity Insurance Co.*; AIG Federal Savings Bank*; AIG Life Insurance Co.*; AIG Markting, Inc.*; AIG Retirement Services, Inc.*; AIG SunAmerica Asset Management Corp.*; American General Assurance Co.*; American General Indemnity Co.*; American General Life & Accident Insurance Co.*; American General Life Insurance Co.*; American International Group, Inc.*; Cigna Corp.*; Cigna Health Corp.*; Cigna Healthcare of Delaware, Inc.*; Tel-Drug of Pennsylvania, LLC*; Tel-Drug, Inc.*; United States Life Insurance Co. in the City of New York*; VALIC Financial Advisors, Inc.*; VALIC Retirement Services Co.*; Variable Annuity Life Insurance Co.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | New York City Corp.*; CSC Holdings, Inc.* |
| LaSalle Bank Corporation,<br>135 LaSalle Street<br>Chicago, IL 60603 | => LaSalle Bank Corp.; LaSalle Bank National Association |
| Lasalle Financial Service,<br>135 LaSalle Street<br>Chicago, IL 60603 | => LaSalle Financial Services, Inc. |
| Lee, Robert L.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777<br>Ahold USA, Inc.*; Giant Food Stores, LLC*; Giant Food, LLC*; Stop & Shop Supermarket Co., LLC* |
| Lukin, Mitchell D.<br>Baker Botts, L.L.P.<br>One Shell Plaza<br>910 Louisiana<br>Houston, TX 77002-4995 | => Phone: (713) 229-1733 Fax: (713) 229-7733<br>Reliant Energy Retail Services, LLC*; Reliant Energy, Inc.* |
| Maxwell, David M.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777<br>AOL, LLC*; CompuServe Interactive Services, Inc.*; Netscape Communications Corp.* |
| McDermott, Richard M.<br>Alston & Bird, LLP<br>Bank of America Plaza<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000 | => Phone: (704) 444-1000 Fax: (704) 444-1111<br>Cinergy Corp.*; Duke Energy Corp.* |
| McElhinny, Harold J.<br>Morrison & Foerster, LLP<br>425 Market Street<br>San Francisco, CA 94105-2482 | => Phone: (415) 268-7000 Fax: (415) 268-7522<br>Target Bank*; Target Corp.*; Target National Bank* |
| McGrath, Robin L.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777<br>Safeco Corp.*#; Safeco Insurance Co. of America* |
| McKool, Jr., Mike.<br>McKool & Smith, P.C.<br>300 Crescent Court<br>Suite 1500<br>Dallas, TX 75201 | => Phone: (214) 978-4000<br>American Airlines, Inc.*; American Beacon Advisors, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Miller, Camille M.<br>Cozen O'Connor<br>1900 Market Street<br>Philadelphia, PA 19103 | => Phone: (215) 665-7273  Fax: (215) 701-2273<br>Wilmington Brokerage Services Co.*; Wilmington Trust Co.* |
| Moore, Matthew J.<br>Howrey LLP<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2402 | => Phone: (202) 783-0800  Fax: (202) 383-6610<br>Cullen/Frost Bankers, Inc.*; Ford Motor Co.*#; Ford Motor Credit Co.*#; General Electric Capital<br>Services, Inc.*#; General Electric Consumer Finance, Inc.*#; General Motors Acceptance Corp.*#;<br>General Motors Corp.*#; GMAC Residential Capital Corp.*#; Hilton H Honors Worldwide, L.L.C.*;<br>Hilton Hotels Corp.*; Hilton Reservations Worldwide, L.L.C.*; Marriott International, Inc.*; Marriott<br>Worldwide Reservation Services, L.L.C.*; PNC Financial Services Group, Inc.*#; Randall's Food &<br>Drug, L.P.*; Randall's Food Market, Inc.*; Safeway, Inc.*; Whirlpool Corp.* |
| Moyer, Jeffrey L.<br>Richards, Layton & Finger<br>P.O. Box 551<br>Wilmington, DE 19899 | => Phone: (302) 651-7525  Fax: (302) 651-7701<br>Qwest Broadband Services, Inc.*; Qwest Communications Corp.*; Qwest Communications<br>International, Inc.*; Qwest Interprise America, Inc.*; Qwest LD Corp.*; Qwest Wireless, LLC* |
| Najim, Samuel J.<br>Jones Day<br>1420 Peachtree Street<br>Suite 800<br>Atlanta, GA 30309-3053 | => Phone: (404) 521-3939  Fax: (404) 581-8330<br>Centerpoint Energy Houston Electric, LLC*; Centerpoint Energy Resources Corp*; Centerpoint Energy,<br>Inc.*; Chevron Corp.*; Chevron Credit Bank, N.A.*; Chevron Products Co.*; Experian Information<br>Solutions, Inc.*; National City Bank*; National City Bank of Indiana*; National City Corp.*; Regions<br>Bank, NA*#; Regions Financial Corp.*# |
| National Railroad Passeng,<br>60 Massachusetts Avenue, N.E.<br>Washington, DC 20002 | =><br>National Railroad Passenger Corp. dba Amtrak |
| Norrod, Gregory S.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500  Fax: (312) 832-4700<br>Sam's East, Inc.*; Sam's West, Inc.*; Wal-Mart Store, Inc.*; Wal-Mart Stores East, LP*; Wal-Mart<br>Stores Texas, LP*; Wal-Mart.com, Inc.* |
| PNC Bank, NA,<br>One PNC Plaza<br>249 Fifth Avenue<br>Pittsburg, PA 15222 | =><br>PNC Bank, N.A. |
| Petersen, Steven P.<br>Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza<br>Suite 4900<br>Chicago, IL 60601 | => Phone: (312) 616-5600  Fax: (312) 616-5700<br>Aetna, Inc.*; TDS Metrocom, LLC*; TDS Telecommunications Corp.*; United States Cellular Corp.* |
| Roodman, David A.<br>Bryan Cave, LLP<br>One Metropolitan Square<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102-2750 | => Phone: (314) 259-2000  Fax: (314) 259-2020<br>Dillard Investment Co., Inc.*; Dillard's, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Rooklidge, William C.<br>Howrey LLP<br>2020 Main Street<br>Suite 1000<br>Irvine, CA 92614-8200 | => Phone: (949) 721-6900<br>Discover Bank*; Discover Financial Services, Inc.* |
| Seary, III, Marshall M.<br>Quinn Emanuel Urquhart Oliver & Hedges<br>865 South Figueroa Street<br>10th Floor<br>Los Angeles, CA 90017 | => Phone: (213) 443-3000  Fax: (213) 443-3100<br>DirecTV Enterprise, LLC*#; DirecTV Group, Inc.*#; DirecTV Holdings, LLC*#; DirecTV, Inc.*# |
| Selsberg, Steven R.<br>Mayer, Brown, Rowe & Maw, LLP<br>700 Louisiana<br>Suite 3400<br>Houston, TX 77002 | => Phone: (713) 238-2664  Fax: (713) 238-4888<br>Tracfone Wireless, Inc.*# |
| Spivey, Jonathan R.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500  Fax: (312) 832-4700<br>Caremark Inc. dba Caremark Prescription Services*; Caremark RX Inc.* |
| Standley, Jeffrey S.<br>Standley Law Group, LLP<br>495 Metro Place South<br>Suite 210<br>Dubin, OH 43017-5319 | => Phone: (614) 792-5555  Fax: (614) 792-5536<br>Delmarva Power & Light Co.*; Humana, Inc.*#; Pepco Holdings, Inc.*; PHI Service Co.* |
| Stroup, Richard L.<br>Finnegan, Henderson, Farabow, Garrett, et al.<br>901 New York Avenue, N.W.<br>Washington, DC 20001-4413 | => Phone: (202) 408-4000  Fax: (202) 408-4400<br>Federal Express Corp.*; FedEx Corp.*; FedEx Corporate Services, Inc.*; FedEx Customer Information Services, Inc.* |
| Wade, William J.<br>Richards, Layton & Finger<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899 | => Phone: (302) 658-6541<br>TD Banknorth, Inc. |
| Worthington, Stayton L.<br>Coghlan Crowson, LLP<br>1127 Judson Road, Suite 211<br>Longview, TX 75606 | => Phone: (903) 758-5543  Fax: (903) 753-6989<br>American Electric Express Power Co., Inc.*; American Electric Power Co., Inc.*; American Electric Power Service Corp.; American Electric Power WR; Southwestern Electric Power Co.* |

Note: Please refer to the report title page for complete report scope and key.

IN RE: KATZ INTERACTIVE CALL PROCESSING PATENT LITIGATION
SUPPLEMENTAL SERVICE LIST

**Counsel Not Included in Panel Service List**

Robert Christopher Bunt
Robert M. Parker
Charles Ainsworth
Parker, Bunt & Ainsworth
100 E. Ferguson, Suite 1114
Tyler, TX 75702
Tel: (903) 531-3535
Fax: (903) 533-9687
**Attorneys for PNC Bank, NA; PNC
Financial Services Group, Inc.; General
Electric Capital Corporation; General
Electric Capital Services, Inc.; General
Electric Consumer Finance, Inc.,
Cullen/Frost Bankers, Inc.; The Frost
National Bank, NA**

Brian C. McCormack
Baker & McKenzie
2001 Ross Avenue, Suite 2300
Dallas, TX 75201
Tel: (214) 978-3007
Fax: (214) 978-3099
**Attorneys for Alltel Communications
Wireless, Inc.; Alltel Corporation; Alltel
Communications of Texarkana, Inc.**

Jeffrey J. Cox
Jeffrey S. Patterson
Thomas J. Adair
Harline, Dacus, Barger, Dreyer & Kern,
LLP
6688 North Central Expressway
Suite 1000
Dallas, TX 75206
Tel: (214) 369-2100
Fax: (214) 369-2118
**Attorneys for National Railroad
Passenger Corporation dba Amtrak**

## Parties Not Included on Panel Service List

Rite Aid Corporation
Rite Aid of Delaware, Inc.
30 Hunter Lane
Camp Hill, PA 17011

The Jean Coutu Group (PJC) USA
Eckerd Corporation
Brooks Pharmacy, Inc.
Maxi Drug, Inc.
Maxi Drug North, Inc.
50 Service Road
Warwick, RI 02886

EXHIBIT 2

# EXHIBIT A



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

*Ex Parte* Reexamination Filing Data  - March 31, 2006

1.  Total requests filed since start of ex parte reexam on 07/01/81 ....................................... 7991

|  | | | |
|---|---|---|---|
| a. | By patent owner | 3283 | 41% |
| b. | By other member of public | 4543 | 57% |
| c. | By order of Commissioner | 165 | 2% |

2.  Number of filings by discipline

|  | | | |
|---|---|---|---|
| a. | Chemical Operation | 2476 | 31% |
| b. | Electrical Operation | 2561 | 32% |
| c. | Mechanical Operation | 2954 | 37% |

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 248 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation.................................................................1858    23%

5.  Determinations on requests .......................................................................................... 7772

    a.  No. granted ...............................................................................7088....................91%

|  | | |
|---|---|---|
| (1) | By examiner | 6982 |
| (2) | By Director (on petition) | 106 |

    b.  No. denied ..................................................................................684......................9%

|  | | |
|---|---|---|
| (1) | By examiner | 649 |
| (2) | Order vacated | 35 |

6.  Total examiner denials (includes denials reversed by Director) ........................................ 755

    a.  Patent owner requester                                 428          57%
    b.  Third party requester                                  327          43%


7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                                  22.6  (mos.)
    b.  Median pendency                                   17.5  (mos.)


| 8. Reexam certificate claim analysis: | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |


9.  Total ex parte reexamination certificates issued (1981 - present) .................................... 5316

    a.  Certificates with all claims confirmed            1385         26%
    b.  Certificates with all claims canceled              543         10%
    c.  Certificates with claims changes                  3388         64%


10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER ...................................................... 2317

            (1)  All claims confirmed                      538         23%
            (2)  All claims canceled                       168          7%
            (3)  Claim changes                            1611         70%

    b.  Certificates _ 3rd PARTY REQUESTER ................................................................ 2864

            (1)  All claims confirmed                      830         29%
            (2)  All claims canceled                       345         12%
            (3)  Claim changes                            1689         59%

    c.  Certificates _ COMM'R INITIATED REEXAM ...................................................... 135

            (1)  All claims confirmed                       17         13%
            (2)  All claims canceled                        26         19%
            (3)  Claim changes                              92         68%

# EXHIBIT 3

Case 1:06-cv-00546-GMS    Document 82-3    Filed 12/18/2006    Page 6 of 34

Reexam. Nos. 90/006,978 & 90/007,074

# REMARKS

## Table Of Contents

PAGE

I.  Claim Status Summary ...................................................................................41

II. Summary of Legal Argument ........................................................................44

    A.    The Claims Must be Construed to Sustain Their Validity.....................................44

    B.    Proper Application of the Law of Claim Construction in This
        Reexamination Proceeding Would Render the Claims Valid...............................46

    C.    The Examiner Improperly Ignored Prosecution Histories Which Inform
        and Validate the Claim Term "Consumable Participation Key" .........................51

III. The Rejections Under 35 U.S.C. § 102 are Improper and Should be Withdrawn............54

    A.    General Comment................................................................................54

    B.    Governing Criteria ..............................................................................54

    C.    "PRODUCT CLAIMS 1-36 and 96-207"...............................................................55

        1.    Rejection of Claims 1, 4, 9, 12, 13, 18, 19, 22-24, 26, 32-34, 96-
              102, 106-108, 115, 119-123, 131, 132, 135, 137, 141-147, 150-
              153, 165, 166, 183-190, 196-200, 202, 203, and 206 as Anticipated
              by De Bruyn (SOA, page 9). .................................................................55

        2.    Rejection of Claims 1, 4, 9, 12, 24, 137, 141, 143, 150, 151, 153,
              169, 176-178, 181, and 182 as Anticipated by Yoshizawa (SOA,
              page 25). .......................................................................................67

        3.    Rejection of Claims 1, 4, 9, 12, 24, and 25 as Anticipated by
              Emerson (SOA, page 33)....................................................................71

        4.    Rejection of Claims 96, 111-114, 183, 201, 206 as Anticipated by
              Daudelin (SOA, page 38) ...................................................................74

        5.    Rejection of  Claims 26, 27, 36, 96, 97, 100, 115, 116, 119-123,
              130, 132-134 as Anticipated by Kaplan (SOA, page 43) .........................77

        6.    Rejection of Claims 169, 170, 172, 176-180 as Anticipated by
              Moosemiller (SOA, page 48)...............................................................79

Case 1:06-cv-00546-GMS    Document 82-3    Filed 12/18/2006    Page 7 of 34

Reexam. Nos. 90/006,978 & 90/007,074

7.    Rejection of Claims 9, 12, 22-24, 25, 137, 141, 144-146, 150, 151,
                154, 156, and 167 as Anticipated by Barger (SOA, page 53) ...................83

D.    "PROCESS CLAIMS 37-95"...............................................................................86

1.    Rejection of Claims 37-39, 42-54, 56-68, 70, 74-76, and 87 as
                Anticipated by Moosemiller (SOA, page 76)............................................86

2.    Rejection of Claims 69, 84-86, and 88-93 as Anticipated by De
                Bruyn (SOA, page 85) ...............................................................................88

3.    Rejection of Claims 69, 76, 84-86, 90, 91, 94, and 95 as
                Anticipated by Yoshizawa (SOA, page 90)...............................................89

4.    Rejection of Claims 69, and 77-83 as Anticipated by Emerson
                (SOA, page 93) ..........................................................................................90

IV.    The Rejections Under 35 U.S.C. § 103 are Unsupported and Should be
        Withdrawn ...........................................................................................................91

A.    Governing Criteria .............................................................................................91

B.    "PRODUCT CLAIMS 1-36 and 96-207"...........................................................92

1.    Rejection of Claims 18, 19, 26, 32-34, 96-102, 106-108, 115, 119-
                123, 131, 132, 135, 183-190, 196-200, 202, 203, and 206 as
                Unpatentable Over De Bruyn in View of Maxon, et al., and De
                Bruyn in View of Streisand) (SOA, page 62)...........................................92

2.    Rejection of Claims 2, 3, 10, 11, 16, 109, 110, 163, 164, and 168
                as Unpatentable Over De Bruyn in View of St. Jean (SOA, page
                63)................................................................................................................96

3.    Rejection of Claims 2, 3, 10, 11, 16, 163, 164, 168, 173-175 as
                Unpatentable Over Yoshizawa in View of St. Jean (SOA, page 64) .......98

4.    Rejection of Claims 2, 3, 10, 11, 16, 137, 154, and 156-168 as
                Unpatentable Over Emerson in View of St. Jean (SOA, page 65)..........100

5.    Rejection of Claims 173-175 as Unpatentable Over Moosemiller in
                View of St. Jean (SOA, page 67)..............................................................101

6.    Rejection of Claim 5 as Unpatentable Over Any of De Bruyn,
                Yoshizawa, and Emerson, in View of Feistel (SOA, page 68)................102

7.   Rejection of Claims 6, 14, 15, 17, 28, 29, 103, 104, 124, 138-140,
      191-195 as Unpatentable Over De Bruyn in View of Moosemiller
      (SOA, page 69) .......................................................................................103

8.   Rejection of Claims 7 and 8 as Unpatentable Over Emerson in
      View of Gentile (SOA, page 71) ...........................................................104

9.   Rejection of Claims 117 and 118 as Unptentable Over Kaplan in
      View of Gentile (SOA, page 71) ...........................................................105

10.  Rejection of Claim 155 as Unpatentable Over Emerson in View of
      St. Jean and Gentile (SOA, page 72) .....................................................105

11.  Rejection of Claim 35 as Unpatentable Over De Bruyn in View of
      Flanagin (SOA, page 72) .......................................................................106

12.  Rejection of Claims 128, 129, and 136 as Unpatentable Over
      Kaplan in View of Emerson (SOA, page 72) .........................................107

13.  Rejection of Claims 170 and 172 as Unpatentable Over Yoshizawa
      in View of Moosemiller (SOA, page 73)................................................108

14.  Rejection of Claim 171 as Unpatentable Over Yoshizawa in View
      of Kaplan (SOA, page 74) .....................................................................108

15.  Rejection of Claims 179 and 180 as Unpatentable Over Yoshizawa
      in View of Emerson (SOA, page 75).......................................................108

C.   "PROCESS CLAIMS 37-95" .............................................................................108

1.   Rejection of Claims 40, 41, and 71-73 as Unpatentable Over
      Moosemiller in View of Hutton (SOA, page 98) ....................................108

2.   Rejection of Claims 48-52 and 64-68 as Unpatentable Over
      Moosemiller in View of Emerson (SOA, page 99) .................................109

3.   Rejection of Claim 55 as Unpatentable Over Moosemiller in View
      of Flanagan (Office Action, page 101)...................................................109

4.   Rejection of Claims 69, 84-86, and 88-93 as Unpatentable Over De
      Bruyn in View of Maxon, et al., and De Bruyn in View of
      Streisand (SOA, page 101) ....................................................................110

V.   REJECTIONS ADDED BY the EXAMINER ................................................................112

A.   Additional Rejections to address "encoding means" arguments .........................112

Case 1:06-cv-00546-GMS    Document 82-3    Filed 12/18/2006    Page 9 of 34

Reexam. Nos. 90/006,978 & 90/007,074

1.  Rejection of Claim 1 as Unpatentable Over Any of De Bruyn,
    Yoshizawa, and Emerson, in View of Feistel (SOA, page 103).............. 113

2.  Rejection of Claims 2 and 3 as Unpatentable Over Each of De
    Bruyn, Yoshizawa, and Emerson, Each in View of St. Jean and
    Feistel (SOA, page 103) ......................................................................... 113

3.  Rejection of Claim 6 as Unpatentable Over De Bruyn in View of
    Moosemiller and Feistel (SOA, page 103) ............................................. 114

4.  Rejection of Claims 7 and 8 as Unpatentable Over Emerson in
    View of Gentile and Feistel (SOA, page 103) ........................................ 115

B.  Additional Rejections to address "computer-generated numbers indicative
    of sequence data" arguments ................................................................... 115

1.  Rejection of Claims 30, 31, 105, 125-127, 204, 205, and 207 as
    Unpatentable Over De Bruyn in View of Yoshizawa (SOA, page
    108) ....................................................................................................... 116

C.  Additional Rejections to address "products carrying participation number"
    arguments ............................................................................................... 116

1.  Rejection of Claims 37, 38, 42-51, 53-59, 64, 65, 70, 74, 76, and
    87 as Unpatentable Over Norris in View of Moosemiller (SOA,
    page 110) ............................................................................................... 117

2.  Rejection of Claims 62, 63, and 68 as Unpatentable Over Norris in
    View of Moosemiller and Further in View of Yoshizawa (SOA,
    page 110) ............................................................................................... 117

D.  Additional Rejections to address "consumable participation key" and its
    equivalents arguments ............................................................................. 118

1.  Rejection of Claim 206 as Unpatentable Over Norris in View of
    Moosemiller (SOA, page 120) ............................................................... 118

2.  Rejection of Claim 207 as Unpatentable Over Norris in View of
    Moosemiller and Further in View of Yoshizawa (SOA, page 120) ........ 119

VI.  Third Party Evidence Further Supports the Unobviousness of the Rejected Claims ...... 119

A.  Overview ................................................................................................. 119

B.  Governing Criteria to Establish Commercial Success .......................... 120

- 39 -

        C.        Evidence of Commercial Success...................................................................120

        D.        Industry Recognition and Adoption................................................................158

VII.   Conclusion ......................................................................................................................159

APPENDIX A..........................................................................................................................161

Case 1:06-cv-00546-GMS    Document 82-3    Filed 12/18/2006    Page 11 of 34

Reexam. Nos. 90/006,978 & 90/007,074

| Examiner's Rejection (in the SOA) | Patentee's claim construction | Examiner's claim construction |
|---|---|---|
| 33. Claims 94 and 95 rejected under 35 USC 102(b) over *Yoshizawa* (p. 90)<br><br>34. Claim 68 rejected under 103(a) over *Moosemiller* in view of *Emerson* (p. 99)<br><br>Additional rejections<br><br>35. Claims 30, 31, 105, 125, 126, 204, 205, and 207 rejected under 103(a) over *De Bruyn* in view of *Yoshizawa* (p. 108)<br><br>36. Claims 62, 63, and 68 rejected under 103(a) over *Norris* in view of *Moosemiller* and further in view of *Yoshizawa* (p. 110)<br><br>37. Claim 207 rejected under 103(a) over *Norris* in view of *Moosemiller* and further in view of *Yoshizawa* (p. 120) | *(pages 55, 57, 60, 66, 71-73, 77, 98-100 of February 6 Response)* | |
| 38. Claim 25 rejected under 35 USC 102(b) over *Emerson* (p. 33)<br><br>39. Claim 25 rejected under 35 USC 102(b) over *Barger* (p. 53) | **"check digit"**<br><br>Claim 25 ; "check digit" must be interpreted for example, a key having a precise number of digits that always total a particular numerical value<br><br>*(e.g. page 65 of February 6 Response)* | **"check digit"**<br><br>Claim 25; "check digit" is interpreted as expressing a key with digits.<br><br>*(e.g. pages 38, 59, 155 and 165 of SOA)* |

**C.**    *The Examiner Improperly Ignored Prosecution Histories Which Inform and Validate the Claim Term "Consumable Participation Key"*

An additional, and equally compelling ground, for review of the SOA is that the Examiner erred in ignoring the prosecution history in the Patent Office. As noted in TABLE 1,

the SOA rejected claims 12, 13, 17, 24, 25, 152 and 206 of the '707 patent based on interpreting

"consumable participation key" as a limit that can be refreshed on a weekly basis (e.g. pages 18,

19, 30, 38, 58-59, 70-71, 113-114, 117-118, 120-121, 132-134, 144, 149, 151, 155, 158, 160,

164-166, 192-193 of SOA). This interpretation is totally at odds with not only the prosecution of

the '707 patent but also with those of related patent histories that inform on this claim term.

The meaning of a claim term is ascertained by reference to intrinsic and extrinsic sources,

with the extrinsic sources being consulted only if the intrinsic sources cannot resolve ambiguity.

Intrinsic sources are the claims themselves, the specification and the prosecution history.

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1317, 75 USPQ.2d 1321 (Fed. Cir. 2005). The *Phillips*

Court explained:

> In addition to consulting the specification, we have held that a court
> "should also consider the patent's prosecution history, if it is in evidence."
> *Markman,* 52 F.3d at 980; *see also Graham v. John Deere Co.,* 383 U.S. 1,
> 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ("[A]n invention is construed not
> only in the light of the claims, but also with reference to the file wrapper
> or prosecution history in the Patent Office."). The prosecution history,
> which we have designated as part of the "intrinsic evidence," consists of
> the complete record of the proceedings before the PTO and includes the
> prior art cited during the examination of the patent. *Autogiro,* 384 F.2d at
> 399. Like the specification, the prosecution history provides evidence of
> how the PTO and the inventor understood the patent. *See Lemelson v.
> Gen. Mills, Inc.,* 968 F.2d 1202, 1206 (Fed.Cir.1992). Furthermore, like
> the specification, the prosecution history was created by the patentee in
> attempting to explain and obtain the patent. ... [T]he prosecution history
> can often inform the meaning of the claim language by demonstrating how
> the inventor understood the invention and whether the inventor limited the
> invention in the course of prosecution, making the claim scope narrower
> than it would otherwise be. *Vitronics,* 90 F.3d at 1582-83; *see also Chimie
> v. PPG Indus., Inc.,* 402 F.3d 1371, 1384 (Fed.Cir.2005) ("The purpose of
> consulting the prosecution history in construing a claim is to 'exclude any
> interpretation that was disclaimed during prosecution.' "), *quoting ZMI
> Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1580 (Fed.Cir.1988);
> *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576
> (Fed.Cir.1995).

The reason that the intrinsic evidence, the claims, specification and prosecution history, is

crucial is that it is the public record of the Patentee's claim, a record on which the public is

entitled to rely. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 978-79, 34 USPQ2d 1321,

1329 (Fed. Cir. 1995), *aff'd* 517 US 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

Moreover, when a patent has the same or virtually identical disclosure as another patent, comments made during prosecution of either patent bear on the public's interpretation of like terms, *Depuy Orthopaedics Inc. v. Androphy*, 53 USPQ2d 1941, 1950 (N.D. Ill 2000), citing *Augustine Medical Inc. v. Gaymar Industries, Inc.*, 81 F.3d 1291, 1300, 50 USPQ2d 1900 (Fed. Cir. 1999); *Loral Fairchild Corp. v. Sony Corp.,* 50 USPQ2d 1865 (Fed. Cir. 1999) (court found support for construing plaintiff's terms used in the claims of plaintiff's method patent by examining the prosecution history of plaintiff's contemporaneous prosecution of a divisional application directed to the apparatus).

TABLE 2 (see attached at the end as APPENDIX) presents the places in the prosecution histories of the 5,561,707; 5,684,863; 6,016,344; 5,359,645; 5,365,575; 5,787,156; 5,828,734; 5,898,762; 6,035,021; 6,335,965; 6,349,134; 6,434,223; 6,449,346; and 6,512,415 patents ("Related Patents") that inform construction of the term "consumable participation key" because they either share the same priority, disclosure or specification as the '707 patent or claims to priority from a parent that shares the same disclosure and specification. A review of the prosecution history of those Related Patents with regard to the term "consumable participation key," as summarized in TABLE 2, confirms that the term must be construed to mean a finite number of uses accorded to a caller in a defined or nonrecurring period of time that once consumed are not automatically refreshed. This interpretation is the only construction consistent with the intrinsic evidence and thus must be given deference. It is not, as the references cited by the SOA teach, something that is automatically refreshed each week (see e.g. De Bruyn, page 18 of the SOA).

As further demonstrated in detail below (Section III), when the term "consumable participation key" is properly construed, claims 12, 13, 17, 24, 25, 152, and 206 of the '707 patent are patentably distinct from the references cited in the SOA. Indeed, the prosecution histories themselves show that the De Bruyn and Barger references cited were distinguished (see TABLE 3, attached at the end as APPENDIX) on the same grounds. Accordingly, reinstatement of these claims is also consistent with the presumption that the Examiner correctly performed its duties during prosecution of the teaching patents, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327, 75 USPQ 2d 1321 (Fed Cir. 2005); and with only considering new questions of patentability during a reexamination procedure rather than revisiting the same issues considered during the original prosecution (MPEP 2216).

# EXHIBIT 4

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,697 | 08/30/2005 | 5787156 | 2890-140 | 3448 |

| | | |
|---|---|---|
| 35554 | 7590 | 09/08/2006 |

REENA KUYPER, ESQ.
BYARD NILSSON, ESQ.
9255 SUNSET BOULEVARD
SUITE 810
LOS ANGELES, CA 90069

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 09/08/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Martin M. Zoltick, Esq.

Rothwell, Figg, Ernst & Manbeck, PC

1425 K Street N.W., Suite 800

Washington, D.C. 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/007,697*.

PATENT NO. *5787156*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | Control No. 90/007,697 | Patent Under Reexamination 5787156 |
|---|---|---|
| | Examiner Erik Kielin | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☐ Responsive to the communication(s) filed on _____ .          b☐ This action is made FINAL.
c☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire 2 month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1.  ☒ Notice of References Cited by Examiner, PTO-892.         3.  ☐  Interview Summary, PTO-474.
2.  ☒ Information Disclosure Statement, PTO-1449.             4.  ☐  _____ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-54* are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2.  ☐ Claims _____ have been canceled in the present reexamination proceeding.
3.  ☒ Claims *2-5,7-9,11,23 and 28-54* are patentable and/or confirmed.
4.  ☒ Claims *1,6,10,12-22 and 24-27* are rejected.
5.  ☐ Claims _____ are objected to.
6.  ☐ The drawings, filed on _____ are acceptable.
7.  ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.
8.  ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some* c)☐ None   of the certified copies have
    1☐ been received.
    2☐ not been received.
    3☐ been filed in Application No. _____ .
    4☐ been filed in reexamination Control No. _____.
    5☐ been received by the International Bureau in PCT application No. _____.
    * See the attached detailed Office action for a list of the certified copies not received.
9.  ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.
10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/007,697                                    Page 2
Art Unit: 3992

## DETAILED ACTION

### *References*

(1) Article by Eileen Norris entitled "Phone offers action at push of button," in
<u>Advertising Age</u>, February 6, 1986 (*Norris*, hereafter)

(2) Article by Yoshizawa et al. entitled "Voice Response System for Telephone
Betting" in <u>Hitachi Review</u> 26(6), June 1977, pp. 215-220 (*Yoshizawa*, hereafter)

(3) US 4,797,911 to Szlam et al. (*Szlam*, hereafter)

(4) US Patent No. 3,622,995 to Dilks et al. entitled "Automatic Ticket/Credit Card
Check-In System," filed March 21, 1969  (*Dilks*, hereafter)

(5) Article by Moosemiller entitled "AT&T's Conversant™ I Voice System" in <u>Speech
Technology</u>, Mar/Apr 1986, pp. 88-93 (*Moosemiller*, hereafter)

(6) US Patent No. 4,922,519 to Daudelin entitled "Automated Operator Assistance
Calls With Voice Processing" filed September 30, 1988, which is a continuation of
Serial No. 860,651 filed May 7, 1986 (*Daudelin*, hereafter)

(7) An industry report published by The Yankee Group entitled "Cable and the
Telcos: From Confrontation to Détente," pp. 162-167 (June 1983), (*Yankee*,
hereafter).

(8) Patent No. US 4,755,872 to Bestler et al. entitled "Impulse Pay Per View
System and Methods" filed July 29, 1985 (*Bestler*, hereafter).

(9) The Voice, VCT Quarterly Newsletter, vol. 2, no. 3, Winter 1987 (*VCT*,
hereafter).

(10) US Patent No. 3,725,956 to Maxon et al. entitled "PBX Automatic Number
Identification System," filed November 12, 1971 (*Maxon*, hereafter).

(11) US Patent No. 4,438,824 to Mueller-Schloer entitled "Apparatus and Method
for Cryptographic Identity Verification," filed April 22, 1981 (*Mueller*, hereafter)

Application/Control Number: 90/007,697                                    Page 3
Art Unit: 3992

### Table of Contents

Status of Patent Being Reexamined                                        p. 4
  Narrowed claim construction of "consumable key number"        p. 4

Priority Date for various claim features                                 p. 5
  1. The feature "consumable key number" has **two different
  priority dates**                                              p. 5
  2. ANI and DNIS has an earliest effective priority date of 16 May 1988    p. 8

Rejections                                                               p. 9
  35 USC 102
    1. Claims 10, 14, and 20-22 over Norris           p. 9

  35 USC 103
    2. Claims 1 and 6 over Yoshizawa in view of Szlam   p. 13
    3. Claims 10, 12, 13, 17, 20-22, and 24-26 over Dilks
    in view of Yoshizawa                                 p. 17
    4. Claims 15 and 16 over Dilks in view of Yoshizawa and
    further in view of Moosemiller                        p. 24
    5. Claims 18 and 19 over Dilks in view of Yoshizawa and
    further in view of Moosemiller                        p. 25
    6. Claim 27 over Dilks in view of Moosemiller         p. 26

Examiner's Response to Rejections Proposed in the Request                p. 32

Statement of Reasons for Patentability and/or Confirmation               p. 36

Conclusion                                                               p. 38

Exhibit A                                                                p. 40

Application/Control Number: 90/007,697                                    Page 4
Art Unit: 3992

## *Status of Patent Being Reexamined*

The patent being reexamined is US 5,757,156 to Ronald Katz (the '156 patent, hereafter). The '156 patent expired on 20 December 2005 by terminal disclaimer. With respect to expired claims under reexamination, MPEP 2258(G) states in pertinent part,

> G. Claim Interpretation and Treatment
>
> In a **reexamination proceeding involving claims of an expired patent**, which are not subject to amendment, a **policy of narrow construction** should be applied. Such a policy **favors a construction of a patent claim that will render it valid**; i.e., a **narrow construction,** over a broad construction that would render it invalid. See *In re Papst-Motoren*, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986). (Emphasis added.)

However, there exist prohibitions to the *Papst-Motoren* rule.

> "It is recognized that the *Papst-Motoren* rule is **limited** by the prohibition against **reading limitations from the specification into the claims**, apart from the need to interpret **what the patentee meant by the words** of the claims." *Ex parte Bowles*, 23 USPQ2d 1015 (BPAI 1991) and the prohibition against **revising or ignoring the explicit language** of the claims. *Elekta Instrument S.A. vs. O.U.R. Scientific International, Inc.*, 214 F3d 1302, 1309 (Fed. Cir. 2000). (Emphasis added.)

Accordingly, a narrow claim construction is the standard, but such construction must avoid the prohibitions of (1) "reading limitations from the specification into the claims", and (2) "revising or ignoring the explicit language of the claims".

## Consumable Key Number

The term "consumable key number" or equivalent "consumable participation key" is particularly at issue in this and related proceedings and is therefore being discussed. Given the requirement for narrow construction, the term consumable key number is construed in light of (1) the specification, (2) the *Markman* hearing, and (3) the prosecution history of the term in related applications and proceedings.

The Court in *Katz et al. v. AT&T Corp. et al.* construed the meaning of "consumable participation key", which in the context of the claims of the '156 patent is synonymous with "consumable key number". The Court construed "consumable key number" to mean "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and **which cannot be refreshed or recharged**." (*Katz et al. v. AT&T Corp. et al.*, 63 F.supp.2d 623). Although not binding on the Office during reexamination proceedings, it is noted that the Courts

give terms a narrower construction (rather than a broad construction) consistent
with the specification and therefore provide guidance in interpreting what "patentee
means by the words of the claims", as consistent with *Ex parte Bowles, supra.*

Similarly, Patent Owner has argued in a reexamination proceeding directed to a
related patent (US 5,255,309, proceeding nos. 90/006,976 merged with
90/007,092) a definition consistent with the finding of the Court, as above. In this
regard, in a response filed after final in the reexamination proceedings, 90/006,976
merged with 90/007,092, Patent Owner presents a compilation of the prosecution
history in related applications directed to the meaning of the term "consumable
participation key". In each instance, Patent Owner argues a meaning consistent
with the Court, above. (See Patent Owner's Response in proceeding 90/007,092
filed 5 June 2006 pages 104-124 which is attached herein as Exhibit A.)

With the above in mind, then, the narrowed construction of the term "consumable
participation key" or equivalent "consumable key number" is that meaning given by
the Court above. The consumable key number cannot ever --for any reason-- be
refreshed or recharged or renewed once the predefined number of uses have been
used --not even if the consumable key number is implemented using a use-rate
calculator.

### Priority Date for various claim features

*1. The feature "consumable key number" has **two different priority dates***

Requester argues that the feature "consumable key number" has an earliest priority
date of 16 May 1988 (Request, beginning at p. 12, last sentence). In this regard,
the Request states (bold emphasis added),

> With respect to the limitation of a **consumable key number** recited in the claims
> of the '156 patent, this limitation only finds support in the benefit applications
> dating back to May 16, 1988. The earliest benefit applications, including
> application Serial No. 018,244, filed February 24, 1987, now U.S. Patent No.
> 4,792,968 ("the '968 patent"), which is a continuation-in-part of application Serial
> No. 753,299 ("299 application"), filed July 10, 1985, now abandoned, **do not
> provide support for the scope and the meaning of this claim term as recited
> in the '156 claims**, or as determined by the court in *Katz et al. v. AT&T Corp. et
> al.*, 63 F.supp.2d 583 (E.D.Pa. 1999). Attached to this request as Appendix F are
> copies of the '968 patent and the '299 application.
>
> ...
>
> The specifications of the earliest benefit applications, namely, the '299
> application and the '968 patent, refer to a consumable key number in the context
> of selecting a group of callers, or polling or surveying a select group of callers.
> Callers use a "key number" to access a telephonic system, such as for polling or

EXHIBIT 5

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/006,978 | 03/26/2004 | 5561707 | 6646-140EERE | 3470 |

| 35554 | 7590 | 09/29/2006 |
|---|---|---|

REENA KUYPER, ESQ.
BYARD NILSSON, ESQ.
9255 SUNSET BOULEVARD
SUITE 810
LOS ANGELES, CA 90069

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 09/29/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

## 1. Narrowed interpretation of "consumable participation key"

In the first row, center col. of Table 1 on pp. 46-47, Patent Owner argues that the feature, "consumable participation key" "must be interpreted as a finite number of uses accorded to a caller in a defined or a non-recurring period of time that once consumed are not automatically refreshed by the system".

The term "consumable participation key" has been particularly at issue in this and related proceedings. Given the requirement for narrow construction, the feature "consumable participation key" is construed in light of (1) the specification, (2) the *Markman* hearing, and (3) the prosecution history in related applications for patent.

The Court in *Katz et al. v. AT&T Corp. et al.* construed the meaning of "consumable participation key" to mean "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and **which cannot be refreshed or recharged**" (*Katz et al. v. AT&T Corp. et al.*, 63 F.supp.2d 623). Although not binding on the Office during reexamination proceedings, it is noted that the Courts give terms a narrower construction (rather than a broad construction) consistent with the specification and therefore provide guidance in interpreting what "patentee means by the words of the claims", as consistent with *Ex parte Bowles, supra*. Given that the '707 patent has expired, the claims are to be construed narrowly rather than broadly (MPEP 2258(I)(G)), so the Court's narrow interpretation is considered particularly relevant here.

During the prosecution of related applications, Patent Owner has argued a definition consistent with the finding of the Court, as above. In this regard, Patent Owner presents a compilation of the prosecution history in related applications for patent directed to the meaning of the term "consumable participation key". In each instance, Patent Owner argues a meaning consistent with the Court, above. (See Patent Owner's Response filed 17 July 2006, pages 161-194, "Appendix A".)

With the above in mind, then, the narrowed construction of the term "consumable participation key" is taken to be that given by the Court, *supra*. Consistent with the narrowed interpretation resulting from the expiration of the patent, the consumable key number **cannot ever --for any reason-- be refreshed or recharged or renewed once the predefined number of uses have been used --not even if the consumable key number is implemented using a use-rate calculator**.

*1. None of De Bruyn, Yoshizawa, Emerson, and Daudelin disclose the feature, "consumable participation key" consistent with the narrowed interpretation*

Although each of *De Bruyn* and *Yoshizawa* provide participation key numbers (the telephone number and/or secret code in *De Bruyn* and the customer number and/or password in *Yoshizawa*) limiting use of the IVR (interactive voice response) systems, the participation key numbers providing access are automatically refreshed on a given period, each week in *De Bruyn* (*De Bruyn*, p. 5, lines 11-19)

and each day in *Yoshizawa* (*Yoshizawa*, p. 219, left-hand col., first ¶). Because the participation key numbers are refreshed, they are not consumable participation keys within the narrowed meaning discussed above.

> Similarly, *Daudelin* provides a participation key, as a calling card number, but the calling card can be refreshed by paying the telephone bill.

This position is consistent with Patent Owner's arguments in the Response at pages 43-46 (directed to *De Bruyn*), 56-57 (directed to *Yoshizawa*) and 61, last paragraph (directed to *Daudelin*).

*Emerson* provides a participation key, as an access code to the IVR system, but the participation key is not consumed and therefore fails to read on the narrowed interpretation.

*2. Norris discloses a "consumable participation key" consistent with the narrowed interpretation*

Notably Patent Owner has included *Norris* in the list of references and **incorrectly** indicated that Examiner indicates that *Norris*'s consumable participation key is refreshable when it is abundantly clear from *Norris* that the PIN can be used only one time and never again and is therefore **not refreshable**.

*Norris* states,

> Dial Info also is preparing a promotion for a cereal marketer that features a telephone sweepstakes. Consumers will use a toll-free line to **call in a personal identification number that has been placed in each box of cereal**. The computer will announce whether the number wins a prize. The computer will announce whether the number wins a prize. "Again, this idea focuses on the instant win possibility and instant gratification of the telephone," Mr. Hertel says. "But the really nice part of this idea is that **the computer will be able to keep track of the personal identification numbers so that if someone tries to call in a second time with the same number the computer would merely inform the caller the number has already been used**. That would encourage consumers to make more purchases of the product." (*Norris*, p. 2, 2nd col.)

**The "personal identification number" reads on the "consumable participation key" because it can only be used one time and is then "consumed".** Accordingly, Patent Owner's Table 1 is in error in this regard.

EXHIBIT 6

Reexam. No. 90/007,697

# REMARKS

## Table Of Contents

|  |  | PAGE |
|---|---|---|
| I. | Claim Status Summary | 16 |
| II. | Summary of Legal Argument | 17 |
| A. | The Claims Must be Construed to Sustain Their Validity | 17 |
| B. | Proper Claim Construction in This Reexamination Proceeding Would Render Rejected Claims Valid | 18 |
| C. | Prior Prosecution Histories Inform and Validate Claim Terms, for example, "Consumable Key Number" and "Sequence" | 19 |
| III. | The Rejections Under 35 U.S.C. § 102 Are Unsupported and Should Be Withdrawn | 20 |
| A. | Governing Criteria | 20 |
| B. | Rejection of Claims 10, 14, and 20-22 are Rejected Under 35 U.S.C. 102(b) as Anticipated by Norris (FOA, page 9). | 21 |
| 1. | The meaning of a "consumable key number" is established (by the Court, by prior prosecution histories, and by the Examiner as indicated in the OA) given the requirement for narrow construction | 21 |
| 2. | It is improper to accord the term "consumable key number" two different priority dates simply on the basis of whether the "predefined limited number of uses" is a single or plural uses. | 23 |
| IV. | The Rejections Under 35 U.S.C. § 103 Are Unsupported and Should Be Withdrawn | 25 |
| A. | Rejection of Claims 1 and 6 over Yoshizawa in view of Szlam (FOA, page 13) | 25 |
| B. | Rejection of Claim Claims 10, 12, 13, 17, 20-22, and 24-26 over Dilks in view of Yoshizawa (FOA, page 17) | 28 |
| C. | Rejection of Claims 15 and 16 Under Dilks in view of Yoshizawa and further in view of Moosemiller(FOA, page 24) | 32 |
| D. | Rejection of Claims 18 and 19 Under Dilks in view of Yoshizawa and further in view of Szlam (FOA, page 25) | 33 |
| E. | Rejection of Claim 27 Under Dilks in view of Moosemiller (FOA, page 26) | 34 |
| V. | Third Party Evidence Further Supports the Non-obviousness of the Rejected Claims | 35 |
| A. | Overview | 35 |
| B. | Governing Criteria to Establish Commercial Success | 35 |
| C. | The Prepaid Calling Card Industry, Credit Card Activation and Telephone Gaming Industry Have Commercially Benefited from the Inventions Claimed in the '156 Patent | 36 |
| D. | Nexus | 38 |
| E. | Industry Adoption and Licensing Success | 60 |
| VI. | Conclusion | 61 |

Reexam. No. 90/007,697

*Elan Pharmaceuticals, Inc. v. Mayo Foundation for Medical Education and Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003); *Rosco, Inc. v. Mirror Lite Co.*, 120 Fed. Appx. 832, 836 (Fed. Cir. 2005); *Animatics Corp. v. Quicksilver Controls, Inc.*, 102 Fed. Appx. 659, 670-71 (Fed. Cir. 2004). Respectfully, with respect to the claims rejected under 35 U.S.C. Section 102(b), the Patentee traverses the rejections and demonstrates below that the asserted art does not pre-date the Patentee's own earlier disclosure. With this response, the Patentee discloses a Declaration by Mr. Jerry Klein under Rule 132, an expert in the combined field of computers and telephony (Klein V, signed October 23, 2006). References to this declaration are made in the following arguments.

B.    <u>Rejection of Claims 10, 14, and 20-22 are Rejected Under 35 U.S.C. 102(b) as Anticipated by Norris (FOA, page 9).</u>

In paragraph 1 of the office action, claims 10, 11, 14, and 20-22 are rejected under 35 U.S.C. 102(b) as being anticipated by the article by Eileen Norris entitled "Phone offers action at push of button," in Advertising Age, February 6, 1986. The Examiner has rejected these claims based on the premise that Norris (published 6 February 1986) pre-dates the "apparent" broadening disclosure "consumable key number to limit access...to a limited number of uses" in the application that became the '968 patent. The Examiner indicates that therefore, Norris qualifies as prior art under 35 U.S.C. 102(b) relative to at least claims 10, 14 and 20.

The Patentee assumes that the mention of claim 11 is an inadvertent error because claim 11 is indicated as patentable and confirmed on the summary page of this office action.

The Patentee demonstrates below why Norris is <u>not</u> prior art to at least claims 10, 14, and 20-21. Each of these claims is supported by the disclosure in the '299 application (July 1985) as also established in the expert declaration (see Klein V, paragraphs 12-20).

1.    <u>The meaning of a "consumable key number" is established (by the Court, by prior prosecution histories, and by the Examiner as indicated in the OA) given the requirement for narrow construction.</u>

Claims 10, 14 and 20-22 include the limitation "consumable key number." The Examiner has indicated that this term as well as any equivalents should be construed in light of

- 21 -

the specification, the Markman hearing, and the prosecution histories of the term in related applications and histories. The Court's definition is, "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and which cannot be refreshed or recharged." (*Katz et al. v. AT&T Corp. et al., 63 F.supp. 2d 623*). The Examiner has indicated that:

> [g]iven the requirement for narrow construction, the term consumable key number is construed in light of (1) the specification, (2) the *Markman* hearing, and (3) the prosecution history of the term in related applications and proceedings.

> The Court in *Katz et al. v. AT&T Corp. et al.* construed the meaning of "consumable participation key", which in the context of the claims of the '156 patent is synonymous with "consumable key number". The Court construed "consumable key number" to mean "a number or word that allows a caller access to a service or part of a service a predefined limited number of times and **which cannot be refreshed or recharged."** (*Katz et al. AT&T Corp. et al. 63 F.supp.2d 623*). Although not binding on the Office during reexamination proceedings, it is noted that the Courts give terms a narrower construction (rather than a broad construction) consistent with the specification and therefore provide guidance in interpreting what "patentee means by the words of the claims", as consistent with Ex parte Bowles, supra.

> Similarly, Patent Owner has argued in a reexamination proceeding directed to a related patent (US 5,255,309, proceeding nos. 90/006,976 merged with 90/007,092) a definition consistent with the finding of the Court, as above. In this regard, in a response filed after final in the reexamination proceedings, 90/006,976 merged with 90/007,092, Patent Owner presents a compilation of the prosecution history in related applications directed to the meaning of the term "consumable participation key". In each instance, Patent Owner argues a meaning consistent with the Court, above. (See Patent Owner's Response in proceeding 90/007,092 filed 5 June 2006 pages 104-124 which is attached herein as Exhibit A.)

This definition clearly establishes that a consumable key number allows access to a service or a part of a service **a predefined limited number of times,** which cannot be refreshed or recharged (emphasis by bold added). Therefore, the term "consumable key number" in claims 10, 14 and 20-22 must be construed as a predefined limited number of times, which would include any unspecified number of uses (including a single or plural uses).

:

# EXHIBIT 7

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

11/6/06

MARTIN M. ZOLTICK, ESQ.

ROTHWELL FIGG ERNST & MANBECK PC

1425 K STREET, NW, SUITE 800

WASHINGTON, DC  20005

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/007697

PATENT NO.   5,787,156

ART UNI   3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,697 | 08/30/2005 | 5787156 | 2890-140 | 3448 |

35554          7590          10/12/2006

REENA KUYPER, ESQ.
BYARD NILSSON, ESQ.
9255 SUNSET BOULEVARD
SUITE 810
LOS ANGELES, CA  90069

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 10/12/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Ex Parte Reexamination Interview Summary* | 90/007,697 | 5787156 | |
|---|---|---|---|
| | **Examiner** | **Art Unit** | |
| | Erik Kielin | 3992 | |

All participants (USPTO personnel, patent owner, patent owner's representative):

(1) _Erik Kielin_                              (3) _Reena Kuyper_

(2) _Mark Reinhart_                            (4) _Tom Pardini_

Date of Interview: _12 October 2006_

Type:  a)☐  Telephonic   b)☐  Video Conference
       c)☒ Personal (copy given to: 1)☐ patent owner    2)☐ patent owner's representative)

Exhibit shown or demonstration conducted:  d)☐ Yes    e)☐ No.
   If Yes, brief description: _____

Agreement with respect to the claims  f)☐  was reached.  g)☒  was not reached.  h)☐  N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to..."

Claim(s) discussed: _1,10 and 27_.

Identification of prior art discussed: _Norris, Dilks, and Moosemiller_.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
_See Continuation Sheet._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims
patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims
patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S
STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MPEP § 2281). IF A RESPONSE TO THE
LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS
INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW
(37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED. **EXTENSIONS
OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

cc: Requester (if third party requester)        **MARK J. REINHART**        Examiner's signature, if required

U.S. Patent and Trademark Office
PTOL-474 (Rev. 04-01)                           **SPRE-AU 3992**
                                                *Ex Parte Reexamination Interview Summary*
                                                **CENTRAL REEXAMINATION UNIT**                Paper No. 20061012

Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:  (1) Examiner agreed to consider Patent Owner's position that the original specification has support for the genus of the feature, "consumable key number", not just the species of "consumable key number" limiting a caller to a one time use only. (2) Patent Owner pointed out that Norris would not qualify as prior art based upon the reasoning in (1). (3) Examiner agreed to consider Patent Owner's position that Dilks is not an IVR system. (4) In regard, to (3) Examiner pointed out that that an agent interacted with the airline reservation system on behalf of the telephone caller, when reservations were made or changed in Dilks. (5) Examiner also pointed out that a potential passenger could make reservations, check in, etc. using an automated ticketing booth within the airport using the automated airline reservation system in Dilks .

MARK J. REINHART
SPRE-AU 3992
CENTRAL REEXAMINATION UNIT

2