# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

KELLY E. FARNAN

DIRECT DIAL NUMBER
302-651-7705
FARNAN@RLF.COM

February 9, 2007

**VIA E-FILING AND HAND DELIVERY**

The Honorable Gregory M. Sleet
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

Re: Ronald A. Katz Technology Licensing, L.P. v. Time Warner Cable, Inc., et al., C.A. No. 06-546-GMS

Dear Judge Sleet:

Attached for Your Honor's consideration is a recent decision of the Patent Office granting a request for *ex parte* reexamination of U.S. Patent No. 5,128,984 (the "'984 patent"), which the plaintiff asserts in the above-referenced action. In footnote 3 of Defendants' Opening Brief in Support of Their Motion To Stay Action Pending the Patent and Trademark Office's Reexamination of the Katz Patents (D.I. 81), Defendants informed the Court that the '984 patent had been submitted for reexamination but that the PTO had not acted on the request. On February 2, 2007, the same day Defendants filed their Reply Brief, the PTO mailed the enclosed Notice indicating that the request for reexamination on the '984 patent has been granted.

If Your Honor has any questions on the foregoing, counsel is available at the Court's convenience.

Respectfully,

*Kelly E. Farnan*

Kelly E. Farnan

KEF:kef
Enclosure
cc: Clerk of the Court (via e-filing and hand delivery)
    Julia Heaney, Esquire (via e-filing and hand delivery)

RLF1-3114263-1

# EXHIBIT A

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,325 | 11/13/2006 | 5128984 | RE-984 | 2812 |

35554   7590   02/02/2007

REENA KUYPER, ESQ.
BYARD NILSSON, ESQ.
9255 SUNSET BOULEVARD
SUITE 810
LOS ANGELES, CA 90069

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 02/02/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

2/2/07

JOHN L. WELSH
WELSH & FLAXMAN LLC
2000 DUKE STREET SUITE 100
ALEXANDRIA VA   22314

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008325
PATENT NO.  5,128,984
ART UNI   3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/008,325 | 5128984 |
| | Examiner | Art Unit |
| | Erik Kielin | 3992 |

--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--

The request for *ex parte* reexamination filed <u>13 November 2006</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892, b)☒ PTO/SB/08, c)☐ Other: _____

1. ☒ The request for *ex parte* reexamination is GRANTED.

   RESPONSE TIMES ARE SET AS FOLLOWS:

   For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

   For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐ The request for *ex parte* reexamination is DENIED.

   This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

   In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

   a) ☐ by Treasury check or,

   b) ☐ by credit to Deposit Account No. _____, or

   c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Erik Kielin
Primary Examiner
Art Unit: 3992

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)       Office Action in *Ex Parte* Reexamination       Part of Paper No. 20070103

Application/Control Number: 90/008,325  
Art Unit: 3992

Page 2

## DECISION ON REQUEST FOR REEXAMINATION

A substantial new question of patentability affecting claims 1 and 4 of Patent Number US 5,128,984 to Ronald A. Katz (the '984 patent, hereafter) is raised by the request for *ex parte* reexamination.

Since requester did not request reexamination of claims 2, 3, and 5-23 and did not assert the existence of a substantial new question of patentability (SNQ) for such claims, such claims will not be reexamined. See MPEP 2243. The request for the office to exercise its discretion and reexamine all claims (Request p. 7, ln. 2) does not constitute a request for reexamination under 37 CFR 1. 510 of such claims.

### *References*

(1) Perdue, Robert J., et al., "Conversant I Voice System: Architecture and Applications", AT&T Technical Journal, Sept/Oct. 1986 (Perdue, hereafter)

(2) Kushnick, Bruce, " 'Turnkey' 900 Services Bureaus", Inbound/Outbound Magazine, August 1989, pp. 46-48 (Kushnick, hereafter)

(3) Brown, Jim, "Sterling Service", Network World, Vol. 6. No. 2, 5 June 1989, pp. 29, 32, 33, 35, and 50 (Brown, hereafter)

(4) Self, Robert "AT&T Kills 800 Service", Inbound/Outbound Magazine, May 1988, p. 29 (Self, hereafter)

### *Prosecution History*

### (1) Application that became the '984 patent

The only reference applied to the claim in application 07/425,779 (the '779 application, hereafter) that became claim 1 of the '984 patent was US 4,756,020 to Joseph Fodale (*Fodale*, hereafter).

Claim 1 as **originally** proposed read,

> 1. A telephone call processing system for receiving calls from a multitude of terminals in different call modes for processing to an interface format and involving digital signals associated with said terminals as for identification or data, said system comprising:
>
> first response unit means for receiving calls in a first call mode;

> qualification means for qualifying said calls in a first call mode received by said first response unit to provide qualified calls;
>
> second response unit means for receiving calls in a second call mode;
>
> means for processing calls in an interface format; and
>
> means for coupling said qualified calls and said calls in a second mode to said means for processing.
>
> (the '779 application)

The examiner of the '779 application applied *Fodale* stating,

> *Fodale* discloses a call processing system with a means for receiving a long distance call to which a network call denial feature is applicable and for allowing the extension of the call if the associated billing number, which is often the call number, does not have a delinquent status and a means for receiving a long distance call to which the network call denial feature does not apply such as an "800" service call (col. 6, line 57 - col. 9, line 2).
>
> (the '779 application, Office action filed 21 March 1991, p. 2)

While not specifically pointing out the first and second response unit means for receiving the respective first and second call modes, because the claim was rejected under 35 USC 102 as anticipated by *Fodale*, Examiner was at least of a mind that *Fodale* disclosed these features. The examiner went on to state,

> 6. Claims 2-5 and 12 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.
>
> (the '779 application, Office action filed 21 March 1991, p. 3)

Claim 2 as **originally** proposed read,

> 2. A system according to claim 1 wherein said first response unit is coupled to **receive caller-free "800" type calls.**
>
> (the '779 application; emphasis added)

Accordingly, the examiner of the '779 application did not believe that *Fodale* discloses a system having first and second response units capable of receiving calls in a combination of modes wherein one of the modes was an 800 call mode.

Application/Control Number: 90/008,325  
Art Unit: 3992

Page 4

## (2) Priority date for claims 1 and 4

As pointed out in the Request, claims 1 and 4 of the '984 patent are only entitled to a priority date of 23 October 1989, the filing date of the '779 application that became the '984 patent. In this regard, the Request states,

> Claims 1 and 4 are only entitled to a priority date of October 23, 1989 (i.e., the filing date of the '984 patent). While the '984 patent does claim priority to several earlier parent applications, the term (and related concept) of "800 call mode" appears for the first time in the application filed on October 23, 1989. In order for a specific claim to obtain the benefit of an earlier filing date, the claim must be ~ally supported under 35 U.S.C. § 112 by the earlier-filed application. If a claim is not fully supported by a parent application, then the entire claim is only entitled to a filing date equal to the filing date of the later-filed application. See M.P.E.P. § 706.02(V)(B). (Request, paragraph bridging pages 8-9)

For the reasons indicated above, Perdue and Self qualify as prior art under 35 USC 102(b), while Kushnick and Brown qualify as prior art under 35 USC 102(a).

### *Substantial New Question of Patentability*

**(1) The Request indicates that Requester believes that Perdue considered with Kushnick raises a substantial new question of patentability as to claims 1 and 4 of the '984 patent.**

Claim 1 reads

> A telephone call processing system for receiving calls from a multitude of terminals in different call modes including a "800" call mode and a "900" call mode for processing to an interface format and involving digital signals associated with said terminals as for identification or data, said system comprising,
>
> first response unit means for receiving calls in said "800" call mode;
>
> qualification means for qualifying said calls in said "800" call mode received by said first response unit to provide qualified calls;
>
> second response unit means for receiving calls in a second call mode;

Application/Control Number: 90/008,325  
Art Unit: 3992

Page 5

> means for processing calls in an interface format;
>
> means for coupling said qualified calls and said calls in a second mode to said means for processing.

As indicated in the claim comparison table on pages 12-19 of the Request, Perdue teaches

> **A telephone call processing system for receiving calls from a multitude of terminals including** at least an **"800" call mode for processing to an interface format and involving digital signals associated with said terminals as for identification or data,**

Perdue discusses AT&T's Conversant® I IVR (interactive voice response) system for automated call handling a plurality of calls simultaneously for multiple applications (Perdue, col. . This is clearly a telephone processing system. In this regard, Perdue states,

> The [Conversant® I] system was made flexible enough to cover a **wide spectrum of call-handling applications** in a cost-effective manner. A large number of calls can be handled **concurrently**. A centralized switch allows various subsystems, such as speech recognizers and **voice response units**, to be shared among calls. (Perdue, p. 35, 1st ¶; emphasis added)

and

> **Transaction Scripts**. The transaction state machine (TSM) controls the transactions in progress by executing commands of a transaction script written for a particular application. TSM can handle many calls, i.e., **run many transaction scripts concurrently**. Since the transaction scripts may be different, **several independent applications can be implemented on a single system**. The script to be run on a particular call is normally determined by either the trunk the call uses or the direct inward dialing digits forwarded to our system by the central office. (Perdue, paragraph bridging pp. 38-39; emphasis added)

"Transaction scripts" or "applications" in Perdue are the equivalent of "interface formats" within the meaning in the '984 patent, as the transaction scripts set forth the computer program for conveying information to and retrieving information from the caller.

> **said system comprising**

Application/Control Number: 90/008,325
Art Unit: 3992

Page 6

> **first response unit means for receiving calls in said "800" call mode;**
>
> **qualification means for qualifying said calls in said "800" call mode received by said first response unit to provide qualified calls;**
>
> **second response unit means for receiving calls;**

The AT&T Conversant IVR system's voice response units (VRU) are the first and second response unit means. In an exemplary application (i.e. "interface format") of AT&T's Conversant IVR system, Perdue teaches that a VRU accepts and qualifies a call in an 800 call mode (Perdue, p. 43, Table 1). In the example, the caller is prompted to enter a nine-digit identification which is checked against stored records to determine if it is valid. If valid the caller's call is "qualified".

> **means for processing calls in an interface format;**

As noted just above, the example on p. 43 of Perdue provides an example of AT&T's Conversant IVR system processing a call in an interface format, specifically a "Financial Information Transaction Dialog". Fig. 1 on p. 35 of Perdue shows a "means for processing calls" in the form of the voice response units and the system controller.

> **means for coupling calls ... to said means for processing.**

Perdue's Fig. 1 shows "means for coupling calls to the means for processing" at least including a "voice switch".

Because Perdue teaches that the AT&T Conversant IVR system can handle plural applications running simultaneously, the AT&T Conversant IVR system can handle a multitude of calls in at least one call mode, specifically the 800 call mode. Perdue does not indicate the call mode of the other example, so it may be different 800 call mode. In this sense, it is not clear that the AT&T Conversant system is capable of handling calls in plural call modes.

Kushnik teaches

> **A telephone call processing system for receiving calls from a multitude of terminals in different call modes including a "800" call mode and a "900" call mode**

Kushnick teaches known IVR systems including the AT&T Conversant, Sprint Brite Voice, and Telesphere/CVTC IVR systems, each IVR system capable of handling applications for both 800 and 900 call modes. In this regard, Kushnik states,

Application/Control Number: 90/008,325  
Art Unit: 3992

Page 7

> The new service bureaus use more sophisticated technology and allow a wide variety of different voice, data, and fax services. Sprint Gateways uses **Brite Voice** (Wichita,KS); AT&T uses **Conversant Systems** (Columbus, Ohio) equipment; and Telesphere/CVTC uses CVTC's own proprietary equipment. (Kushnik, p 46, 2nd col., 2nd ¶; emphasis in original)
>
> ...
>
> In short, *diversity* is the buzz word for **900 services.**
>
> There's more. These service bureaus can **also** handle **800 services** and in some cases even data. (Kushnik, p 46, 2nd col., 5th and 6th ¶¶; emphasis added)

Further in this regard, Kushnik's figure on page 47 also shows, as an example, AT&T's IVR system, showing "MEGACOM 800" and "MULTIQUEST 900" services. In order to provide 800 and 900 services, the Conversant IVR system must be able to handle calls received in both 800 and 900 call modes. Of particular importance, Perdue discusses AT&T's Conversant System, indicated in Kushnick to handle both 800 and 900 call modes. Therefore, it is implicit in Perdue, that AT&T's Conversant IVR system is capable of handling calls in plural call modes, particularly, both 800 and 900 call modes, as evidenced by Kushnick.

### for processing to an interface format

Kushnick calls an interface format a "service" or "application". Perdue calls a format an "application". In each reference the format is the manner (implemented via hardware and/or software) in which information is conveyed to and obtained from the caller. This interpretation is supported by the AT&T Court (*Ronald A. Katz Licensing, L.P. and MCI Telecommunications Corp. v. AT&T Corp.*, 63 F.Supp.2d at 583, 613).

Various "formats" include, "subscription sales, locator services, fund raising, market research, and sweepstakes and promotions" (Kushnick, p. 48, 3rd col., 3rd to last ¶).

### and involving digital signals associated with said terminals as for identification or data,

Kushnick indicates that the IVR systems "involve digital signals", specifically and ISDN-PRI or integrated services **digital** network primary rate interface (Kushnick, p. 48, 1st col., 1st partial ¶). Exemplary digital signals include ANI or automatic number identification which are use, *inter alia*, for identification of the call telephone terminal. Kushnick also specifically indicates that the data IVR systems also handle data (Kushnick, p. 46, 2nd col., last ¶). In addition, the figure on page 47 of Kushnick shows that AT&T's Conversant IVR system handles data. The data must be ultimately in the form of "digital signals" to be handled by the processing means of the IVR system.

Application/Control Number: 90/008,325  
Art Unit: 3992

Page 8

> said system comprising,
>
> first response unit means for receiving calls in said "800" call mode;
>
> second response unit means for receiving calls in a second call mode;

The AT&T Court held that the "response unit means" equated to the "audio response unit (ARU)" in the '984 patent. While not bound by the Court's construction, there can be no doubt that the ARU of the '984 patent is the equivalent of the "VOICE RESPONSE UNITS" (VRU) of the AT&T Conversant system shown in the figure on page 47 of Kushnick, as each provides the same function of interfacing with callers to implement the applications/formats. The figure also shows that the voice response units receive calls in both the 800 and 900 call modes.

> means for processing calls in an interface format;
>
> means for coupling calls in first and second call modes to said means for processing.

The figure on page 47 of Kushnick shows an "APPLICATION PROCESSOR". The title of the feature indicates its function: processing applications. Because the "applications" of Kushnick are the "interface formats" of the '984 patent, the "APPLICATION PROCESSOR" reads on the "means for processing calls in an interface format" implemented by the VRU. The "APPLICATION PROCESSOR" is shown connected to the VRU and therefore is a "means for coupling calls" in 800 and 900 call modes to the "means for processing".

As indicated above, Perdue discloses any exemplary AT&T Conversant IVR system application which provides qualification of a caller's call received in an 800 call mode (Perdue, p. 43, Table 1). Therefore, AT&T's Conversant IVR system inherently has a

> qualification means for qualifying said calls in said "800" call mode received by said first response unit to provide qualified calls

and a

> means for coupling said qualified calls to said means for processing.

Claim 4 of the '984 patent reads,

> **A system according to claim 1 wherein said qualification means comprises means for testing said digital signals associated with said terminals originating said calls.**

As indicated above Perdue teaches that AT&T's Conversant IVR system has the claimed qualification means. Perdue teaches that the qualification means testing the digital signals (e.g. the nine digit identification) associated with the terminals originating the calls.

Therefore, in combination, Perdue and Kushnick teach a combination of features that were not before the PTO during the examination of the application that became the '984 patent. In particular, the prosecution history lacks a teaching of the inherent ability of the AT&T Conversant IVR system to handle calls in both 800 and 900 call modes; therefore, the question of patentability is **new**. Furthermore, there is a likelihood that a reasonable examiner would consider the teaching important in determining the patentability of claims 1 and 4; therefore, the question of patentability is **substantial**. Accordingly, the Request raises a substantial new question of patentability as to claims 1 and 4 of the '984 patent.

## (2) The Request indicates that Requester believes that Perdue considered with Brown raises a substantial new question of patentability as to claims 1 and 4 of the '984 patent.

As shown above, Perdue teaches each of the features of claim 1 except for the IVR system handling calls in more than one call mode.

Brown teaches the use of voice response units VRU connected to a host computer to handle calls in 800 and local or area-code call modes. In this regard, Brown states,

> Sovran, with offices throughout the Southeast, has six customer service centers supporting **incoming 800 and local calls** five days a week. Each center has IBM cluster controller attached IBM 3270-type data terminals connected to a **host** via a private SNA network.
>
> ...
>
> The bank is also looking to provide each customer service center with a **voice response unit** connected with its **host** computers. Voice response units automatically answer incoming calls and play recorded messages prompting callers to enter commands from a pushbutton phone. The [voice response] unit can retrieve account balance information from the host [computer] and read it back to the caller. (Brown, p. 35, 1st col., 3rd to last and last ¶¶; emphasis added)

Application/Control Number: 90/008,325  
Art Unit: 3992

Page 10

Therefore, Brown teaches a telephone call processing system capable of handling calls in a plurality of call modes including the 800 and area code call modes.

Therefore, in combination, Perdue and Brown provide a combination of features that were not before the Office during the examination of the application that became the '984 patent. In particular, the prosecution history lacks a teaching of an IVR system to capable of handling calls in plural call modes where one of the call modes is an 800 call mode; therefore, the question of patentability is **new**. Furthermore, there is a substantial likelihood that a reasonable examiner would consider the combined teachings of Perdue and Brown important in determining the patentability of claims 1 and 4; therefore, the question of patentability is **substantial**. Accordingly, the Request raises a substantial new question of patentability as to claims 1 and 4 of the '984 patent.

**(3) The Request indicates that Requester believes that Perdue considered with Self raises a substantial new question of patentability as to claims 1 and 4 of the '984 patent.**

Self teaches a service, AT&T's Readyline service, allowing 800 and area code calls to be received over the same telephone lines, the local telephone lines. Readyline is **not**, however, an interactive voice response (IVR) system. There is no teaching in Self that supplying calls in two different call modes over the same telephone lines somehow equates to or could even be used with an IVR system having plural audio response units for receiving calls in 800 and non-800 call modes. As noted above, Perdue teaches an IVR system but does not teach the handling of calls in more than one call mode. Self does not make up for the deficiency because Self only teaches a system for carrying calls over the same telephone lines –not an IVR system.

This combination of references was not before the examiner of the application that became the '984 patent and is therefore new. However, the lack of any teaching of some feature important to the patentability of claim 1 in the proposed combination of Perdue and Self would not lead a reasonable examiner to question the patentability of claims 1 and 4 of the '984 patent. Therefore, the question of patentability raised in the Request over Perdue and Self is **not substantial**. Accordingly, the combination of Perdue with Self **fails** to raise a substantial new question of patentability as to claims 1 and 4 of the '984 patent.

*Conclusion*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305

Application/Control Number: 90/008,325            Page 11
Art Unit: 3992

requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in reexamination proceedings are provided for in 37 CFR 1.550(c).

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner of the third party requester must be served on the other party (or parties where two or more third-party-requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. US 5,128,984 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

    Mail Stop *Ex Parte* Reexam
    ATTN: Central Reexamination Unit
    Commissioner for Patents
    P.O. Box 1450
    Alexandria, VA 22313-1450


By FAX to:   (571) 273-9900
           Central Reexamination Unit


By hand to:  Customer Service Window
            Randolph Building
            401 Dulany St.
            Alexandria, VA 22314


Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

_____
Erik Kielin
Primary Examiner
Central Reexam Unit 3992
(571) 272-1693

January 3, 2007

Conferees: _____
SCOTT L. WEAVER
CRU EXAMINER-AU 3992

_____

Date of Deposit:

Page 1 of 1

Please type a plus sign (+) in this box [ + ]

PTO/SB (12-97)
Approved for use through 9/30/00, OMB 0651-0031
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| Modified Form 1449/PTO | Application Number | 07/425,779 (U.S. Pat. No. 5,128,984) |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (use as many sheets as necessary) | Filing Date | October 23, 1989 |
| | First Named Inventor | Ronald Katz |
| | Group Art Unit | ~~2601~~ 3992 |
| | Examiner Name | ~~Stella Woo~~ |
| | Attorney Docket Number | |

**U.S. PATENT DOCUMENTS**

| Exam Initials | Cite No. | U.S. Patent Document No. | Issue Date | Name of Patentee(s) or Applicant(s) | Class | Sub Class | Filing Date If Appropriate |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| Exam Initials | Cite No. | Foreign Patent Document Office Number | Name of Patentee(s) or Applicant(s) | Date of Publication | Translation Yes | No |
|---|---|---|---|---|---|---|
| | | | | | | |

**OTHER PRIOR ART – NON PATENT LITERATURE DOCUMENTS**

| Exam Initials | Cite No. | Name of Author, Title (when appropriate), Publication, Volume, Page(s), Date, Etc. |
|---|---|---|
| EK | F | Robert J. Perdue, Conversant Voice System: Architecture and Applications, AT&T Technical Journal, Sept/Oct. 1986 |
| EK | G | Jim Brown, Sterling Service, Network World, June 5, 1989 |
| EK | I | Robert Self, AT&T Kills 800 Service, Inbound/Outbound, May 1988 |
| EK | J | Bruce Kushnick, "Turnkey" 900 service bureaus, Inbound/Outbound, August 1989 |

* copies of these references are not provided as they were previously cited by or submitted to the office in a prior application, U.S.S.N. _____ filed _____, which is a continuation-in-part of U.S.S.N. _____, filed _____, and relied upon for an earlier filing date under 35 U.S.C. §120 (continuation, continuation-in-part, and divisional applications).

| Examiner Signature | /Erik Kielin/ | Date Considered | 01/03/2007 |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered.

Include copy of this form with next communication to applicant.